United States district court
Eastern district of North Carolina
Civil Action: 5:12-CV-00714-D



**FILED**

MAR 3 1 2014

JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

Loushonda Myers, Tyre Myers, and Dameon Myers
In Propria Persona, Plaintiffs,

vs.

AT&T INC., AT&T MOBILITY LLC, UNKNOWN
AGENTS/EMPLOYEES OF AT&T INC. and AT&T
MOBILITY LLC, UNITED STATES MARSHAL
BRYAN KONIG, UNKNOWN AGENTS/
EMPLOYEES OF THE UNITED STATES
MARSHAL OFFICE IN NORTH AND SOUTH
CAROLINA; SHERIFF STEVE BIZZELL, CAPTAIN
A.C. FISH, DETECTIVE KRITCH ALLEN,
DETECTIVE DON PATE, DETECTIVE J. CREECH,
DETECTIVE J. CANADY, DETECTIVE A. CASE,
CAPTAIN D. DAUGHTRY, LIEUTENANT STEWART,
LIEUTENANT DANNY JOHNSON, DEPUTY GILLIS,
DAVID HILDRETH, JAMES GERRELL, UNKNOWN
OFFICERS/EMPLOYEES OF THE JOHNSTON
COUNTY SHERIFF'S OFFICE, BRANCH BANKING
AND TRUST (BB&T CORPORATION)
           Defendants.

AMENDED COMPLAINT

JURY TRIAL DEMANDED ON ALL ISSUES, INCLUDING OF FACT AND LAW

## INTRODUCTION

1.  Loushonda Myers, in her own natural person and on behalf of Dameon and Tyre Myers,

    complains against the above named Defendants (collectively called the RICO Defendants) for

    knowingly, willingly, and/or willfully participating in criminal enterprises and/or associating in-

    fact in with criminal enterprises and racketeering activities within the meaning of 18 USC § 1961.

    In addition, Ms. Myers complains of deprivation and obstruction of Constitutional rights under

    the color of State and Federal law, custom, and/or usage; conspiracy to deprive the Plaintiff of

    constitutional rights; and failure to protect the Plaintiff from the conspiracy when it was within

their power to do so. Plaintiff, Loushonda Myers, hereby incorporates by reference her original complaint; Informal Brief ; and attached exhibits.

2.  This civil suit is a product of years of corrupt, malicious activities that involves numerous law enforcement agencies, judicial officials, and public officials in South Carolina (collectively called SC Enterprise). For almost two decades, law enforcement agencies and individuals in South Carolina have conspired against one family. To date, their illegal activities, actions, and/or omissions have resulted in the deaths of two individuals of the Myers family.

3.  One of the goals of the SC Enterprise is retaliation for an incident that occurred in 1995. In this incident, Jamol Myers (deceased) was walking his dog on a leash; and Georgetown City police officer, Chris Bailey, approached the dog and was bit on the leg. After, officer Bailey was bitten by the dog, his fellow comrades initiated a brawl that included numerous uniformed police officers fighting against two unarmed civilians, Jamol and Tyre Myers. Tyre and Jamol were represented by Russell Long from Myrtle Beach, South Carolina. In 2001, the above incident was referred to in Tyre Myer's lawsuit filed against defendant, Georgetown Police Officer John Fernandez. The incident was brought up by Victoria Vaught, attorney for John Fernadez. (Tyre's law suit against officer Fernandez refueled a glowing heap of embers into an inferno of retaliatory acts and omissions by the South Carolina enterprise.) In 2006, the incident resurfaced in an FBI report during the murder investigation of Georgetown County Detention Center employee, Joey Pope. During the events of October 2010, which center around this suit, the incident was referred to in court documents and discovery materials. In 2013, again, the incident was rekindled by former Georgetown City police officer, John Tisdale, in the comment section of Georgetown's local newspaper, Georgetown Times, Facebook page.

4.  The SC Enterprise recruited AT&T Inc., AT&T Mobility LLC, and unknown employees/agents of

AT&T Inc. and AT&T Mobility LLC (also referred to collectively as AT&T), the United States

Marshals from North and South Carolina, law enforcement officers from the Johnston County

Sheriff's Office (also referred herein as JCSO); and numerous other individuals from various

agencies and/or firms in their illicit activities. Once recruited, the South Carolina enterprise made

their objectives known among the enlisted North Carolina conspirators. The SC enterprise and the

RICO defendants desired to reach their goals by any means necessary, disregarding who they

injured and/or damaged along the way. Through calculated strategies, the above named RICO

Defendants systematically executed a militant style attack on the Plaintiff's home, property,

business, and life. The RICO Defendants sought out to tortiously injure and damage the Plaintiff,

Loushonda Myers, in her business and property by utilizing criminal plans they conceived and

substantially executed in the State of North Carolina that included extortion, unlawful collection

of debt, and criminal and civil charges against Ms. Myers. One of their purpose and goal was to

criminally exert pressure on Ms. Myers and her children using imprisonment, seizing their

property, threatening her with the loss of her children, as wells as other acts of extortion. For

example, the RICO defendants kidnapped Plaintiff, Loushonda Myers, and her minor children

after executing fraudulent and/or tainted search warrants containing false, fabricated, and/or

misleading testimony. Following the same patterns, the RICO Defendants initiated false and/or

misleading neglect allegations through JCDSS against Loushonda Myers in an attempt to deprive

her and her children of one another.

5.   The RICO defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act,

28 U.S.C. § 1961 with predicate acts of kidnapping; mail and wire fraud; bank fraud; obstruction

of justice; witness tampering and retaliation; illegal cellphone tracking and/or surveillance; and

others. Additionally, the RICO defendants' conduct constitutes civil and criminal conspiracy;

common law fraud; loss of consortium; trespass to chattels; violations of U.S.C. 42 §1983; and

others. As a result, the Defendants' misconduct and/or actions entitles Loushonda Myers, Tyre

Myers, and Dameon Myers to actual damages, punitive damages, attorney's fees and costs, and

other relief and/or redress.

PARTIES AND RELEVANT NON-PARTIES

**Plaintiffs**

6.   Plaintiff, Loushonda Myers, is a natural person domiciled in Georgetown County, South Carolina

     since November of 2010. Prior to this date and during the events relative to this complaint,

     Plaintiff was domiciled in Johnston County, North Carolina.

7.   Tyre Myers is at all times relevant to this complaint. The conduct of the RICO Defendants and

     their co-conspirators in North and South Carolina were initiated because of and centered around

     Tyre Myers.

8.   Dameon Myers is at all times relevant to this complaint. The conduct of the RICO Defendants

     and their co-conspirators in North and South Carolina were initiated because of and center around

     Dameon Myers.

Minor Children

9.   The Plaintiff, Loushonda Myers, minor children C.M., A.M., and M.M. are at all times relevant to

     this complaint. The minor children's business, property, and lives were also effected by the

     conduct and/or omissions of the RICO Defendants. The RICO defendants exploited the minor

     children in an effort to effect harm on the Plaintiff, Ms. Myers, and the minor children. The details

     of these acts will be explained further herein.

**RICO Defendants**

10. The defendants listed below are the individuals who have conspired to engage in patterns of racketeering activity. Each individual has committed numerous criminal acts as part of their plans to deprive the Plaintiffs of their substantive rights, including freedom, liberty, property, and life. Each defendant has participated in the operation and/or management of each criminal enterprise, both separately and collectively. Their conduct, acts, and/or omission interfered with the Plaintiffs' substantive rights, business, and interstate commerce; and are described further in the complaint. These defendants are referred to herein as the RICO Defendants. As to the 28 U.S.C. § 1961 claims, the Defendants are being sued in their individual capacities. As to the 42 U.S.C. § 1983 claims the defendants are being sued in their individual and official capacities.

11. Defendant AT&T Inc. is a corporation headquartered at 208 S. Akard Street, Dallas, Texas 75202. AT&T Inc. conducts business in the State of North Carolina. AT&T Inc. was the telecommunications and/or cellular phone service provider of the Plaintiff before and during the events relevant to this suit; and is a key player in the activities and conduct of the enterprises listed herein. AT&T Inc. is at all times relevant and participated in the racketeering conduct of the criminal enterprises by providing illegal cellular phone tracking, tracing, and/or surveillance on and around October 12, 2010, and hindering and obstructing both state and federal investigations.

12. Defendant AT&T Mobility LLC is a subsidiary of AT&T Inc., and conducts business in the state of North Carolina. AT&T Mobility was the wireless provider for the Plaintiff, Loushonda Myers; and minor child C.M. before and during the events relevant to this suit. AT&T Mobility, LLC participated in the racketeering conduct of the criminal enterprises by providing illegal cellular phone tracking, tracing, and/or surveillance on and around October 12, 2010, and hindering and obstructing both state and federal investigations.

13. Defendants Unknown employees/agents of AT&T Inc. and AT&T Mobility LLC are relevant to

this complaint; and conducts business on behalf of AT&T Inc. and AT&T Mobility, LLC in the State of North Carolina. The unknown employees and/agents of AT&T Inc. and AT&T Mobility LLC participated in the racketeering conduct of the criminal enterprise by providing illegal cellular phone tracking, tracing, and/or surveillance to the criminal enterprises, and hindering and obstructing both state and federal investigations. The conduct of the unknown employees were at all times beyond the scope of their employment, and against both state and federal laws.

14. Defendant United States Marshal Agent Bryan Konig is employed with the United States Marshal Service; he was employed in North Carolina during the events relevant to this suit; and he is a member of the United States Marshals Service Enterprise (herein also referred to as the USMS Enterprise). Agent Konig was the leading agent and member for the US Marshals; and the agent that spoke with the Plaintiff during two separate incidents on October 12, 2010. Agent Konig participated in the racketeering conduct of the criminal enterprise by directing and/or leading the assault on Ms. Myers and her children's home and property. Konig participated in and facilitated an unlawful search and seizure of Ms. Myers, her minor children, and their property. Agent Konig acted in concert with the Georgetown City Police Department Enterprise (herein referred to as GCPD Enterprise), by establishing and maintaining a separate enterprise under the United States Marshal Service to carry out illegal activities beyond the scope of their duties. Agent Konig, the unknown individuals of the US Marshals, and the US Marshals from South Carolina are herein referred to as the USMS Enterprise. The USMS Enterprise consists of Agent Konig and Unknown USMS agents/employees from North and South Carolina. These conspirators knew that the GCPD, unknown individuals, and law enforcement sources in South Carolina had created a scheme to frame Tyre and Dameon Myers for at least one murder, among other things. These individuals were aware and knew that they were given false, misleading, and/or tainted

6 of 104

information to use in the events that occurred on and around October 12, 2010, in which they directly caused substantial injured and damage to Ms. Myers, her children, and their property. The above is based on court records, FBI records, documentation, proofs, and/or materials provided through discovery, FOIA requests, and the activities, actions, and/or omissions of these co-conspirators. Agent Konig and his co-conspirators actions will be explained in more detail herein.

15. Defendant Unknown Agents/Employees of the United States Marshal in North and South Carolina are relevant to this complaint; and the unknown agents/employees participated in the racketeering conduct of the criminal enterprise by knowingly utilizing illegal cellular phone tracking, tracing, and/or surveillance; hindering and obstructing state and federal investigations; kidnapping; and various other unlawful activities that will be explained further herein. These unknown agents/ employees are members of the USMS Enterprise. These individuals actively engaged and perpetrated patterns of criminal activities within the USMS Enterprise in furtherance of the goals of the GCPD Enterprise. These activities were beyond their duties as agents of the USMS.

16. Defendant Sheriff Steve Bizzel is relevant to this complaint. He is the sheriff of Johnston County and the supervising agent over Captain Fish, the S.T.A.R. Team, and the other Johnston County known and unknown officers and/or agents, and a member of the Johnston county Sheriff's Office Enterprise. (Herein also referred to as the Johnston County Sheriff Office Enterprise and JCSO Enterprise) The JCSO Enterprise members are Sheriff Steve Bizzeel, Captain Fish, Detective Allen, Detective Don Pate, Detective J. Creech, Detective A. Case, Detective A. Canady, Detective D. Daughtry, Lieutenant Stewart, Lieutenant Danny Johnson, Deputy Gillis, David Hildreth, James Gerrell, and the Unknown officers/employees of the Johnston County Sheriff's Office. Sheriff Bizzel participated in the racketeering conduct of the criminal enterprise by facilitating the obstruction of criminal investigation; and failing to prevent harm and damage to

Ms. Myers and her children; after knowing about the criminal conduct; when it was within his power to do so.

17. Defendant Captain A.C. Fish is relevant to this complaint. He is the captain of the Johnston County Sheriff's Office and participated in the racketeering activity complained of within this suit. Captain Fish was present during the assault on Plaintiff's home and property. He supervised and advised Detective Kritch Allen, the lead detective in the Plaintiff's criminal prosecution. Captain Fish participated in the racketeering conduct of the criminal enterprise.

18. Detective Kritch Allen is relevant to this complaint. He is employed by the Johnston County Sheriff's Office and a member of the Johnston County S.T.A.R. Team, a highly trained division of ballistic officers. Detective Allen participated in the racketeering conduct of the criminal enterprise by knowingly providing false, misleading, and/or tainted information to magistrates Bethany Hale and Keith Underwood for the issuance of two different search warrants, both containing the same fraudulent information. Detective Allen and Captain Fish served as the ring leaders of the JCSO Enterprise.

19. Detective Don Pate is relevant to this complaint. He is an employee of the Johnston County Sheriff's Office. Detective Pate participated in the racketeering conduct of the criminal enterprise by seizing Ms. Myers and her minor children's home and property. Detective Pate willingly and/ or knowingly stood by while Ms. Myers was being assaulted and kidnapped; and while Ms. Myers's children were kidnapped.

20. Detective J. Creech is relevant to this complaint. He is employed by the Johnston County Sheriff's Office. Detective Creech participated in the racketeering conduct of the criminal enterprise by seizing Ms. Myers's and her children's home and property. Detective Creech willingly and/or knowingly stood by while Ms. Myers was being assaulted and kidnapped; and while Ms. Myers's

children were kidnapped.

21. Detective J. Canady is relevant to this complaint. He is employed by the Johnston County Sheriff's Office. Detective Canady participated in the racketeering conduct of the criminal enterprise by seizing Ms. Myers's and her children's home and property. Detective J. Canady willingly and/or knowingly stood by while Ms. Myers was being assaulted and kidnapped; and while Ms. Myers's children were kidnapped.

22. Detective A. Case is relevant to this complaint. He is employed by the Johnston County Sheriff's Office. Detective Case participated in the racketeering conduct of the criminal enterprise by seizing Ms. Myers's and her children's home and property. Detective A. Case willingly and/or knowingly stood by while Ms. Myers was being assaulted and kidnapped; and while Ms. Myers's children were kidnapped.

23. Captain D. Daughtry is relevant to this complaint. He is employed by the Johnston County Sheriff's Office. Captain Daughtry participated in the racketeering conduct of the criminal enterprise by seizing Ms. Myers's and her children's home and property. Captain D. Daughtry willingly and/or knowingly stood by while Ms. Myers was being assaulted and kidnapped; and while Ms. Myers's children were kidnapped.

24. Lieutenant Stewart is relevant to this complaint. He is employed by the Johnston County Sheriff's Office. Lieutenant Stewart participated in the racketeering conduct of the criminal enterprise by participating in the search and seizure of Ms. Myers's and her children's home and property. Lt. Stewart knowingly conspired with Detective Allen to add additional fraudulent, tainted, and/or false information for the issuance of a second search warrant.

25. Lieutenant Danny Johnson is relevant to this complaint. He is employed by the Johnston County Sheriff's Office. Lieutenant Johnson participated in the racketeering conduct of the criminal

enterprise by seizing Ms. Myers's and her children's home and property. Lieutenant Danny Johnson willingly and/or knowingly stood by while Ms. Myers was being assaulted and kidnapped; and while Ms. Myers's children were kidnapped.

26. Deputy Gillis is relevant to this complaint. He is employed by the Johnston County Sheriff's Office. Deputy Gillis participated in the racketeering conduct of the criminal enterprise by seizing Ms. Myers's and her children's home and property. Deputy Gillis willingly and/or knowingly stood by while Ms. Myers was being assaulted and kidnapped; and while Ms. Myers's children were kidnapped.

27. Branch Banking and Trust (also referred herein as BB&T) is relevant to this complaint. BB&T unlawfully withheld Loushonda Myers's money in a bank account owned by her. BB&T violated the Plaintiff's; Loushonda Myers's; privacy, protection, and security by unlawfully seizing her money without the proper requirements of due process; without lawful process; and under color of law. BB&T's conduct was in furtherance of the Johnston County Sheriff's Office Enterprise, and in furtherance of the Georgetown City Police Department, 15th Circuit Solicitor's Office, United States Marshals Service, and FBI Enterprises.

28. Unknown officers/employees of the Johnston County Sheriff's Office is relevant to this complaint.These unknown officers/employees participated in the racketeering conduct of the criminal enterprise by seizing Ms. Myers's and her children's home and property.

**Non-Party Co-Conspirators**

29. These non-party individuals and entities participated and/or played roles, direct and/or indirect, in the plan to deprive the Plaintiff of substantive rights, property, liberties, and likewise. Their conduct, acts, and/or omissions are described further in the complaint.

30. Magistrate Judge Walter Stanley is material to this complaint. He is a magistrate in Johnston County. His address is PO BOX 297, Smithfield, North Carolina 27577. Stanley signed one of the search warrants in the Plaintiffs criminal case, and issued bail in the same matter in furtherance of the RICO Enterprises' goals. Magistrate Stanley's conduct interfered with Loushonda Myers and her minor children's substantive rights, property, business, and affected interstate commerce.

31. Magistrate Judge Bethany Hale material to this complaint. She is a magistrate in Johnston County. Her address is PO BOX 297, Smithfield, North Carolina 27577. Hale issued a substantial bond for the Plaintiff in her criminal case in furtherance of the RICO Enterprises' goals. Magistrate Hale's conduct interfered with Loushonda Myers and her minor children's substantive rights, property, business, and affected interstate commerce.

32. Magistrate Keith Underwood is material to this complaint. He is a magistrate in Johnston County and signed one of the search warrants in the Loushonda Myers's criminal case in furtherance of the RICO Enterprises' goals. His address is PO BOX 297, Smithfield, North Carolina 27577. Magistrate Underwood's conduct interfered with Loushonda Myers and her children's substantive rights, property, business, and affected interstate commerce.

33. Terrae Carmon is material to this complaint. Ms. Carmon is an employee of the Johnston County Department of Social Services (refereed herein as JCDSS and JCDSS Enterprise). Ms. Carmon was instrumental in the plan to deprive the Plaintiff of her children; and to deprive the minor children of their mother. Ms Carmon's address is 714 North St, Smithfield, NC 27577. Ms. Carmon's conduct was in furtherance of the RICO Enterprises' goals; and interfered with Loushonda Myers and her children's substantive rights, property, business, and affected interstate commerce. Ms. Carmon and Kimberly Franklin actively participated in the activities of the USMS, JCSO, GCPD, and JCDSS Enterprises. Ms. Carmon, Heidi Clay, and Ms. Franklin are

associates and/or members of the JCDSS Enterprise. Ms. Carmon's conduct was beyond the scope of her duties, and against the United States Constitution, federal, and state laws.

34. Kimberly Franklin material to this complaint. Ms. Franklin is an employee of the JCDSS. Kimberly Franklin was instrumental in the plan to deprive the Plaintiff of her children; and to deprive the minor children of their mother. Her address is 714 North St., Smithfield, NC 27577. Ms. Franklin's conduct was in furtherance of the RICO Enterprises' goals; and interfered with Loushonda Myers and her children's substantive rights, property, business, and affected interstate commerce. Ms. Franklin's conduct was beyond the scope of her duties, and against the United States Constitution, federal, and state laws.

35. Heidi Clay is at all times material to this complaint. Ms. Clay is an employee of JCDSS and was instrumental in the initiation and intake of false, misleading, and/or tainted information used to facilitate child protective services against Ms. Myers; and deprive Ms. Myers of her children, and deprive Ms. Myers's children of their mother. Ms. Clay's address is 714 North St., Smithfield, NC 27577. Ms. Clay's conduct was in furtherance of the RICO Enterprises' goals; and interfered with Loushonda Myers and her children's substantive rights, property, business, and affected interstate commerce. Ms. Clay's conduct was beyond the scope of her duties, and against the United States Constitution, federal, and state laws.

36. Aleta Ballard is at all times material to this complaint. She is an attorney that performs private practice under Ballard Law Firm, PLLC, and she conducts business as a court appointed attorney. Ms. Ballard was the Plaintiff's attorney during her criminal charges, and was instrumental in depriving the Plaintiff of her substantive rights and remedies as part of a criminal enterprise. Ms. Ballard's representation was terminated by the Plaintiff, after she failed to obtain essential discovery material; knowingly mailed fraudulent materials to Ms. Myers; and knowingly failed to

notify the Superior Court of Johnston County concerning the fraud that had been entered upon the

court. Ballard's address is 1327 Brightleaf Blvd., Ste. C, Smithfield, North Carolina 27577. Ms.

Ballard's conduct was in furtherance of the RICO Enterprises' goal; and Ms. Ballard conducted

her own RICO enterprise within her law firm, Ballard Law Firm, PLLC (herein referred to as

Ballard Enterprise). Ms. Ballard's conduct was not within the scope of her law firms duties,

responsibilities, and/or purpose. Ms. Ballard's conduct was against the United States Constitution,

federal, and state laws. Her conduct will be explained later herein.

37. Ballard Law Firm, PLLC is a law firm located at 1327 Brightleaf Blvd., Ste. C, Smithfield, North

Carolina 27577. The firm's principle place of business is in North Carolina. Ballard Law Firm,

PLLC was used as a means to facilitate Ms. Aleta Ballard's illegal activities and conduct.

38. Steven Walker was the Plaintiff's court appointed attorney during the Plaintiff's criminal matters;

and is material to this complaint. Mr. Walker was instrumental in the criminal enterprise by

working to hinder and obstruct the Plaintiff justice, as well as depriving the Plaintiff of adequate

representation. Mr. Walker operated the Walker Law Firm, PLLC (herein referred to as Walker

Enterprise). It has been recently discovered via the Steven Walker's website that Steven Walker is

now currently employed by Lieutenant Governor Dan Forest. Walker's current employment

address is 310 N. Blount Street Raleigh, NC 27601. Mr. Walker used his law firm to to further the

goals of the RICO Enterprises. Mr. Walker conducted a RICO Enterprise by and through his law

firm. His actions and conduct were outside the scope of the law firm's duties, responsibilities,

and/or purpose. Mr. Walker's conduct was against the United States Constitution, federal, and

state laws. His conduct will be explained later herein.

39. Walker Law Firm, PLLC was the law office that court appointed attorney Steven Walker owned.

It has been recently discovered that the Walker Law Firm, PLLC is now closed. The firm's

principle place of business is in North Carolina. Walker Law Firm, PLLC was used as a means to facilitate Mr. Walker's illegal activities and conduct; and it was used as a means to further the goals of the several RICO Enterprises.

40. Johnston County District Attorney Susan Doyle is material to this complaint. Her address is 125 S. Second Street, Smithfield, NC 27577. Susan Doyle was instrumental in maintaining the fraudulent charges against Loushonda Myers. Ms. Doyle failed to act after being notified that gross criminal activities and conduct had been and were initiated against Loushonda Myers. Ms. Doyle failed to properly supervise, control, and/or direct Adren Harris in his duties, responsibilities, and/or conduct. Ms. Doyle and Adren Harris operated and conducted an illegal enterprise by and through the Johnston County District Attorney's Office (herein referred to as the JCDAO and JCDAO Enterprise). Ms. Doyle's conduct was beyond the scope of her employment and the JCDAO's duties and responsibilities. Her conduct will be explained further herein.

41. Johnston County Assistant District Attorney Adren Harris is material to this complaint. Adren Harris organized, conducted , and/or maintained the illegal activities of the JCDAO Enterprise by participating and maintaining fraudulent charges against Loushonda Myers. Adren Harris threatened Ms. Myers with fear of economic harm, loss of freedom; loss of liberty; loss of life; loss of property; as well as other threats, deprivations, and/or unlawful conduct. Adren Harris participated in the JCDAO Enterprise, and he participated in the activities and goals of the several RICO Enterprises. His address is 125 S. Second Street, Smithfield, NC 27577. His conduct will be explained further herein.

42. Judge Thomas Lock is material to this complaint. His address is PO BOX 2739, Smithfield, North Carolina 27577. Judge Lock is the resident judge of Johnston County. Thomas Lock participated in the goals of the JCDAO, JCSO, GCPD, and JCDSS Enterprises; and the several other RICO

Enterprises by issuing an unlawful order against Loushonda Myers, and failing to respond after being notified of gross unlawful conduct of members of the above named enterprises. Judge Thomas Lock conduct interfered with Loushonda Myers and her minor children's substantive rights, property, business, and affected interstate commerce. his conduct will be explained further herein.

43. Judge Timothy Kincaid is material to this complaint. His address is PO BOX 1292, Newton, North Carolina 28658. Timothy Kincaid participated in the conduct of the several RICO Enterprise by issuing an unlawful order against Loushonda Myers; and failing to return Ms. Myers and her minor children's property. Judge Kincaid's conduct was in furtherance of the several RICO Enterprise's goals; and his conduct interfered with Loushonda Myers and her minor children's substantive rights, property, business, and affected interstate commerce. Judge Timothy Kincaid's conduct will be explained further herein.

44. L. Davis Weddle, Johnston County Assistant District Attorney, is material to this complaint. His address is 125 S. Second Street, Smithfield, NC 27577. Davis Weddle participated in the unlawful activities of the several enterprises. Mr. Weddle communicated fabricated, unlawful, and/or tainted information on court record to Judge Timothy Kincaid. Mr. Weddle was instrumental in the unlawful detention, destruction, and/or withholding of substantive evidence, proofs, and/or materials Loushonda Myers had and still has a substantive right to. Mr. Weddle's conduct interfered with Loushonda Myers and her minor children's substantive rights, property, business, and affected interstate commerce. His conduct will be explained further herein.

45. Sheriff Donnie Harrison is material to this complaint. Mr. Harrison is the Sheriff of the Wake County Sheriff Office (also referred herein as WCSO and WCSO Enterprise). His address is 330 S. Salisbury St., Raleigh, NC 27602. Sheriff Harrison participated in the goals of the several

enterprises. Mr. Harrison collaborated with the USMS Enterprise in the unlawful withholding of substantive discovery materials and the unlawful seizure, arrest, and threat of a witness. Mr. Harrison's conduct was beyond the scope of his employment and the Wake County Sheriff's Office; and his conduct interfered with Loushonda Myers and her minor children's substantive rights, property, business, and affected interstate commerce. His actions will be explained further herein.

46. Unknown employees/officers of the Wake County Sheriff Office are material to this complaint. Their address is 330 S. Salisbury St., Raleigh, NC 27602. The unknown employees/officers of the Wake County Sheriff Office participated in the unlawful conduct of the several enterprises by withholding substantive evidence, proofs, and/or materials. The conduct of these unknown individuals were beyond the scope of the duties and/or activities of the Wake County Sheriff's Office. Their actions will be explained further herein.

47. Krista L. Bennet is material to this complaint. Her address is 217 E. Edenton Street, Raleigh, NC 27611. Ms. Bennet participated in the unlawful activities of the Ballard Enterprise by knowingly and willingly failing to properly investigate and/or perform her duties after being informed of the illicit conduct of Ms. Aleta Ballard. Krista Bennet, Fern Gunn Simeon, and John Silverstein are collectively called the North Carolina State Bar Enterprise (also referred to as the NCBAR Enterprise). These individuals failed to act within the proper purpose of the North Carolina State Bar, and failed to act upon being notified of the conduct of Aleta Ballard. Ms. Bennet's actions will be explained further herein.

48. Fern Gunn Simeon is material to this complaint. Her address is 217 E. Edenton Street, Raleigh, NC 27611. Ms. Simeon participated in the unlawful activities of the Ballard Enterprise by knowingly and willingly failing to properly investigate and/or perform her duties after being

informed of the illicit conduct of Ms. Aleta Ballard. She failed to act within the proper purpose of the North Carolina State Bar, and failed to act upon being notified of the conduct of Aleta Ballard. Ms. Simeon's actions will be explained further herein.

49. John Silverstein is material to this complaint. His address is 217 E. Edenton Street, Raleigh, NC 27611. Mr. Silverstein participated in the unlawful activities of the Ballard Enterprise by knowingly and willingly failing to properly investigate and/or perform his duties after being informed of the illicit conduct of Ms. Aleta Ballard and the other individuals involved in the grievance and fee dispute initiated by Loushonda Myers against Aleta Ballard. Mr. Silverstein failed to act within the proper purpose of the North Carolina State Bar, and failed to act upon being notified of the conduct of Aleta Ballard, Fern Gunn Simeon, and Krista Bennet. Mr. Silverstein's actions will be explained further herein.

50. North Carolina State Bar (also referred to as NC Bar) is material to this complaint. It's address is 217 E. Edenton Street, Raleigh, NC 27611. The North Carolina Bar failed to properly discipline and/or oversee one of its members acting and/or engaging in legal services under its direct supervision and control. The conduct of the NC Bar is beyond its lawful scope, and beyond the United States Constitution, federal and state law. The conduct of this enterprise will be explained further herein.

51. David Altman of the Georgetown City Police Department (herein also referred to as GCPD and GCPD Enterprise) is material to this complaint. David Altman is a police officer with the GCPD, and a member and/or associate of the GCPD Enterprise. Mr. Altman participated in the GCPD Enterprise. His conduct is explained herein. His address is 2222 Highmarket Street, Georgetown, South Carolina 29440.

52. Chief Paul Gardner of the GCPD is material to this complaint. He is the current chief of police for

the Georgetown City Police Department. Paul Gardner participated in both the FBI and GCPD Enterprises. His conduct is explained herein. Gardner's address is 2222 Highmarket Street, Georgetown, South Carolina 29440.

53. Scott Scogin is material to this complaint. He is associated with and participated in the GCPD Enterprise. Scott Scogin is an officer of the GCPD. His conduct is explained herein.

54. John Fernandez is material to this complaint. He is a former officer with the GCPD. Mr. Fernandez's current address is unknown. Mr. Fernandez participated in the goals and activities of the GCPD Enterprise. His conduct is explained herein.

55. Glenn Kufen is a former police officer with the GCPD. Kufen participated in the GCPD Enterprise. He invetsigated the Pope murder case and was listed as a witness for John Fernandez during Tyre Myer's civil suit. His actions are explained herein. His current address is unknown.

56. Tom Rubillo is material to this complaint. Mr. Rubillo knowingly and willingly used fabricated, tainted, and/or false information provided by Keri Pope and/or the GCPD to facilitate a scheme to frame Tyre, Dameon, and Marvin Myers for murder; and to prevent Keri Pope from being convicted of her husband's death. His current address is unknown.

57. John Hilliard is material to this complaint. Mr. Hilliard participated in the illegal activities of the GCPD by willingly and knowingly using false, tainted, and/or fabricated information provided by Keri Pope and/or the GCPD to facilitate a scheme to pin murder on siblings; Tyre, Dameon, and Marvin Myers; and to prevent Keri Pope from being convicted of the murder of her husband. Hilliard also participated in the unlawful prosecution of Tyre Myers as previously explained. His actions are explained herein. His current address is 408 Cleland Street, Georgetown, South Carolina 29440.

58. Keri Pope is material to this complaint. Keri Pope is a crucial component in the murder case of

her husband, Joey Pope; and a key contributor in motivating a racially based "witch hunt" against siblings of the Myers Family. Ms. Pope knowingly and willingly failed to communicate substantive exculpatory evidence, testimony, and/or proof that Dameon Myers, Tyre Myers, and Marvin Myers, Jr. were not involved in the murder of her husband. Ms. Pope participated in the unlawful conduct of the GCPD Enterprise in an effort to save herself from being convicted for the murder of her husband.

59. Scott Hixon is a solicitor in Georgetown County, South Carolina; and is material to this complaint. Mr. Hixon participated in and operated the 15th Circuit Enterprise. Hixson, Magdeline Salemno, Stephen Brown, and Greg Hembree are known members, managers, and/or participants of the 15th Circuit Enterprise. Scott Hixon has committed mail and wire fraud, and has provided false, tainted, and/or fraudulent information to federal and state databases and/or employees. His conduct is explained herein. His address is 401 Cleland Street, Georgetown, South Carolina 29440.

60. Stephen Brown is an investigator for the solicitor's office in Georgetown, South Carolina; and is material to this complaint. Mr. Brown knowingly and willingly participated in the 15th Circuit Enterprise and assisted both the GCPD and USMS enterprises in their criminal activities. The conduct of Stephen Brown is explained herein. His address is 401 Cleland Street, Georgetown, South Carolina 29440.

61. Magdeline Salemno is assistant to Scott Hixson, and is material to this complaint. She was present during several conversations that Ms. Myers had with Scott Hixson, and Ms. Salemno knowingly and willingly participated in the unlawful activities of the GCPD Enterprise, USMS Enterprise, and she participated in the 15th Circuit Enterprise. Ms Salemno knowingly and willingly failed to report and prevent substantive harm to Loushonda Myers and her minor children; and Tyre Myers,

Dameon Myers, and Marvin Myers, Jr. Her conduct is explained herein. Her address is 401 Cleland Street, Georgetown, South Carolina 29440.

62. Greg Hembree is former 15th Circuit solicitor of Horry and Georgetown Counties, and is material to this complaint. Mr. Hembree played an important part in the 15th Circuit Enterprise. Greg Hembree acted as don of the prosecutorial circuit and maintained influence over prosecutorial conduct of certain cases. Greg Hembree knowingly and willingly operated and maintained a criminal enterprise in the State of South carolina, working as the 15th Circuit Solicitor. Mr. Hembree's conduct was beyond the scope of his office and the office of solicitor. His address is P.O. BOX 944, N. Myrtle Beach, 29597.

63. Jody Ward is an incarcerated inmate in the South Carolina Department of Corrections, and he is material to this complaint. Mr. Ward gave statements to the GCPD naming Tyre Myers, Dameon Myers, and Marvin Myers, Jr. of being involved in the murder of Joey Pope. Mr. Ward later gave statements to the GCPD naming Keri Pope and Christopher Miller as being involved in the murder of Joey Pope. Mr. Pope's statements were used to arrest and charge Keri Pope and Christopher Miller for the murder of Joey Pope.

SUBJECT MATTER JURISDICTION

64. This court has subject matter jurisdiction over the Plaintiffs' claims for relief under 28 U.S.C. §§ 1331 and 1332, and under 18 U.S.C. § 1964(c) and 42 U.S.C. § 1988. The Plaintiffs' first claim for relief arises under 18 U.S.C. § 1961. Additionally, this court has jurisdiction under the following: 28 U.S.C. § 1332, Ms. Myers is currently domiciled in South Carolina and the majority of defendants are residents and/or citizens of North Carolina, and the amount in controversy exceeds $75,000, exclusive of interest and costs; 28 U.S.C. § 1343, the Plaintiff, Ms. Myers, is seeking relief for damages done to her person and property due to civil rights violations under

color of law and conspiracy to interfere with civil rights done under threat, force, and/or intimidation, and deprivation of rights under 42 U.S.C. § 1985(2) and (3); and due to the fact that all of Ms. Myers's claims arise out of the same common set of facts, this court has supplemental jurisdiction under 28 U.S.C. § 1367 for her state law claims that have arisen out of the same case and/or controversy.

65. Venue is proper in this district under 18 U.S.C. § 1965 and 28 U.S. Code § 1391(b)(2) due to the fact that a substantial part of the events and/or omissions giving rise to the claims occurred in this district.

## PERSONAL JURISDICTION

66. Jurisdiction over AT&T Inc., AT&T Mobility LLC, and Unknown agents/employees of AT&T Inc. and AT&T Mobility is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). The aforementioned defendants' criminal activities in providing and/or delivering cellular phone tracking, tracing, and/or surveillance information was a vital part of the enterprise's scheme, and these defendants worked with the other RICO Defendants; and managed and maintained an essential element of the enterprises means to carry out their desired goals.

67. Jurisdiction over Bryan Konig and the Unknown United States Marshal Agents and/or Employees is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Bryan Konig is a citizen of North Carolina. Defendant Konig worked with the other RICO Defendants in this action by criminally providing tainted, misleading, and/or fabricated information from law enforcement sources in South Carolina; leading the use of

cellular phone tracking, tracing, and/or surveillance; and leading the invasion on the Plaintiff's home, property, and children. Additionally, Konig participated in depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be explained later within this complaint.

68. Jurisdiction over Sheriff Steve Bizzel is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Sheriff Bizzel is a citizen of North Carolina. Defendant Bizzel is supervisor, manager, and/or the superior of the JCSO and its captains, lieutenants, deputies, officers, and/or employees. Steve Bizzel knew about the activities of the enterprise and participated in their scheme by failing to produce documents, evidence, and/ or materials as required under North Carolina law. Bizzel worked with the other RICO Defendants, and was instrumental in the keeping the enterprise's racketeering activity unknown. Sheriff Bizzel possessed the power and authority to intervene and prevent a substantial and substantive amount of damage and/or injury to the Plaintiff and failed to do so. His participation will be fully explained within this complaint.

69. Jurisdiction over Captain A.C. Fish is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Captain Fish is a citizen of North Carolina and worked with the other RICO Defendants. Fish criminally directed, lead, and/or instructed Detective Kritch Allen, and other officers and/or agents of the enterprise in the swearing, obtaining, and/or execution of tainted, false, and/or misleading search warrants for the Plaintiff's home and property; and participated in depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. Captain Fish worked closely with Adren Harris, a

relevant non-party, in the criminal withholding of substantive discovery material that he knew existed, and failed to produce. Captain Fish possessed the ability to prevent substantial harm and injury to the Plaintiff and failed to do so. Captain Fish's racketeering activities will be explained further within the complaint.

70. Jurisdiction over Detective Kritch Allen is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Detective Allen is a citizen of North Carolina and worked with the other RICO Defendants in this action. Kritch Allen was a key contributor in providing and/or producing fraudulent, fabricated, and/or tainted information in the criminal allegations brought forth against the Plaintiff, and was influential in Magistrate Hale's issuance of bail. Detective Kritch also criminally participated in depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained within this complaint.

71. Jurisdiction over Detective Don Pate is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Detective Don Pate is a citizen of North Carolina and worked with the other RICO Defendants in this action. Don Pate criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

72. Jurisdiction over Detective J. Creech is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Detective J. Creech is a citizen of North

Carolina and worked with the other RICO Defendants in this action. Detective Creech criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

73. Jurisdiction over Detective J. Canady is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Detective J. Canady is a citizen of North Carolina and worked with the other RICO Defendants in this action. J. Canady criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

74. Jurisdiction over Detective A. Case is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Detective A. Case is a citizen of North Carolina and worked with the other RICO Defendants in this action. Detective A. Case criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

75. Jurisdiction over Captain D. Daughtry is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Captain D. Daughtry is a citizen of North Carolina and worked with the other RICO Defendants in this action. Captain Daughtry criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the

Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

76. Jurisdiction over Lieutenant Stewart is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Lieutenant Stewart is a citizen of North Carolina and worked with the other RICO Defendants in this action. Stewart played an instrumental role in criminally providing and/or producing fraudulent, fabricated, and/or tainted information in the criminal allegations brought forth against Loushonda Myers; and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

77. Jurisdiction over Lieutenant Danny Johnson is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Lieutenant Danny Johnson is a citizen of North Carolina and worked with the other RICO Defendants in this action. Lieutenant Johnson criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

78. Jurisdiction over Deputy Gillis is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). Deputy Gillis is a citizen of North Carolina and worked with the other RICO Defendants in this action. Deputy Gillis criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be

fully explained further within this complaint.

79. Jurisdiction over David Hildreth is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). David Hildreth is a citizen of North Carolina and worked with the other RICO Defendants in this action. David Hildreth criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

80. Jurisdiction over James Gerrell is proper for Ms. Myers's claims for violations under 18 U.S.C. 1962; 28 U.S.C. § 1331; and North Carolina State law, pursuant to 18 U.S.C. § 1965(a) and North Carolina Rules of Civil Procedure, Rule 4(j). James Gerrell is a citizen of North Carolina and worked with the other RICO Defendants in this action. Gerrell criminally participated in the unlawful seizure and search of the Plaintiff's property, and depriving the Plaintiff and her children of their substantive Fourth and Fifth Amendment rights. His participation in the enterprise will be fully explained further within this complaint.

FACTUAL BACKGROUND FOR CLAIMS

81. This complaint will show how a group of South Carolina individuals managing, participating, operating, and maintaining a criminal enterprise recruited and utilized the individual RICO Defendants to fraudulently extort the Plaintiff, Loushonda Myers, as well as her minor children of their finances and property in an effort to effectuate the goals of the SC Enterprise, and to systematically cover up their roles in the operation and management of the enterprise. Furthermore, this complaint will show how the SC Enterprise utilized the RICO Defendants to criminally effect retaliation upon Loushonda Myers, Ms. Myers's children, Tyre Myers, and

Dameon Myers by using fraud, extortion, and/or tainted documentation and/or materials. Information, documentation, and/or proofs contained within comes from the RICO Defendants' and SC Enterprise's own materials, documents, reports, and/or documents entered onto court records and/or obtained through other legal means and/or endeavors.

## INITIAL EVENTS AND CONDUCT

### Bryan Konig; Individuals of the United States Marshals Service; Detective Allen; Captain Fish; and Individuals of the Johnston Count Sheriff's Office

82. A few days prior to October 12, 2010, male tow truck operators showed up at the Plaintiff's residence on different occasions. In one incident, the men came at night shining flashlights through the Plaintiff's residence and then began pounding on the door. Ms. Myers answered the door and came face to face with several men. One of the men stated that they were looking for a vehicle and proceeded to ask Ms. Myers for permission to look in her garage. Ms. Myers informed the men that the vehicle that they were looking for was not on her property, and then she told the men to leave.

83. In a separate incident, the men came upon the Plaintiff's property again without permission and questioned a repairman that was working on the Plaintiff's air conditioning unit. The repairman was questioned about the occupants of the residence. It was not until October 12, 2010 that Ms. Myers realized that the men were actually United States Marshals.

### Events of October 12, 2010

84. On the morning of October 12, 2010, Ms. Myers entered her vehicle and left her home. As she was driving, she noticed two cars in her rear view mirror. These vehicles were racing behind her and overtaking another vehicle. Ms. Myers decelerated her vehicle to allow the vehicles to pass, but quickly realized that the vehicles were not attempting to pass her. They were forcing her over

to the side of the street. She pulled over and stopped her vehicle. Several men hastily exited their

vehicles and approached her vehicle. A man, identified himself as Agent Bryan Konig of the

USMS, approached Ms. Myers on the driver's side of her vehicle and began interrogating her;

while another agent approached and circled her vehicle. The second agent was visually searching

inside and underneath the car.

85.  Bryan Konig asked Ms. Myers for her driver's license. She gave it to him. He then began

questioning her. Bryan Konig informed her that he had received information from South Carolina

law enforcement stating that Tyre and Dameon Myers were at her home. Konig asked Ms. Myers

if she knew them, and she told him she did. Konig then proceeded to ask if he could search Ms.

Myers's home. She told him no. After a few more exchanges, Ms. Myers was allowed to leave.

After being allowed to leave, she proceeded to the store. However, Ms. Myers quickly realized

that she was being followed.

86.  Upon returning to her residence and attempting to pull into the driveway, one of the USMS's

vehicles abruptly pulled in front of Ms. Myers and blocked her from entering the property. Ms.

Myers asked what they were doing, and was told by an USMS agent that they were in the process

of obtaining a warrant for her home and that she was not allowed to go inside. Ms. Myers tried

several times to go onto her property and home, and was forcefully prevented from doing so.

87.  During this time the officers and/or employees of the JCSO were also present at her home. Ms.

Myers spoke with Deputy Gillis, Captain Fish, and Detective Allen, all of whom denied her

access to her home and property. She was forced to wait outside her home for hours. While

waiting outside her home, Ms. Myers left her property and proceeded to her children's schools.

She was followed to their schools. When she returned to their home, the agents, officers, and/or

law enforcement individuals were at her residence setting up a parameter and positioning

themselves in areas around their home, including the trees and bushes, to execute a search warrant. Captain Fish approached Ms. Myers and asked for the key to her home. She told him he could not have it.

88.  Sometime in the afternoon, Ms. Myers was notified by an officer that a search warrant was issued and that the law enforcement officers were going into her home. During these events, Ms. Myers was video recording the incident on her Blackberry cell phone. Bryan Konig lead the individual USMS agents that entered and searched her home. Detective Allen, supervised and directed by Captain Fish, lead the individual JCSO officers in the search of Ms. Myers and her children's home.

89.  After executing the first search warrant, the law enforcement officers came out of the home. They were huddled and talking to one another. Bryan Konig walked over to Captain Fish and had a conversation with him. Ms. Myers was unaware of what they were discussing and/or planning. At the same time, her youngest child had to use the restroom. Ms. Myers spoke with an officer of the JCSO and informed him of the matter. She was told to take him to a gas station to use the restroom. While in route to the gas station, Ms. Myers was seize and arrested by Deputy Gillis and Captain Fish. Deputy Gillis performed a search of her body and placed her in his car. Captain Fish entered her vehicle with her children inside, and drove her vehicle back to their residence. Upon returning to the residence, Ms. Myers's children were taken out of the car and forced to stand with law enforcement officers. Ms. Myers was moved from Deputy Gillis's vehicle to Detective Allen's vehicle.

90.  Ms. Myers watched from inside the vehicle as Bryan Konig and several law enforcement officers searched through her cell phone. Then Bryan Konig approached Ms. Myers while she was inside Detective Allen's vehicle. Konig stated, "This has nothing to do with them (JCSO), this is for us

(USMS). Do you have anything you want to tell us?" She told him no, and he walked away from the vehicle. Ms. Myers was taken to the Johnston County Jail, and her vehicle was impounded for over a month. Detective Allen and another officer took Ms. Myers in front Magistrate Bethany Hale. While in front of the magistrate Hale, Detective Allen and the unknown officer stated that Ms. Myers was involved in a drug ring. Bethany Hale issued a $400,000 bond. Magistrate Walter Stanley issued a $1000 bond.

91. Terrae Carmon from JCDSS came and spoke with Ms. Myers. Ms. Carmon stated that she became involved because Ms. Myers's children had no one to take care of them during her incarceration. This was the initial contact with employees of the JCDSS, and the initial alleged reason that they became involved. As stated on the paperwork provided by Ms. Carmon on October 12, 2010, "Caregiver is currently incarcerated and has no alternative arrangements made for the children's care in her absence. Caregiver was arrested today." However, the conduct of the individuals from the JCDSS indicates their participation in the activities of the enterprise and its scheme, along with the RICO Defendants which will be fully explained later herein.

**Violations and Conduct of Agents of the USMS and JCSO Enterprises**

92. The conduct of Bryan Konig and the individual Unknown agents/employees of the USMS violated the Fourth and Fifth Amendments of the Unites States Constitution by depriving Ms. Myers of her right to travel without interference; depriving Ms. Myers and her children of the right to their property and home; and depriving Ms. Myers of her liberty and freedom without due process and indictment by a proper grand jury prior to deprivation of her freedom and liberty.

93. The conduct of Captain Fish, Detective Allen, Deputy Gillis; Detectives Don Pate, J. Creech, J. Canady, A. Case, and James Gerrell; Captain Daughtry, David Hildreth, Lt. Danny Johnson, Lt. Stewart, and the unknown officers/employees of the JCSO violated the Fourth and Fifth

Amendments of the United States Constitution depriving Ms. Myers of her right to travel without interference; depriving Ms. Myers and her children of the right to their property and home; and depriving Ms. Myers of her liberty and freedom without due process and indictment by a proper grand jury prior to deprivation of her freedom and liberty.

**Detective Kritch Allen**

94. Detective Allen stated false, fabricated, and/or tainted statements in his affidavit for two search warrants; as shown by the following:

> (1) An "unknown black male resembling known photos of Tyree Myers was seen on the back porch of the residence"; yet, the search warrant issued named both Tyre Myers and Dameon Myers;
>
> (2) "surveillance was maintained on the residence and no one was seen entering or leaving the residence." However, neither Tyre Myers nor Dameon Myers was inside the home;
>
> (3) "[a] traffic stop was conducted outside the sight of the residence and the female operator was identified as Loushonda Myers." There was no traffic stop, Ms. Myers was unlawfully seized purposely for the USMS agents to identify her;
>
> (4) "an unknown black male was seen opening the blinds in the residence and looking out at surveillance officers". Yet, no one was inside the home; and
>
> (5) "[w]hen Ms. Myers returned to the residence, officer denied her entry to the residence, an upon approach, distinctly heard the sound of a door locking". But, once again, no one was inside the residence.

95. Based solely on fabricated, tainted, deceptive and/or misleading information; Detective Kritch Allen applied for the first defective search warrant for Tyre and Dameon Myers. Kritch Allen did not see Tyre nor Dameon Myers at Ms. Myers's residence; Kritch Allen did not have personal

knowledge of any crime committed, being committed, nor about to be committed; Kritch Allen did not possess a valid arrest warrant; Kritch Allen did not verify the NCIC nor any other law enforcement database to verify the fabricated and/or fraudulent information provided to him; and Kritch Allen committed fraud upon the court and facilitated an ongoing criminal and civil conspiracy when he knowingly, willingly, and/or willfully used fabricated, tainted, deceptive, and/ or misleading information and hearsay in an affidavit and produced it to a magistrate, Keith Underwood, as fact. Then, for a second time; after executing the first fraudulently obtained search warrant; Kritch Allen applied for a second fraudulent search warrant knowingly, willingly, and/or willfully using the same fraudulent, deceptive, and/or fabricated information from the first unlawful search warrant. Detective Allen had full knowledge and/or awareness that the information in the first search warrant was false, malicious, fabricated, and/or tainted; yet, he used it for the issuance of the second search warrant and again, knowingly and/or willfully committed fraud upon the court, Ms. Myers, and her children. Detective Allen knew he was participating in a conspiracy, and deliberately chose to seek out a different magistrate, Walter Stanley, to sign the second deceptive search warrant.

96. In Detective Allen's affidavit for both search warrants he states, "Information was received from law enforcement sources in South Carolina indicating that Tyree Myers and Dameon Myers were at the residence ... as of Friday, October 8, 2010 and continuing to today, October 12, 2010." However, the information that the JCSO received was never turned over in discovery. Ms. Myers never received an arrest warrant for either Tyre nor Dameon Myers; she never received the source of the information indicating that Tyre and Dameon Myers were at her home; she never received the NCIC report for Dameon Myers; and she never received any additional discovery that she demanded.

97. Tyre Myers's NCIC report was not pulled until October 13, 2010 and Dameon Myers's NCIC report was never pulled by the JCSO; Kritch Allen; Magistrate Stanley, Underwood, or Hale; Adren Harris; and/or any trained, skilled, experienced, and/or learned officers of the law and/or court.

**Captain A.C. Fish**

98. In his notes provided in initial discovery, Captain Fish knowingly and willfully restated fabricated, misleading, and/or fraudulent information; and acknowledge that he, as well as Bryan Konig and the unknown US Marshal agents, possessed and withheld substantive information, facts, and/or documentations. As will be further explained later herein and by his statements:

> (1) "On Tuesday October 12, 2010 I was contacted by US Marshall Brian Knorig and advised of a situation where two individuals from South Carolina were listed as wanted for robbery and narcotics violations." Captain Fish knowingly and willingly did not verify this information and/or verify the NCIC report;
>
> (2) "I learned from Marshall Knorig that the two fugitives were possibly hiding at the address of 19 Topsail Island Drive in Johnston County and that the two suspects were considered armed and dangerous. Marshall Knorig also said that the suspects would possibly have body armor and that one of the suspects had assaulted law enforcement in the past." Again, Captain Fish committed fraud, and restated information known to be tainted, false, and/or tainted;
>
> (3) "Later in the afternoon, Agent Kritch Allen advised me that a search warrant for the two fugitives was signed and the **US Marshall's was requesting assistance** in executing and securing the residence at 19 Topsail Island Drive". Captain Fish knew his statements were false and were made in furtherance of conducting unlawful activities.

33 of 104

Captain Fish knew that Detective Allen had applied for a search warrant;

(4) "Ms. Myers said she did not understand why the Us Marshall's were looking [for] anybody at her house. **I explained to her that I did not know how they got their information but that they had a search warrant for two fugitives that may be inside**." Captain Fish admitted that he and the aforementioned officers and/or agents of the JCSO knowingly, willingly, and/or willfully participated and/or managed the illegal activities that the US Marshals were conducting. Captain Fish also admitted that the US Marshals had their own warrant, but he never turned it over in discovery.

(5) "I advised Agent Kritch Allen to apply for another search warrant so we could search for drugs." Captain Fish knowingly and willingly directed his team member to apply for a second search warrant knowing that the first search warrant was issued maliciously; knowing that the US Marshals had their own warrant; knowing that their seizure and search of Ms. Myers and her children's home and property was unlawful; and knowing that they, the JCSO officers and/or agents failed to verify, prove, and/or provide any set of facts lawfully required for the application and issuance of a search warrant. Captain Fish committed fraud and advised his fellow officers to participate.

Captain Fish, Kritch Allen, Agent Knoig, and the remaining members of the JCSO and USMS Enterprise conspired with one another to achieve their own goals as well as the goals of the SC Enterprise.

**The Events Following Ms. Myers Arrest**

99. Ms. Myers was arrested on Tuesday, October 12, 2010, her birthday. On Friday, October 15, 2010, Marvin Myers, Jr., who was incarcerated in Columbia, South Carolina, went before a judge for a bond reduction hearing. The significance of this event will be elaborated on herein.

100. While Ms. Myers was in the Johnston County Jail, Agent Brian Zierverink of the North Carolina Department of Revenue (also referred to as NCDR) came and spoke with Ms. Myers. He informed Ms. Myers that an Unauthorized Tax Assessment had been initiated against her. While Ms. Myers was speaking with Agent Zierverink, Detective Allen and another officer was looking on smiling and making jesters. At this time, officers of the JCSO had already unlawfully seized money and collectible coins from Loushonda Myers and her children's home and unlawfully gave them to the North Carolina Department of Revenue.

101. In October 28, 2010, Kimberly Franklin of the JCDSS came and spoke with Ms. Myers. She said that allegations of neglect were being brought against her. The papers that Ms. Franklin brought to Ms. Myers never stated specifically what allegations were given that constituted neglect, nor did they state where these allegations came from. The paperwork that Ms. Franklin provided to Ms. Myers states, "assessment regarding allegations of neglect", however the actions that constituted neglect were never provided.

102. Ms. Myers's family members were seeking an attorney for Ms. Myers during her incarceration in the Johnston County Jail. Her family had retained Aleta Ballard. Ms. Ballard appeared with Ms. Myers at a bond reduction hearing, and on or around October 29, 2010 Ms. Myers was released from jail after spending over two weeks in confinement. After Ms.Myer's release, she met with Aleta Ballard at her office. Eric McNeil was present with Ms. Myers when she met with Aleta Ballard at her office. Ms. Ballard informed Ms. Myers that there were so many mistakes in her case that it reminded her of law school. In the beginning Ms. Ballard seemed to be working for Ms. Myers, but her conduct would prove to be otherwise later on in Ms. Myers's criminal case.

103. Additionally, after being released from jail, Ms. Myers was informed that Shareef Marshal, a witness that Ms. Myers had contacted on October 12, 2010; had been under surveillance,

followed, seized, searched, and threatened on the same day. Agents of the USMS along with officers from the Wake County Sheriff's Office (also referred to herein as WCSO) had pulled him over and searched his car and cell phone. Afterwards, they threatened him and told him that if he contacted Ms. Myers or any member of her family, they would retaliate by throwing him in prison for five years. Additionally, Ms. Myers had discovered that her bank account at BB&T had been unlawfully seized by the North Carolina Department of Revenue, which was initiated by agent Brian Zierverink.

104. On November 5, 2010, Kimberly Franklin came to Ms. Myers home. Ms. Franklin came with yet another new set of allegations. However, this time the allegations were not only against Ms. Myers, but also against one of her minor children. Ms. Franklin's paperwork stated, "Allegations that the Myers residence is a stash house 2 fugitive brothers in the home. [C] [Full name omitted. Ms. Myers's child] has 3 cellular phones & may be involved." Ms. Myers and her family members that were present at the time informed Ms. Franklin that the allegations were untrue; and that the allegations were an attempt to intimidate, threaten, and coerce Ms. Myers, so Tyre and Dameon Myers could fall prey to some elaborate schemes. However, Ms. Franklin ignored what was stated to her. Ms. Myers informed Ms. Franklin that she was being forced to move due to the events of October 12, 2010. Ms. Franklin responded by telling Ms. Myers that she had to inform her of when she was moving, and of the new address. Ms. Myers complied due to the threat and fear of losing her children.

## Events in South Carolina

105. In mid November 2010, Ms. Myers moved back to Georgetown, South Carolina. While in South Carolina Ms. Myers received a visit from a Georgetown County Department of Social Services (also referred to as GCDSS) employee. This employee stated that they had received information

from North Carolina, and needed to conduct a home visit. Under fear and threat of losing her children, Ms. Myers complied and allowed the home inspection. This was the last time that Ms. Myers heard from anyone from any Social Service agency regarding her children. However, later, around November 18, 2011; the JCDSS did provide documents that contained false, fraudulent, and/or tainted information. Heidi Clay initiated the case against Ms. Myers after receiving information from the JCSO enterprise. Those materials were turned over after the Johnston County Superior Court Judge, Thomas Lock, conducted an in-camera review and decided which materials he felt Ms. Myers had a substantive right to. Those materials that were chosen by Judge Lock were later turned over to Ms. Myers, and to her then attorney Steven Walker.

106. Immediately, Ms. Myers began working on her criminal case and trying to piece together the small puzzle pieces of information that she had in her possession. Ms. Myers contacted Aleta Ballard and informed Ms. Ballard that she needed her discovery materials. Ms Ballard mailed those materials to Ms. Myers via USPS in January of 2011. Those materials contained false, fraudulent, and/or tainted information.

107. Ms. Myers knew that the events that occurred to her and her children were illegal. Ms. Myers also knew that on and around October 12, 2010, Bryan Konig, the unknown USMS agents/employees, as well as the individuals from the JCSO were using cellular phone tracking. So, Ms. Myers began to think about how the USMS agents and Brayn Konig were able to obtain her cell phone number. Ms. Myers remembered that she had been in contact with Marvin Myers, Jr. and his attorney, Micah Leddy; an attorney from Columbia, South Carolina; just days prior to the events at her home on October 12, 2010. After returning to South Carolina, Marvin Myers, Jr. called Ms. Myers. Ms. Myers then placed a three-way call to attorney Micah Leddy. During this call, Ms. Myers told Micah Leddy that she knew he was the one that gave her cell phone number to the

United States Marshals. Micah Leddy responded by asking Ms. Myers, "Who told you that?" Mr. Leddy never denied any involvement in the tracking and/or surveillance of Ms. Myers's cellular phone.

108. After receiving, the discovery materials mailed to her by Ms. Ballard, Ms. Myers realized that essential and material documents, proofs, and/or materials were missing. Ms. Myers began requesting for Ms. Ballard to obtain those materials. Between February 7, 2011 and June 20, 2011 Ms. Myers sent numerous e-mail; placed numerous phone calls; and made visits to Ms. Ballard's office. However, Ms. Ballard was never willing to obtain any additional substantive discovery materials and/or Brady Materials. Finally on July 7, 2011, Ms. Myers terminated Ms. Ballard's service. On July 11, 2011, Ms. Myers sent Ms. Ballard another e-mail notifying her that her assistant and/or paralegal Regina Manzanares had informed Ms. Myers of the fact that Ms. Ballard had never submitted a motion for discovery materials, and therefore was not able to submit a motion to compel discovery. Ms. Ballard hindered and obstructed Ms. Myers from receiving substantive discovery materials; and failed to notice substantive material misrepresentations, fraud, and/or tainted information contained therein. Most importantly, Ms. Ballard never inquired as to why arrest warrants for Tyre and Dameon Myers were never included in the discovery materials when this was the alleged reason that the United States Marshals were at her home. Furthermore, Ms. Ballard failed to notice that the NCIC reports provided were dated the day after Ms. Myers substantive Constitutional and Civil rights were violated, restricted, hindered and/or deprived.

109. Ms. Myers initiated both a fee dispute and a grievance against attorney Aleta Ballard on July 5, 2011 and August 7, 2011 to the North Carolina States Bar. Krista Benett handled the fee dispute and Furn Gunn Simeon handled the grievance. Ms. Myers submitted documents and/or proofs

with both the fee dispute and the grievance; and provided e-mail communication showing the length of time, as well as the number of times she contacted Ms. Ballard via e-mail for substantive discovery materials. Yet, both Krista Bennett and Furn Gunn Simeon failed to advocate on Ms. Myers's behalf, and they failed to take the facts into consideration. Both the fee dispute and grievance was terminated in favor of Ms. Ballard. After the termination, Ms. Myers wrote John Silverstein and made him aware of the conduct and substantive violations that were occurring against her. John Silverstein failed to act and failed to prevent further harm and injustice from befalling upon Ms. Myers. Not to mention, all three of the above individuals overlooked the fact that Adren Harris's sworn affidavit was notarized by Regina Manzanares, Aleta Ballard's assistant and/or paralegal. This presented not only a conflict of interest, but it dragged Ms. Manazanares into an ongoing conspiracy to deprive Ms. Myers of her substantive Constitutional rights to seek redress for any harm and/or injury that was done unto her.

110. On August 3, 2011, Ms. Myers had a court date in which Aleta Ballard sought to be relieved as counsel. Ms. Myers had submitted a motion to be heard on the matter detailing the specific reasons why she had terminated Ms. Ballard's services, yet Ms. Myers was denied the right to be heard by the presiding judge. This same day, Steven Walker was appointed to be Ms. Myers's attorney. Ms. Myers first contacted Mr. Walker on August 5, 2011, and then again on August 9, 2011 via e-mail. Ms. Myers sent Mr. Walker a letter detailing the things that she needed and had a right to.

111. During their initial e-mails, Ms. Myers was upfront with Mr. Walker and informed him of the delays and hinderances that she had experienced with her previous attorney. Ms. Myers told Mr. Walker that she did not want to have to go through that type of ordeal again. Between August 2011 and January 2012, Ms. Myers and Mr. Walker engaged in numerous e-mail and phone

conversations regarding her case, and discussing the information that she needed; as well as the information that she had obtained by investigating herself.

112. However, Mr. Walker was unsuccessful in obtaining the substantive discovery and Brady materials Ms. Myers had requested. After going back and forth with Mr. Walker regarding her case and the materials she needed for months, a court date was scheduled for November 8, 2011. During this court date, Mr. Walker requested some of the materials that Ms. Myers had requested, yet he never stated on the record that substantive Constitutional and/or North Carolina laws had been violated. Mr. Walker never stated on the record that Ms. Myers's rights had been violated or that he was aware that something funny was going on with this case. Mr. Walker was in a position to prevent Ms.Myers's rights from further being hindered and/or deprived and he failed to act. His conduct allowed further violations to occur to Ms. Myers; and his conduct perpetrated a conspiracy against Ms. Myers by allowing fraud and/or tainted information to be introduced onto court record. On November 8, 2011, Ms. Myers spoke for herself and entered on to the record that her Constitutional rights had been violated and were continuing to be violated.

113. Judge Paul Gessner was made aware on November 8, 2011 of the substantive violations that had occurred to Ms. Myers, and he was made aware of the fact that Adren Harris, Captain Fish, Detective Allen, Bryan Konig, and numerous other law enforcement officers and/or employees were hindering and obstructing justice by failing to turn over substantive materials during Ms. Myers's criminal case. Judge Paul Gessner's conduct in failing to act and/or failing to enforce the laws of the United States Constitution further perpetuated the conspiracy to violate Ms. Myers substantive Constitutional and Civil rights, as well as hindering and obstructing a federal investigation.

114. Judge Paul Gessner ordered assistant district attorney Adren Harris to turn over substantive

discovery materials pursuant to North Carolina law. However Adren Harris failed to comply with

the court order, and to this day Ms. Myers is being denied the right to these materials. On

December 30, 2011, Adren Harris signed a dismissal of Ms. Myers criminal charges stating, "no

probable cause for arrest". On or about January 3, 2012, Ms. Myers was informed by Steven

Walker that her criminal case had been dismissed. After the dismissal of her criminal case, Ms.

Myers sought to retrieve her property that had been stolen from her home and property.

115. Ms. Myers contacted Adren Harris and resident judge, Judge Thomas Lock. On September 2012

Judge Timothy Kincaid denied Ms. Myers motion for the return of her property, knowing that her

criminal case had been dismissed. Upon submitting a motion for reconsideration, Judge Thomas

Lock also denied it. Judge Lock stated that my record was being expunged, and that he would

entertain no more motions in the case. Ms. Myers's right to her property was denied even though

she was not found guilty of any crime. Both Judge Thomas Kincaid and Judge Thomals Lock was

aware of the fact that Ms. Myers's criminal charges were dismissed. Both Kincaid and Lock were

in a position to prevent further harm from befalling upon Ms. Myers, but they failed to act. Their

conduct further perpetuated the goals of the enterprise in that both judges were instrumental in

depriving, denying, and/or restricting Ms. Myers from obtaining her property as well as

substantive evidence from her Blackberry phone that was in the possession of the JCSO.

### North Carolina Unauthorized Substance Tax Case

116. During Ms. Myers's criminal proceedings, she was also engaged in a battle against the North

Carolina Department of Revenue (also referred to as NCDR). The NCDR became involved in the

conspiracy against Ms. Myers when they were contacted by Detective Allen. Detective Allen

initiated the contact with the NCDR and Agent Zierverink, and thereby recruited Agent Zierverink

into a conspiracy. Agent Zierverink began his patterns of illegal activity by placing a seizure on

Ms. Myers's bank account held with BB&T. Ms. Myers initiated a contested tax hearing, and challenged the tax assessment that was initiated against her. Assistant attorney general Andrew Furuseth took over the tax case as prosecutor. Through the course of fighting the tax case, Ms. Myers consistently raised the issues regarding the patterns of illegal conduct that was waged against her. One of the illegal conduct perpetrated against Ms. Myers was the unlawful use of cellular phone tracking, tracing, and/or surveillance done through AT&T Inc. and/or AT&T Mobility.

117. AT&T Inc. and/or AT&T Mobility unlawfully provided cellular phone location, surveillance, and/or information to individuals of the USMS and individuals of the JCSO. Ms. Myers submitted a subpoena request to the Office of Administrative Hearings to be issued to AT&T Mobility. On January 20, 2012, Administrative Law Judge Webster signed the subpoena. The signed subpoena was returned to Ms. Myers and served upon AT&T pursuant to AT&T's procedures regarding subpoena requests, as well as by USPS certified return receipt. AT&T was ordered to respond by March 23, 2012. On March 8, 2012, William Schur, AT&T's attorney, contacted Ms. Myers via e-mail. Ms. Myers and Mr. Schur relayed messages via e-mail until March 14, 2012. On or around March 14, 2012, Ms. Myers had a telephone conversation with Mr. Schur in which she explained the need for the subpoena to be fulfilled. Ultimately, Mr. Schur stated that he probably will be filing a motion to quash the subpoena; but that motion was never submitted. However, about two weeks later, Ms. Myers did receive a phone call from assistant attorney general Andrew Furuseth stating that he was dismissing the unauthorized substance tax against Ms. Myers. On March 28, 2012, Mr. Furuseth sent both Ms. Myers and the administrative court clerk an e-mail memorializing our telephone conversation, and continuing the hearing and discovery deadlines. To this day, Ms. Myers has not received any information, discoverable materials, and/or

documents from AT&T Inc. nor AT&T Mobility.

118. Upon relocating back to South Carolina, Ms. Myers began obtaining information, evidence, and/
or documentation of the patterns of illegal activities that the SC Enterprise had been engaging in.
Those patterns of activities initiated the events that occurred in October 2010, in which Ms. Myers
and her minor children were the victims of the conduct. A witness by the name of Franklin Joye
told Ms. Myers that law enforcement officers were going around asking individuals if they knew
Tyre and Dameon Myers; and if they knew where they were located. These officers told these
individuals that all they needed was a phone number. These events occurred after the hostile take
over of Ms. Myers and her children's home and property, and after AT&T Inc. and/or AT&T
Mobility LLC had already engaged in the unlawful surveillance, tracking, and/or tracing of Ms.
Myers's cellular phone(s). The information provided by Mr. Joye provided supportive evidence of
the conduct of the unknown employees at AT&T Inc. and/or AT&T Mobility, LLC in providing
unlawful cellular information and/or details. These employees engaged in the RICO enterprise by
participating in patterns of illegal activity including, but not limited to hindering and obstruction
of justice, witness tampering, hindering and obstructing a federal investigation, and mail and wire
fraud. All of these acts being against state and federal laws, including the United States
Constitution and 18 U.S.C. 1961.

119. Ms. Myers also began seeking information regarding the murder of Joseph Pope, a Georgetown
County Detention Center employee. Ms. Myers sought of the court records concerning the murder
trial of Mr. Pope's wife, Keri Pope, and discovered some substantive and material documents,
information, evidence, and/or proofs. In Keri Pope's trial records, their was an FBI report from
June 26, 2006 and a Pre-Trial Memorandum that her attorney, John Hilliard, had submitted. In the

43 of 104

FBI report contained information that was furnished by the Georgetown Police Department and the 15th Circuit Drug Enforcement Unit (also referred to herein as DEU), formerly known as Georgetown County Organized Crime Bureau. The DEU is comprised of law enforcement officers from Georgetown and Horry Counties, as well as surrounding areas and federal agents. To understand the why these individuals in Georgetown, South Carolina operated and managed this illegal enterprise, and developed a scheme to name siblings of a family as a gang, it is necessary to provide some factual background and patterns of illegal activity.

**Relevant Factual Background Regarding Law Enforcement in South Carolina**

120. As stated previously in this complaint, in 1995 there was an incident in which Tyre and Jamol Myers were aggressively attacked by numerous GCPD officers. In the latter part of 1998, their was a bank robbery at a local First Citizen's bank in Georgetown, South Carolina. Officers of the GCPD wanted to implicate Tyre Myers as being involved on the bank robbery. During the investigation of this bank robbery, Wilfred Brown, a friend of Tyre Myers and his siblings, was arrested and charged with the robbery. During this period, Mr. Tyre Myers's name kept surfacing as someone they wanted for the bank robbery. The attempts to frame Mr. Myers for the bank robbery by the individual officers were not producing any desirable results. So, certain individuals of the GCPD concocted another plan in order to deprive Mr. Myers of his property and rights.

121. On April 9, 1999, false charges were instituted upon Tyre Myers for distribution of cocaine. In a GCPD incident report date April 9, 1999, Officer Scott Scogin stated, "a confidential informant purchased 14.2 grams of white in color powder substance believed to be cocaine......CI [entered the apartment] and purchased the cocaine from Sam Porcher and Tyree Myers, by giving Mr. Porcher $600.00 and receiving the cocaine from Tyree Myers." The incident report goes on to state, "Prior to actual transaction CI made contact with Tonya Benjamin and asked her if she

44 of 104

would set up a deal with Mr. Porcher and Mr. Myers who were inside of Benjamin's Apt." GCPD Officers John Fernandez, Scott Scogin, and Jim Arnold were involved in and actively conspired against Mr. Myers to wrongfully convict him of distribution of illegal narcotics. These three men knowingly and willingly conspired to name Tyre Myers as being involved in an under cover drug bust with three other individuals. Tonya Benjamin, one of the individuals involved in the drug bust, personally went to Officer Fernandez prior to Tyre Myers being arrested on the false warrant for distribution of cocaine, and told Officer Fernandez that Tyre Myers was not at her home nor involved in the transaction. Additionally, Ms. Benjamin swore out a notarized affidavit stating the same for Tyre Myers during both his criminal case fighting the fraudulent charges, and during his civil suit pursued against Officer Fernandez for being the ring leader behind the plot to frame him on narcotics charges.

122. Then, on April 16, 1999, GCPD Officer John Fernandez fraudulently swore out a false arrest warrant for Tyre Myers alleging that Tyre had threatened him over the telephone. This incident began with the detention of one of Tyre's younger siblings. Officer Fernadez called the Myers's home and Tyre answered the phone. Officer Fernandez stated that the younger sibling was being held at the police department and someone needed to pick him up. Tyre began questioning Officer Fernandez about an incident that had occurred weeks prior, in which officer Fernandez, James Arnold (also referred to as Jim Arnold), and another officer were slowly driving by and videotaping Mr. Myers. Mr. Myers told officer Fernandez, "If he keep fucking around, he's not going to have a job next week". In response, Officer Fernandez swore out a false arrest warrant stating that Mr. Myers had said, "You won't be working next week because I'm going to fuck you up mother fucker."

123. Ultimately, the charges were dismissed, but only after substantial, irreparable damage to Mr.

Myers's business and property were done. Tyre Myers spent about ninety (90) days in jail; and spent approximately $28,000 in attorney's fees to James Sarvis fighting the fraudulent charges initiated by officer Fernadez with the aid and support of Scott Scogin, Jim Arnold, and Glen Kufen. On march 30, 2001, William Gary White, III, filed a complaint on Tyre Myer's behalf against officer John Fernandez for the false arrests that occurred for the drug distribution charge as well as the threatening the life of a public official charge. During the course of discovery, Tyre Myers took a deposition in which Victoria Vaught, officer Feranadez's attorney, was conducting the questioning. In this deposition, Mr. Myers answered questions regarding the 1995 incident with officer Bailey, and numerous other incidents that had occurred between him, his family, and law enforcement officers in Georgetown, South Carolina. Ms. Vaught asked Mr. Myers, "Now can you tell me, if you know, why you were charged with drug trafficking"? Mr Myers stated , "[y]es" and the stated, "To be honest with you, hatred, that's why I was charged with those crimes." Ms Vaught responded with, "Do you have any other knowledge of why you were charged, anymore specific knowledge than just hatred?" To which Mr Myers responded, "That's, that's the only thing I can think of. That's like the only facts." During this deposition, the 1995 incident in which officer Chris Bailey was involved was also brought up. In fact, Officer Bailey was listed as a witness for John Fernandez on the Defendant's Rule 26(f) Report and Rule 26(a)(3) Disclosures, as well as John Hilliard, II, Glen Kufen, Scott Scogin, James (Jim) Arnold, and Sam Porcher. And, previously mentioned, Wilfred Brown stood trial for the criminal charges of bank robbery and was found not guilty by a jury.

124. This enterprise in South Carolina did not only target Tyre Myers, but his siblings and his father was also a target. In fact Dameon Myers is currently serving a twenty (20) year prison sentence due to the illegal activities of the individual law enforcement officers in South Carolina. On

Case 5:12-cv-00714-BO   Document 189   Filed 03/31/14   Page 46 of 104

January 24, 1999, Jamol Myers and a dear friend, Carlos Deville were the victims of an unlawful arrest and seizure that resulted in both men losing their lives. Upon factual information supplied from a FOIA request through the South Carolina Highway Patrol, it states, "The FBI has taken over some of the case. They are working on a possible connect to an armed robbery that occurred two weeks prior." This report supports other facts and statements made by South Carolina law enforcement in the June 6, 2006 FBI Report, which will be expounded on later herein. Similarly, Marvin Myers, Sr. was kidnapped and assassinated as a result of the illegal activities of law enforcement in South Carolina. Marvin Myers, Sr. suffered from years of mental illness; and on March 29, 2001, he died in the custody of the South Carolina Department of Corrections (also referred to as SCDC). Mr. Myers was placed in the custody of SCDC knowing that he suffered from mental illness, and needed appropriate medical care that could not be administered in a prison psychiatric unit. Pursuant to the State of South Carolina Executive Order #2000-11, "A safekeeping order must not be utilized as a means to acquire or provide medical services, medical attention or to hospitalize a pretrial detainee in the Department of Corrections. Mentally ill or retarded individuals are not eligible for safekeeping at the Department of Corrections." The Governor's Order was signed on February 9, 2001. On February 12, 2001, Marvin Myers, Sr. was transported to Lee Correctional Facility in Bishopville, South Carolina. Then, on February 14, 2001, Mr. Myers was admitted to the Gilliam Psychiatric Ward of Kirkland Correctional Institution in Columbia, South Carolina at the request of Lee Correctional Facility due to his mental illness. Yet just days prior to this, February 6, 2001, Major Charles Kocsis of the GCDC signed an affidavit stating that Mr. Myers, Sr. was competent to stand trial. Moreover, just prior to Mr. Myers, Sr.'s death he was seen by the medical staff and had a body temperature of 84 degrees. Nothing was done to prevent what inevitable happened to Mr. Myers, Sr. After being at the

Gilliam Psychiatric Ward of Kirkland Correctional Institution for a little over a month, Marvin

Myers, Sr. died on a cold, hard floor.

## Substantive Materials Found in South Carolina

125. As stated previously, Ms Myers was able to find several documents, evidences, and proofs

regarding the South Carolina Enterprise and their connection to the incidents that occurred to her

and her family on and around October 12, 2010. A vital component of these proofs and evidence

included John Hilliard's April 20, 2011 Memorandum of Authorities, Evidence of third party guilt

and Pre-Trial Memorandum in Support to the South Carolina Court of General Sessions in

Georgetown, South Carolina; and Tom Rubillo's Petition. Tom Rubillo is an ex-mayor of

Georgetown, South Carolina and ex-solicitor in South Carolina that worked extensively on the

Pope murder case with John Hilliard in support of Keri Pope. Rubillo's Petition contains the same

information that Hilliard used in his Memorandum for Keri Pope. Rubillo's Petition was sent to

numerous local, state, and national authorities, including the Department of Justice, South

Carolina Attorney General, and the United States Attorney for South Carolina. Like Hilliard's

Memorandum, Rubillo's Petition contains lies, fraud, and tainted information in an effort to free a

white woman on the murder of her husband, and pin the murder on siblings of a family. The

murder case was and is racially based as evident in their own materials supplied to the court and

to state and national authorities. For example, in Rubillo's petition he states, "Police files indicate

that, like many other activities in Georgetown, the drug business at the time was racially

segregated, with the Myers gang furnishing drugs mostly to the black community and the Ward/

Owens group (of which Joey Pope had been a part) serving the white community." Hilliard and

Rubillo wanted a race war, and they knew in Georgetown, South Carolina racial tensions are high

and it would create a perfect defense for Keri Pope if she blamed the murder on black men. Their

criminal intentions are apparent in the use of words such as "Myers gang" to describe siblings of a black family, and the use of "Ward/Owens group" to describe white associates.

126. Additionally, in Rubillo's Petition, the Myers siblings are accused of "robbing drug dealers of dope and money". Similar words were used on October 12, 2010 when Ms. Myers question Deputy Gillis regarding why law enforcement had seized her home and property; and those words appear again in the warrants, notes, and/or evidence supplied form Detective Allen, Captain Fish, and Adren Harris. Furthermore, Hilliard's Memorandum and Rubillo's Petition is supported by Georgetown City Police Department interviews and/or notes with incarcerated individuals and/or individuals that were facing incarceration. Importantly, several of those individuals, including Jody Ward Jimmy Cagle, and Jermaine Armstrong either changed their stories, and/or named other individulas. However, the white individuals named were not included as suspect and/or were overlooked, and subsequently, the black individuals, Terry Wayne Jones and Glennie 'Jap' Sargent, were named as members of the "Myers gang". This has been proven by the 2006 FBI Report, Hilliard's Memorandum, and Rubillo's Petition. All of which stated that their information was provided, obtained, and/or gathered from the Georgetown City Police Department and/or 15th Circuit DEU, which includes numerous law enforcement officers including the aforementioned GCPD. As confirmed in Hilliard's Memorandum, "In this case [Joey Pope's murder], abundant evidence has been gathered by the police [GCPD] pointing to the commission of the murder of Joey Pope by members of a local drug cartel controlled by the Myers family." And, as further stated in the June, 2006 FBI report, "[r]eferral from Georgetown Police Department involving a murder case".

127. Both John Hilliard and Tom Rubillo knew that they were actively participating in on going conspiracy by the GCPD to retaliate against the Myers family. John Hilliard was fully aware due

to his active participation in the 1999 drug charges against Tyre Myers. He was the solicitor in the

planned drug case. Hilliard and Rubillo knew that the Myers siblings had nothing to do with the

murder of Joey Pope, but they actively engaged patterns of criminal activity to blame them, and

ultimately keep Keri Pope from imprisonment. Keri Pope knew what they were doing and she

knew that they were committing fraud and conspiring to blame innocent people of a murder. Keri

failed to report this misconduct and prevent further harm and damage from occurring to the Myers

siblings, even-though it was in her power to do so. For example, Rubillo stated in his petition,

"Within days of the murder, Mrs. Pope sat down with a police artist and described the two men

who had invaded her home and killed her husband. Detailed drawings were produced. Thereafter,

Mrs. Pope scanned through mug shots, ranking one-identified by police as being that of Dameon

'Debo' Myers on one occasion and as Debo's brother Tyree Myers on another-- as registering an 8

or 9 on a scale of 10." However, the facts are that Keri Pope knew both Dameon and Marvin

Myers on a personal level. Keri would have been able to positively identify either one of the

Myers siblings due to her being friends with them. These facts were knowingly withheld by Keri

Pope, Tom Rubillo and John Hilliard. These individuals went as far as to frame innocent people of

a murder, knowing that it could mean death for the individuals convicted of the murder, and did

not care so long as their objectives were accomplished. Acting off and further participating in the

criminal activities of the officers of the GCPD and Chief Paul Gardner, Tom Rubillo and John

Hilliard supplied fraudulent, tainted, and/or misleading materials, documents, proofs, and/or

evidences to state and federal agencies, offices, and/or individuals that further facilitated the on

going criminal and civil conspiarcy against Tyre, Dameon, and Marvin Myers, which

subsequently assisted and advanced the criminal activities of the enterprise; and promoted the

events that occurred on and around October 12, 2010 which caused substantial, irreparable

damage, injury and harm to Loushonda Myers and her children.

**Tampering with Federal and State Law Enforcement Documents and Files and NCIC**

128. During Ms. Myers criminal case, it became apparent that substantive materials had been and were being withheld. Fraudulent information kept resurfacing in regards to both Tyre and Dameon Myers. Captain Fish, Scott Hixon, Tom Rubillo, John Hilliard, and Greg Hembree provided information and/or statements to judicial officials, public officials, law enforcement, and/or court records that stated Tyre Myers was tried and convicted of drug offenses. And, Adren Harris, Tom Rubillo, and John Hilliard provided information and/or statements to judicial officials, public officials, and/or court records that state Tyre and Dameon Myers were involved in a murder. These statements are false; misleading; tainted; and/or made with criminal intent to obstruct justice, further a criminal conspiracy, and falsely convict Tyre and Dameon Myers of criminal acts they did not commit. To explain, Captain A.C. Fish's statements states, "I was contacted by US Marshall Bryan Knorig and advised of a situation where two individuals from South Carolina were listed as wanted for robbery and narcotics violations". Fish also stated, "the two suspects were considered armed and dangerous" and "the suspects would possibly have body armor, and that one of the suspects had assaulted law enforcement in the past". (The last portion of Fish's statement is referring back to the 1995 incident with Jamol and Tyre Myers, previously mentioned herein.) On November 8, 2011, Adren Harris stated on the record under oath that Tyre and Dameon Myers were wanted for "murder or some type of robbery". These statements conflict with the truth. Tyre Myers was never convicted of any drug charges; and the one drug charge that he had was manufactured by the GCPD Enterprise, and dismissed. The NCIC Report for Dameon Myers was never produced during discovery even-though it had been requested on numerous occasions, and even-though Plaintiff had a substantive right to the NCIC report. Tyre Myers's

NCIC report was not pulled until October 13, 2010, the day after the unlawful activities had

occurred at Ms. Myers and her children's home and property. Yet, on November 8, 2011, Adren

Harris perjured himself and stated on the record that the NCIC report for Tyre Myers provided the

probable cause for the illicit events at Ms. Myers and her children's home.

The Court: "Are you aware of any NCIC report showing Damien Myers is a fugitive from justice or just

the one for Tyree that was handed over?"

Harris: "The only one that we have is the one for Tyree that was handed up."

The Court: Which was used as a basis for the probable cause of the original search warrant?"

Harris: "Exactly. Yes, Your Honor. That's the one that fits the description of the individual they saw. They

saw they saw one individual. I believe it was two-- I don't know if they're brothers or not, but that

was the one. And based on that, that's why we handed that over because that's what we used for

the basis of a search warrant."

129. The NCIC report for Dameon Myers was never produced and/or given to Ms. Myers. Ms. Myers's

NCIC report and Tyre Myer's NCIC report was not pulled until October 13, 2010, the day after

the illegal patterns of activities. The NCIC report for Ms. Myers did not contain any information

stating that Ms. Myers was connected to a drug ring, like Detective Allen had stated in front of

Magistrate Hale. Tyre Myers's NCIC report does not have him stated as "armed and dangerous",

nor does it state him being wanted for drugs and robbery, like the JCSO Enterprise keeps stating

in documents, court records, and/or materials. The RICO defendants and their co-conspirators

knew they information was fabricated, false, and/or misleading and continued to use the

information as factual, and introduced fraud into the court proceedings of Ms. Myers. The GCPD

Enterprise concocted fraudulent information and passed it on to the FBI and the NCIC database,

knowing that the information was false. The SC Enterprise illegal conducted a pattern of abusing

and submitting fraudulent materials in state and federal databases. For example, on October 12, 2010 Captain Fish stated in his report, " Ms. Myers said she did not understand why the US marshall's were looking anybody at her house. I explained to her that I did not know how they got their information but that they had a search warrant for two fugitives that may be inside." Fish's statement is clear and confirms that the US Marshals did in fact possess search warrants that were used to give information to the RICO Defendants. Yet, the US Marshals did not turn over the arrest warrants, search warrants, and/or NCIC reports because they knew that the information on them was false, tainted, and/or fabricated. The US Marshals did not use their own search warrants because they knew they were fraudulently obtained, and/or obtained by using fraud upon a court. Additionally, this was confirmed on Wednesday, December 14, 2011 when Steven Walker, Ms. Myers's attorney, sent her an e-mail responding to her discovery requests. Ms Myers had asked Mr. Walker, "Has Adren Harris turned over any materials that the judge ordered him to?" Mr. Walker's response was, "There does seem to be as to what they have. Marshal Konig told me that he has a report from the US Marshals in South Carolina detailing the reasons why they thought 'fugitives' were there. He told Mr. Harris he has no such information. I know I didn't make that up. I specifically remember him telling me that he had that information, but didn't give a copy of it to the JCSO, that he just showed it to them." Furthermore, on December 16, 2011, a news article stated that the FBI had sanctioned South Carolina Law Enforcement Division (SLED) for "not properly monitoring the local law enforcement agencies in the state that access national crime databases through SLED". As evident from the 2006 FBI report, false information had in fact been entered in the NCIC database, state, and/or federal databases. The report itself states, "Damian and Tyre Myers were convicted and sentenced in absentia on local drug charges and are currently fugitives." And, the FBI report contains Federal Nexus of Conspiracy, Firearms

53 of 104

Offenses, Robbery/Burglary, and Drug Offenses. All of which are based on fraud conducted by individuals of the GCPD Enterprise.

130. To further explain, during Ms. Myers's and her family members'; Gabrielle Myers and Christina Myers; attempt to view records requested through a FOIA request, individuals of the GCPD Enterprise intervened and prevented them from viewing the documents, materials, and/or evidence. On November 14, 2011,the GCPD conducted this criminal act by falsely accusing Ms. Myers, her family, and/or someone acting on their behalf of threatening a witness that was named in the documents, materials, and/or evidence. On November 15, 2011, Ms. Myers; Eric McNeil; and Tyrone Parsons, Jr., the alleged witness that was threatened, went to the Georgetown City Police Department to obtain a copy of the incident report that stated Ms. Myers, her family, and/or someone acting on their behalf had threatened Mr. Parsons, Jr. The information was never produced and Ms. Myers ended up filing a complaint with Mayor Jack Scoville. The following is an excerpt from that complaint.

"I immediately told Mr. Hixon that neither Christina Myers, Gabrielle Myers, or I had threatened anyone that was inside any of the files that we had seen. I also informed Mr. Hixon that the Georgetown Police Department were lying and that this was unacceptable.

Afterwards, I was notified by Tyrone Parson that his father, Tyrone Parson, Sr., a correctional officer at the Georgetown County Detention Center, had contacted the Georgetown Police Department on his behalf and told them that they were putting his son's life in danger.

So, Tyrone Parson, Eric McNeil, and I went to the police department today to get a copy of the incident report and to get the name of the individual that had called over to the solicitor's office and lied to Scott Hixon. Upon arrival, we asked the receptionist to look up the incident reports by name of complainant and by the date. She could not find any records. Another woman also came from the back and assisted. She could find no records either.

We then asked to speak to someone else regarding this matter, Chief Gardner came out. I then asked Mr. Gardner for a copy of the incident report and he told me that I could not have it. I then told him that according to the FOIA, if someone appeared in person and requested for material that was covered under the FOIA and it has been within the specified time period guidelines, those

records should be made available immediately. He still refused me access to the incident reports.

Then, Mr. Parson asked for a copy of the incident report. Mr. Gardner then told us to give him twenty-four hours to find out what was going on. I told Mr. Gardner that he was not following the law, and that if he did not plan on making the incident report available, I would need for him to put it in writing. He refused. I then asked the receptionist to put it in writing that there were no incident reports to be found. She refused.

I then walked away from where we all stood and picked up the phone on the wall to call an officer to take a police report, simultaneously Chief Gardner returned to the back of the police department. Shortly thereafter, Mr. Gardner returned and asked for Mr. Parson to go in the back of the police department with him. After a brief conversation, Mr. Parson complied.

While Mr. Parson was speaking with the Chief, Officer Scogin walked in to make the police report. I explained the situation to Officer Scogin and he told me that Chief Gardner is his superior, and that he could not override what he says. I told Officer Scogin that I simply wanted to file a police report regarding the situation. He refused.

While I was speaking with Officer Scogin, Chief Gardner and Mr. Parson returned. Chief Gardner stated that there were never any incident reports filed. He also stated that Mr. Parson's father had contacted them and stated something to them, but no incident report was made.

In addition, Chief Gardner kept referring to my family as the "Myers Camp". Eric McNeil and I brought this to his attention. I asked him why he was referring to my family in this manner. Chief Gardner responded by saying, "What should I say?" His comment was very disrespectful, distasteful, and displayed a great deal of bitterness and hatred towards my family.

I then told Chief Gardner that either himself or one of his officers had called Mr. Hixon and lied, and that their lie resulted in my rights being violated. I also informed Mr. Gardner that Officer Scogin broke the law when he refused to take a police report from me, due to the fact that it was concerning his superior. In addition, I informed Chief Gardner that he also was breaking the law. As a citizen, I have the right to file a police report on anyone, regardless of their title or stature.

Then, Chief Gardner stated that he would take my report and put it with the other complaint that I had previously filed. At that point, I felt violated and very uncomfortable. I did not feel as if my complaint or my police report would be taken seriously, and if it was, would he really reprimand himself.

That is why I have chosen to take the appropriate steps and bring this incident to your attention. I expect for this matter to be taken seriously and I expect that the appropriate disciplinary actions will be taken.

I have previously spoken with you regarding several other matters, including the actions of the Georgetown Police Department. I will appreciate your prompt investigation into this matter.

No one should feel as if they can not file a police report or make a report on an officer of the law. These officers have taken an oath to uphold the law, and to protect and serve the citizens of this city. What was done to me is a great disservice to myself and the public."

131. The following day, November 16, 2011, Scott Hixon further perpetrated the conspiracy initiated by the GCPD Enterprise by committing mail fraud. Hixon knowingly sent Ms. Myers's attorney, Steven Walker, a letter stating "The paperwork Ms. Myers provided requesting access to case files indicates that she is acting on behalf of an individual that has been convicted at trial for a drug offense in this jurisdiction; has a sealed sentence and is still at large." This 'individual' that Scott Hixon is referring to is Tyre Myers. At this time Dameon Myers had been arrested, and was being held. Yet, Scott Hixon knew that Tyre Myers had never been tried and convicted of any drug offenses. Not to mention, Tyre Myers's NCIC report does not confirm his statements, and court records in South Carolina state otherwise. Moreover, Ms. Myers was acting on her own behalf trying to obtain substantive materials that no one, even Judge Paul Gessner and the Superior Court of Johnston County, refused to help her obtain. Further promoting his continuing criminal conduct, Hixon stated, "Subsequently, local law enforcement [GCPD] informed our office that an individual or individuals named in the materials your client reviewed days earlier had received unwanted and perceived threatening contact by Ms. Myers or individuals allegedly acting on her behalf." Hixon knowingly stated false and defamatory statements to Ms. Myers's attorney. Moreover, at the very beginning of Scott Hixon's letter to steven Walker, Mr, Hixon committed fraud by stating, "...new information has come to our attention concerning this situation. Ms. Myer did not inform us nor was our office aware when she contacted us and reviewed part of the above referenced case file that there were multiple felony drug related warrants pending against her..." Yet, just days prior, Scott Hixon and Steven Brown, an investigator for the 15th Circuit

56 of 104

solicitor's office, had admitted to Ms Myers, Gabrille Myers, and Christina Myers that they were aware of the events that occurred at her home on October 12, 2010; and they were in contact with the United States Marshals during the events. The statements Scott Hixon made in his letter to Steven Walker were made with the fraudulent intent of depriving Ms. Myers and her family of substantive materials, evidence, and/or documents.

132. Following these events, Ms. Myers made several attempts at contacting then solicitor of the 15th Judicial Circuit, Greg Hembree in order to rectify the wrongs that had been committed against her and her family members; and to file a complaint and initiate an investigation into the law enforcement and judicial bodies of Horry and Georgetown Counties. However, Mr. Hembree did not respond. Subsequently, on March 24, 2012, Ms. Myers filed a complaint with the South Carolina Commission on Lawyer Conduct which yielded no results. Additionally, on December 8, 2011, Ms. Ms Myers had contacted Greg Hembree and he stated that he had responded to her through her attorney, Steven Walker. Ms. Myers was not made aware that Greg Hembree had contacted her attorney, and she never received a proper response from Greg Hembree. Furthermore, Ms. Myers's complaint to Mayor Jack Scoville was alleged forwarded to SLED for an investigation. However, following Ms. Myers November 15, 2011 compliant, Ms Myers made several requests for the Mayor Scoville's letter that he allegedly sent to SLED requesting an investigation. Ms. Cindi Howard, a City Hall employee, wanted Ms. Myers to pay $23.00 for a copy of the letter that was alleged generated due to her complaint. Ms. Myers refused to pay for a response to her request for an investigation, and instead submitted a FOIA request to Sled directly on March 14, 2012 via e-mail to Margaret Knox, the designated FOIA employee. Ms. Myers did not receive a response from SLED until July 16, 2013 via an e-mail from Agent Thomas Berry; and that response consisted of a copy of the Mayor's alleged letter requesting an investigation

only. Continuing to this day, SLED never followed up on the factual complaint of Ms. Myers, and an investigation was never conducted. In addition, continuing to this day, Ms. Myers has not been allowed to finish reviewing the Pope case materials.

133. And, in regards to, Tom Rubillo and John Hilliard, both men conspired to knowingly use false, fabricated, and/or tainted information provided by the GCPD Enterprise in order to obtain a favorable outcome for Keri Pope, and cast guilt on Tyre and Dameon Myers for the murder of Joey Pope; and to fraudulently, falsely, and maliciously depict the siblings as drug lords. As stated previously, John Hilliard was aware of the bad blood that the GCPD Enterprise had for the Myers's family. Hilliard used this knowledge and hatred to his advantage, and to the advantage of his client, Keri Pope. Tom Rubillo, was aware of the prejudice against black people in Georgetown, South Carolina. He has written a series, "A Government of Men" that details past racially based events. Rubillo used his knowledge to effectively utilize the fear and false perceptions of white community members, judicial officials, and/or law enforcement against black siblings in a town where black males are already stereotyped as hoodlums, drug dealers, and dangerous gang members. As an experienced author, Rubillo was the perfect person to write the petition concerning the Pope Murder trial. In his petition, Tom Rubillo used the information provided by John Hilliard to portray the Myers siblings as a "drug cabal". In Rubillo's petition, he calls Marvin "Eep" Myers a "local drug kingpin". Rubillo goes as far as to state that the Georgetown City Police were afraid of them. For example, Rubillo stated, "Police kept their distance from these reputedly dangerous men." Even after the trial of Keri Pope and Christopher Miller, Tom Rubillo stated to the local newspaper, "it's mighty ironic" that Dameon Myers was arrested after the trial of Keri Pope and Christopher Miller. Rubillo's statements could not be farther from the truth. Joey Pope's murder was one of the reasons behind the criminal acts and

omissions that occurred on and around October 12, 2010 that directly caused injury, harm, and/or damage to Ms. Myers and her children. In addition, Rubillo and John Hilliard ignored the facts and evidence that pointed at Keri Pope and other individuals for the murder of Joey Pope. Witness statements from individuals, such as Shane Prince, pointed to Jody Ward and Roger Ackerman. Furthermore, John Hilliard's and Tom Rubillo's key witness statement came from Keenan Keith. Keith allegedly stated that "Tyree stated he was at the door and masked up"; yet, the June 23, 2003 SLED Report stated, "The offenders did not wear a mask or a disguise of any kind". Keri Pope herself also stated that the alleged murders did not wear masks. John Hilliard and Tom Rubillo participated in a conspiracy initiated by the GCPD Enterprise to frame innocent individuals of murder and conspiracy to commit murder. As stated above, individuals; Scott Hixon, Chief Paul Gardner, Stephen Brown, Captain Fish, Tom Rubillo, John Hilliard, and Greg Hembree each participated in the unlawful scheme to deprive Ms. Myers from obtaining substantive evidence, documents, and/or proofs against the GCPD Enterprise and the individuals involved; and made false allegations against Tyre Myers, Loushonda Myers, Gabrielle Myers, Christina Myers, and/or members of the Myers's family. And, despite the repeated requests for an investigation into the Georgetown City Police Department, Horry and Georgetown Counties judicial system, and the individual law enforcement officers, judicial officials, and/or public officials- no investigation has been launched; and no questions have been asked. The Rights and Freedoms of every citizen are at stake.

## Agents of the FBI participated in the GCPD Enterprise

134. As evident from the 2006 FBI, Agents Paul Gardner, Jeffrey Long, Patrick Maley, Robert Waizenhofer, and Jeffrey Bruning knowingly and willingly participated in the GCPD Enterprise and the 15th Circuit DEU Enterprise (Formerly known as Organized Crime Bureau) by creating

an official federal report and/or official law enforcement file that contained false, fraudulent, and/ or tainted information in furtherance of a criminal conduct and activities by the GCPD Enterprise. The above agents of the FBI knew from their investigation that other individuals were in fact named and/or pointed out by other witness and/or individuals that were interviewed by the GCPD, however these agents continued to protect the GCPD Enterprise and facilitate their scheme by continuing an "investigation" and continuing a FBI profile that included the murder of Joey Pope, robbery, drug offenses, and firearms offenses. The FBI Report was not created until June 26, 2006. Joey Pope was murdered on May 27, 2003, and between 2003 and June 26, 2006 information, evidence, witnesses, interviews, and/or documentation were produced that pointed to other individuals, including Jody Ward (Joey Pope's friend); Keri Pope (Joey Pope's wife); and Keri Pope's father; yet, the investigation remained racially focused towards black siblings. Not to mention the GCPD Enterprise also attempted to pin another shooting on Dameon Myers. In a document obtained from the Georgetown County Solicitor's Office, dated September 22, 2004 from the GCPD, Keenan Keith stated "This is not Dameon's first shooting. Dameon dated one of a set of white twin girls in Myrtle Beach. The Jamaican crossed Dameon and he called him on the phone. When he walked out of the apartment, Dameon blasted him. They also said it had something to do with a 1/2 brick." Additionally, Jody Ward stated to Georgetown Police officers on December 7, 2004, "The Myers boys are killers. Debo [Dameon Myers] killed a Richardson or Spann at the beach because of some twin white girls." Ward's statement was made after Keenan Keith's statement.

**Outline of Pope Murder Case**

135. On May 27, 2003 Joey Pope was murdered. On November 25, 2008 Keri Pope was arrested for the murder of her husband, Joey Pope. On September 13, 2002, Jody Ward was arrested for the

murder of Elton Rutledge, Jr. and Willfred Brown. On March 18, 2004, Ward was found guilty of murder. One of the things that led to the arrest of Pope and Miller was a statement made by prisoner Jody Ward in 2008. Ward, serving a double life sentence for murdering Elton Nathanial Rutledge Jr. and Willfred Brown in 2002.

136. On and/or around July 28, 2011, Judge Steven John gave Keri Pope a directed verdict and dismissed the murder charge against her. Meanwhile, Christopher Miller, whom was also charged with murder and conspiracy to commit murder; was found guilty of conspiracy to commit murder. Christopher Miller was convicted of a one man conspiracy.

137. Some time after the trial, Keri Pope filed a lawsuit; and it has since been settled.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: Violations of RICO, 18 U.S.C. § 1962(c) (Against All RICO Defendants)

138. Loushonda Myers, Tyre Myers, and Dameon Myers realleges and incorporates herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

139. At all relevant times, Loushonda Myers, Tyre Myers, and Dameon Myers are a person within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

140. At all relevant times, each RICO Defendant is a person within the meaning of 18 U.S.C. §§§ 1961(3),1962(c), and 1962(d).

141. The RICO Defendants and their co-conspirators are groups of persons associated in fact for the common purpose of carrying out an ongoing criminal enterprises as described in detail in the foregoing paragraphs of this complaint. The RICO Defendants and their co-conspirators used fraud; unlawful surveillance; tainted and/or coerced statements and/or testimony; unlawful warrants; lies; threats; and/or corrupt law enforcement and/or law enforcement sources. Although

61 of 104

the RICO Defendants operated an enterprise of their own, the RICO Defendants were able to organize, recruit, and operate together with the other enterprises and their members, operators, managers, and/or leaders as stated in the preceding paragraphs. The RICO Defendants and their co-conspirators organized and operated with specific tasks, objectives, and/or duties that were targeted at achieving the goals of each enterprise, though at times those goals changed, merged, and/or expanded; and, their means to achieve those goals changed accordingly. The RICO Defendants and their co-conspirators operated, managed, and/or maintained separate, but collaborative enterprises within law enforcement departments, offices, and/or agencies, as well as judicial bodies. Although these enterprises are within the fields of law and law enforcement; their goals and their means of obtaining those goals were and are beyond the scope of their oaths, duties, and/or employment. The organization of the enterprises may have changed with different members overseeing and carrying out different tasks and/or roles; however the criminal enterprises have structured themselves to operate as a unit to accomplish the goals of their criminal schemes. These enterprises were creative, artful, and implemented the "blue code of silence" and "codes of silence" in order to craftily accomplish the goals of their criminal enterprises:

a.    Defendants AT&T Inc.; AT&T Mobility, LLC; and Unknown employees of AT&T Inc. and AT&T Mobility, LLC are key players and without them the enterprises goals would not have been realized. They have been primarily responsible for providing and/or maintaining unlawful cellular phone tracking, surveillance, and/or tracing; have hindered and obstructed justice as well as state and federal criminal investigations; and participated in wire fraud through the use of transmitting, intercepting, and/or relaying communications, transmissions, and/or electronic information and location to the USMS, FBI, and JCSO enterprises.

b.     United States Marshal Bryan Konig was and is the ringleader of the USMS forces that were present, and participated and conspired with the law enforcement sources in South Carolina, namely the GCPD, 15th Circuit Solicitor's Office, and 15th Circuit DEU forces. US Marshal Bryan Konig was instrumental in providing and obtaining false, fraudulent, and/or tainted information to the JCSO and its officers and/or employees, and to judicial bodies and/or individuals. Bryan Konig and the unknown US Marshals agents and/or employees utilized and transmitted the unlawful transmissions of AT&T Inc. and/or AT&T Mobility, LLC; initialized, planned, and participated in the unlawful kidnapping and robbery of Ms. Myers, her children, and their property; and perpetuated the fraudulent endeavors of the South Carolina co-conspirators to blame murders and other felonious criminal activities on two siblings, Dameon and Tyre Myers.

c.     The unknown agents/employees of the United States Marshal Services in North and South Carolina served as members of the USMS Enterprise; and participated, organized, and/or maintained positions to assist and facilitate the unlawful surveillance provided by AT&T Inc., AT&T Mobility, LLC, and/or the unknown employees of AT&T Inc. and AT&T Mobility, LLC. These unknown individuals actively withheld substantive discovery materials; assisted, participated, and/or planned the kidnapping and robbery of Ms. Myers, her children, and her property; and hindered and obstructed justice as well as judicial proceedings by knowingly and willingly failing to relay known criminal activities to the proper authorities and/or individuals.

d.     Sheriff Steve Bizzel served as a member of the JCSO Enterprise and was instrumental in maintaining and facilitating the illegal activities of his subordinates after learning about their illegal conduct. Sheriff Bizzel provided a buffer for the JCSO officers and/or agents that

participated and associated with the criminal enterprises mentioned within the complaint, as well as their own criminal enterprise.

e.  Captain A.C. Fish served as a member of the JCSO Enterprise, and knowingly and willingly provided false statements in the criminal investigation of Ms. Myers; facilitated the illegal activities of the USMS Enterprise by assisting and participating in the kidnapping and robbery of Ms. Myers, her children, and their property; and obstructing justice by withholding substantive information, documents, and/or proofs.

f.  Detective Kritch Allen served as the ringleader of the JCSO STAR Team and JCSO Enterprise. Kritch Allen knowingly and willingly produced fraud upon the court on several occasions; provided false tainted, and/or misleading information during the course of Ms. Myers's criminal case; assisted and participated in the kidnapping and robbery of Ms. Myers, her children, and their property; and participated in providing false, misleading, and/or tainted information to the JCDSS in order to extort and place pressure on Ms. Myers.

g.  Detective Don Pate served as a member of the JCSO Enterprise. Detective Pate participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property. Detective Pate withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

h.  Detective J. Creech served as a member of the JCSO Enterprise. Detective Creech participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property. Detective Creech withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

i.  Detective J. Canady served as a member of the JCSO Enterprise. Detective Canady participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and

their property. Detective Canady withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

j.    Detective A. Case served as a member of the JCSO Enterprise. Detective Case participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property. Detective Case withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

k.    Captain D. Daughtry served as member of the JCSO Enterprise. Captain Daughtry participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property. Captain Daughtry withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

l.    Lieutenant Stewart served as a member of the JCSO Enterprise. Lieutenant Stewart participated and conspired to provide false, tainted, and/or misleading information in the procurement of an unlawful search warrant; participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property; and withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

m.    Lieutenant Danny Johnson served as a member of the JCSO enterprise. Lieutenant Danny Johnson participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property; and Lieutenant Johnson withheld substantive information, evidence, and/ or testimony during the criminal investigation and case of Ms. Myers.

n.    Deputy Gillis served as a member of the JCSO enterprise. Deputy Gillis participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property; and withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

o.  David Hildreth served as a member of the JCSO enterprise. David Hildreth participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property; and withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

p.  James Gerrell served as a member of the JCSO enterprise. James Gerrell participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property; and withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

q.  Unknown officers/employees of the Johnston County Sheriff's Office served as members of the JCSO enterprise. Unknown officers/employees of the Johnston County Sheriff's Office participated and conspired in the kidnapping and robbery of Ms. Myers, her children, and their property; and withheld substantive information, evidence, and/or testimony during the criminal investigation and case of Ms. Myers.

r.  BB&T participated in the JCSO and USMS conspiracy by unlawfully withholding and transferring the money/property of Loushonda Myers without lawful reason and against Ms. Myers's will.

142. The RICO Defendants and their co-conspirators are an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(2), and are hereafter referred to as the Enterprise. Each of the RICO Defendants participated in the operation or management of the Enterprise.

143. At all relevant times, the Enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c).

144. The RICO Defendants conducted or participated, directly or indirectly in the conduct, management, or operation of the Enterprise's affairs through patterns of racketeering activities

within the meaning of 18 U.S.C. § 1962(c); including but not limited to the following:

**Pattern of Racketeering Activity: Extortion in Violation of Hobbs Act, 18 U.S.C. § 1951**

145. At all times material to this complaint, Loushonda Myers, Tyre Myers, Dameon Myers, and Ms. Myers' minor children were engaged in interstate and foreign commerce. Ms. Myers and her minor children conducted their business and affairs as consumers and/or producers in the economy of the United States as well as in the States of North Carolina and South Carolina. Ms. Myers and her children's businesses affects both interstate and foreign commerce.

146. As described in this Complaint, the RICO Defendants devised wide-ranging schemes that included falsely accusing Dameon and Tyre Myers of being involved in murders; devising criminal plans to extort, coerce, and/or threaten Loushonda Myers in retaliation for their inability to perfect their plans against Dameon and Tyre Myers; exploiting Ms. Myers's children and using them as pawns for bribery and extortion; producing false, fabricated, and/or tainted information in court records, news and public media, state and federal law enforcement files and/or public records; threatening Ms. Myers with the loss of her children, home, property, life, and liberty; facilitating false charges and convictions upon Tyre Myers and Dameon Myers; and numerous other criminal activities as explained within this complaint, all for the purposes of and effects of causing fear of economic loss on Loushonda Myers, her children, Tyre Myers, and Dameon Myers.

147. As detailed in this complaint, the RICO Defendants used false, fabricated, and/or tainted information in court and to obtain unlawful search warrants for Loushonda Myers and her property; and knowingly concealed, destroyed, and/or withheld substantive information, evidence, and/or documentation that would have helped Ms. Myers, her children, and Tyre and Dameon Myers. The conduct of the RICO Defendants were with the intent and effcet of causing fear of

economic loss on Loushonda Myers, her children, Dameon Myers, and Tyre Myers.

148. As detailed in this complaint, The RICO Defendants conspired with other law enforcement sources in South Carolina and North Carolina, namely the United States Marshal Service, Georgetown City Police Department, Georgetown County 15th Circuit Solicitor's Office, 15th Circuit Drug Enforcement Unit, Johnston County District Attorney's Office, North Carolina Department of Revenue, and magistrates as well as judges, attorneys, and other officers and/or employees of the law named within this complaint to maintain criminal and civil charges against Loushonda Myers knowing that their conduct, acts, and/or omissions were perpetrated with treacherous intent; facilitated with unlawful devices; and/or executed by treasonous instruments; and to maintain a conspiratorial agenda to convict two siblings of murders; robbery; drug offenses; and firearms offenses they did not commit.

149. As described within this complaint, the RICO Defendants maintained fraudulent criminal and civil charges on Loushonda Myers in the Superior Court of Johnston County and The Office of Administrative Hearings in Wake County. Their conduct was done to effect payment from Ms. Myers as well as maintain funds that had been seized from Ms. Myers BB&T account by use of bank fraud.

150. As described in this complaint the RICO Defendants enlisted the expertise of Agent Brian Zieverink with the North Carolina Department of Revenue to unlawfully seize funds from Ms. Myers's BB&T bank account to unlawfully effect payment from Ms. Myers due to malicious, fraudulent charges. The RICO Defendants also seized money from Ms. Myers and her children and unlawful gave the funds to the North Carolina Department of Revenue. Their conduct was done for the purpose of and effect of extorting payment from Ms. Myers and her minor children, as well as creating fear of economic loss.

151. Magistrates Bethany Hale and Walter Stanley issued excessive bond amounts for Ms. Myers. The bail bonds were not to ensure that Ms. Myers would appear and/or defend herself in court, but to extort money from Ms. Myers for her freedom and liberties. Ms. Myers's word is her bond; and Ms. Myers's background contained no supportive reasoning behind the excessive bail amounts. The actions and/or conduct of magistrates Hale and Stanley were in furtherance of the RICO Enterprises' goals of exerting pressure on Ms. Myers and creating fear of economic harm. Furthermore, the actions and conduct of these two magistrates are violations of 18 U.S.C. § 1951 and the Fourth Amendment of the United States Constitution.

152. The RICO Defendants' actions and conduct are intended to induce fear in Loushonda Myers that the RICO Defendants would have (1) pursued mandatory prison sentencing unless Ms. Myers "cooperated" by any means the RICO Defendants and their co-conspirators deemed necessary; (2) continue to conspire with the Johnston County District Attorney's Office and Adren Harris to have Ms. Myers prosecuted and found guilty of criminal charges; (3) continue to conspire with the Johnston County Department of Social Services, Terrae Carmon, Kimberly Franklin, and Heidi Clay to have Ms. Myers brought up on charges of child neglect, well as allegations of endangering the welfare of her children due to allegations that her oldest child is involved in drug dealing; (4) ruined Ms. Myers ability to conduct business due to the nature of the criminal charges against her; (5) economically and financially ruin Ms. Myers with a criminal record; and (6) that her children would have been taken from her, and the eldest child possible brought up on criminal drug charges. Their actions as mentioned above and within this complaint have created a reasonable fear of harm to Loushonda Myers, including fear of economic loss.

153. Accordingly, the RICO Defendants have unlawfully obstructed, delayed, affected-attempted to obstruct, delay, and affect-commerce as defined in 18 U.S.C. §1951, and the movemnet of articles

and commodities in such commerce, by extortion, as defined in §1951, in that the RICO

Defendants attempted to induce Loushonda Myers to consent to relinquish property through the

wrongful use of actual and threatened force, violence, and fear-including fear of economic harm;

and the RICO Defendants did in fact rob Loushonda Myers and her children of property using

force, threatened force, violence, and fear, as well as destroyed substantive evidence identifying

the members of the Enterprise committing such crimes.

**Pattern of Racketeering Activity: Extortion in Violation of North Carolina Law N.C.G.S. § 14-118.4. (Extortion); § 14-87 (Robbery with firearm or dangerous weapon)§ 14-87.1 (Common Law Robbery)**

154. The JCSO and USMS RICO Defendants unlawfully seize, removed, and/or destroyed Loushonda

Myers and her children's property by using force and firearms; the JCSO and USMS RICO

Defendants retaliated upon Ms. Myers due to their inablity to perfect the scheme of their co-

conspirators and initiated an unlawful tax assessment against Ms. Myers, initiated child neglect

allegation, initiated fraudulent criminal charges against Ms. Myers, and influenced a judge to

place a $400,000 bond on Ms. Myers, among other things. The JCSO RICO Defefndants

consistently instilled fear in Ms. Myers that they would continue to harm her financially,

economically, and interfere with her ability to carry out her and her children's business. To this

day the RICO Defendants, each individual named in this Complaint, effect fear of economic harm

to Ms. Myers and her children. And, to this day Ms. Myers still has not received (a) the property,

nor monies that were stolen from her and her children; (b) compensation for monies that were

forced from her through bail, attorney's fees, and fighting against an unlawful tax assessment; and

(c) compensation for the property that has been taken, withheld, and/or destroyed.

**Pattern of Racketeering Activity: Bank Fraud/ Wire/Mail Fraud in Violation of 18 U.S.C. § 1341; §1443; and §1344**

155. RICO Defendants AT&T Inc.; AT&T Mobility, LLC.; Unknown agent/employees of AT&T Inc.

    and AT&T Mobility, LLC (collectively referred to hereafter as AT&T RICO Defendants)

    participated in wire fraud pursuant to 18 U.S. Code § 1343. These RICO Defendants have

    participated in and conspired with the unlawful criminal enterprises of the USMS, FBI, GCPD,

    and JCSO. These Defendants (a) interfered with commerce within the meaning of 18 U.S.C. §

    1951 by conspiring with the USMS, FBI, and JCSO Enterprises to intercept Ms. Myers cellular

    phone calls and/or location for which she paid monies for in return for privacy and security, and

    reliable service. The Defendants fraudulently, maliciously, and unlawfully obstructed, interfered,

    and intercepted the movement and/or transmission of Ms. Myers's business and commodity

    through deceptive means and/or force; (b) obstructed a criminal investigation within the meaning

    of 18 U.S.C. § 1510 by willfully and knowingly failing to comply with a lawful subpoena;

    interfering, obstructing, and failing to provide substantive discovery materials, documents, and/or

    proofs with Ms. Myers's unauthorized tax assessment case- which was dismissed by North

    Carolina assistant attorney general Andrew Furuseth shortly after Ms. Myers's phone conversation

    with AT&T's attorney William Schur; and (c) these Defendants did influence an officer of the

    court as well as the administrative proceedings of Ms. Myers within the meaning of 18 U.S. Code

    § 1503 by contacting the Administrative Court and/or Andrew Furuseth during Ms. Myers's

    unauthorized tax assessment in order to influence the dismissal of the tax assessment to prevent

    the production of substantive discovery materials, documents, and/or proofs.

156. The AT&T RICO Defendants were essential players in the kidnapping of Ms. Myers and her

    children. The Defendants provided key information, surveillance, and/or tracking that provided

the location of Ms. Myers and her children for the successful kidnapping of Ms. Myers and her children within the meaning of N.C.G.S. 14-39. The criminal activities of the aforementioned Defendants, AT&T RICO Defendants, directly resulted in the kidnapping, hostage, robbery, burglary, and theft of Ms. Myers's children; Ms. Myers; and/or their property by the USMS, JCSO, and JCDSS Enterprises. The acts of robbery are within the meaning of N.C.G.S. 14-87 and 14-87.1; burglary within the meaning of N.C.G.S. § 14-51; and the Defendants' directly participated and conspired to commit wire fraud within the meaning of 18 U.S.C. § 1343 by unlawfully providing and/or transmitting signals, signs, and/or information relative to Ms. Myers and her children. The purposes of their conduct was to assist the criminal enterprises in the illegal activities and conduct by fraudulently and falsely obtaining Ms. Myers's and her children's money and property, thereby interfering with interstate and foreign commerce.

157. RICO Defendants Kritch Allen, Captain Fish, Bryan Konig, Unknown agents/employees of the USMS in North and South Carolina, Don Pate, J. Creech, J. Canady, A. Case, Captain D. Daughtry, Lieutenant Stewart, Lieutenant Danny Johnson, Deputy Gillis, David Hildreth, James Gerrell, and/or Unknown Officers/employees of the JCSO; and RICO co-conspirators Brian Zierverink, Aleta Ballard, Scott Hixon, Sheriff Donnie Harrison, Adren Harris, Judge Paul Gessner, Judge Thomas Lock, Judge Timothy Kincaid, L. Davis Weddle, Heidi Clay, Kimberly Franklin, Terrae Carmon, participated in separate acts of mail, wire, and bank fraud as described herein- interfering with interstate and foreign commerce.

158. RICO Defendants Kritch Allen, Captain Fish, Bryan Konig, Unknown agents/employees of the USMS in North and South Carolina, Don Pate, J. Creech, J. Canady, A. Case, Captain D. Daughtry, Lieutenant Stewart, Lieutenant Danny Johnson, Deputy Gillis, David Hildreth, James Gerrell, and Unknown Officers/employees of the JCSO committed and/or caused to be committed

multiple acts of mail, wire, and/or bank fraud within the meaning of 18 U.S. Code § 1344; 18 U.S. Code § 1343; and 18 U.S. Code § 1341. The afore-named RICO Defendants did in fact relay fraudulent, false, and/or deceptive communications via audio signals, wire communications, and/ or video communications on and around October 12, 2010. These communications consisted of the following: (a) Ms. Myers home contained two alleged fugitive brothers, Tyre and Dameon Myers; (b) Ms. Myers was in possession of an unauthorized controlled substance; (c) Ms. Myers home is a stash house; (d) Ms. Myer's oldest son may be involved in drug dealing; (e) Ms. Myers neglected her children; (f) Ms. Myers is involved in a drug ring; and (g) numerous other false, fraudulent, and/or fabricated allegations contained within the exhibits following this complaint.

159. On October 12, 2010, continuing to the memorialization on March 18, 2012 and final dismissal in April of 2012, the JCSO and USMS RICO Defendants relayed false, fraudulent, and/or deceptive communications via fax, wire, telephone, and/or signals to agent Brian Zierverink, North Carolina Department of Revenue, Andrew Furuseth, and the North Carolina Attorney General's Office in order for them to initiate and continue an unlawful seizure of Ms. Myers assets located within a BB&T bank account, as well as the property that had already been unlawfully taken from Ms. Myers's and her children's home. The JCSO and USMS RICO Defendants falsely alleged that Ms. Myers was in possession of cocaine, an unauthorized substance subject to taxation by the State of North Carolina. The JCSO and USMS RICO Defendants' activities caused and/or caused to be committed a separate act of bank fraud when, in November 2010, BB&T did in fact withhold, keep, and/or prevent Ms. Myers from obtaining her property and/or funds from the bank account based on the fraudulent, false, and/or unlawful communications that were relayed to them.

160. In another act, continuing their patterns of unlawful activities, the JCSO and USMS RICO

Defendants committed and/or caused to be committed an acts of mail and/or wire fraud when fraudulent, false, deceptive and/or fabricated information was transmitted via wire, signals, and/or to the JCDSS in order for Heidi Clay, Kimberly Franklin, and Terrae Carmon to initiate and pursue criminal allegations of child neglect and endangerment against Ms. Myers in order to exert pressure on Ms. Myers. The JCSO and USMS RICO Defendants falsely alleged that Ms. Myers had neglected her children; her home was a stash house; Ms. Myers was involved in drugs; and her oldest son may be involved in drugs. These activities were initiated on October 12, 2010 and continued until around December 2010. However, to this day Ms. Myers has not received any written communication stating the conclusion and/or results of the criminal investigation, allegations, and/or criminal conduct that was initiated against her by Heidi Clay, Kimberly Franklin, and Terrae Carmon; the agents/employees of the JCDSS.

161. Additionally, the JCSO and USMS committed and/or cause to be committed another act of mail fraud in January 2011, when Ms. Ballard sent Ms. Myers via United States Postal Service material that they knew and Ms. Ballard knew contained false, fraudulent, and/or fabricated documents, materials, and/or evidence. For example, Ms. Ballard sent Ms. Myers a copy of Tyre Myers's NCIC report, which was not pulled until October 13, 2010; however, the USMS and JCSO forces were unlawfully at Ms. Myers's home and property on October 12, 2010. In addition, Ms. Myers received information stating that district attorney Adren Harris planned on using an alleged statement that Ms. Myers had given; yet, that statement was not included in the materials, nor was that statement ever proven to exist. It was not until November 8, 2011, over a year after Ms. Myers's unlawful arrest, search, and seizure; that Adren Harris finally admitted that he did not possess a statement from Ms. Myers- although this information had been demanded on numerous occasions by Ms. Myers through her attorneys Aleta Ballard and Steven Walker.

162. Continuing the patterns of fraud; as detailed previously in this complaint; Scott Hixon sent Ms. Myers's attorney, Steven Walker, a letter dated November 16, 2011 stating that Tyre Myers was convicted of drug offenses. Mr. Hixon knew this information was false and fraudulent. Scott Hixon sent the letter containing this fraudulent information in order to continue the fraud, deception, and cover up that had already been committed and continuing to be committed- due to the fact that this information is what was given to the FBI, USMS, and JCSO in order to effect the plans of revenge by the South Carolina co-conspirators on Dameon and Tyre Myers, by retaliating against Loushonda Myers and her children. Additionally, Scott Hixon stated within the letter that he was unaware that Ms. Myers was fighting several felonious charges; however, Mr. Hixon and Stephen Brown of the Georgetown County Solicitor's Office stated to Ms. Myers, as well as Gabrielle and Christina Myers, that they knew the USMS was at her home, and they were in contact with them during the events of October 12, 2010. Ms. Myers is unsure of the method Scott Hixon used to send the letter, however whether sent by USPS, carrier, fax, and/or e-mail, the conduct and actions of Scott Hixon constitute mail and wire fraud pursuant to 18 U.S. Code § 1341 and 18 U.S. Code § 1343; and his actions and conduct interfered with Ms. Myers's business and property, as well as interstate and foreign commerce.

163. Similarly, Adren Harris knowingly and willingly communicated fraudulent, false, and/or fabricated information via audio signals and recording on court records to Judge Paul Gessner on November 8, 2011. Adren Harris knew this information was fraudulent, tainted, and/or fabricated; and that this information derived from the USMS and JCSO Enterprises, whom have already been proven to be unlawfully present; committed perjury; lied; and/or used fraudulent, false, and/or fabricated information on October 12, 2010-based on their own documents, proofs, and/or materials provided and attached hereafter this complaint. Judge Paul Gessner was made aware of

the fraud on November 8, 2011 and knowingly and willingly allowed the criminal prosecution of Ms. Myers to continue; and Judge Paul Gessner participated in the conspiratorial conduct of the JCSO and JCDAO Enterprises by excusing their action and conducts, and leading Adren Harris in his answers to the court, as previously detailed in this complaint. For example, Judge Paul Gessner stated the following:

THE COURT: Well, the arrest warrants should be a South Carolina process or some other process. They would be-- the NCIC, I think, would then entitle that,but the hit on the NCIC paperwork, if I'm not mistaken, is what would entitle them to arrest on the Fugitive from Justice Warrant, which is issued in North Carolina.

WALKER: And I would like a copy of that.

THE COURT: Well, it's in the Clerk's Office I'm sure.

WALKER: I don't-- my thing is one of the requirements to go in for a search warrant for arrest is that you're going to serve the arrest warrant and arrest the person when you go in there. I would think that the sheriff's department would have had that in their possession, had that in their file. I've turned over their whole file, I don't have that. Now, it may be on file in the Clerk's Office and I may be able to get there, but--

THE COURT: If he was in fact arrested.

WALKER: Or if he was going to be arrested. I would think that they would need to at least verify that they were going in to arrest somebody if they had a warrant to do that.

THE COURT: I think he's already addressed the concerns that you've raised in D about the photographs, audio or video recordings. It sounds as though there are not or at least that's what I picked up a few minutes ago. Are you aware of any other information involving her phone?

HARRIS: No, Your Honor. The only thing that--when I spoke with Captain Fish and when the marshals

were getting ready to do their entry or whatever, Captain Fish had a conversation with the defendant saying, you know, you need to watch out or whatever. The defendant took her phone and was, I guess trying to record what was going on....

164. As just shown, Judge Paul Gessner not only lead Adren Harris in his answers- he knowingly and willfully deprived Ms. Myers of her due process rights and committed fraud upon the court by entering unlawful and/or bias opinions and/or statements on the court record in favor of the JCDAO Enterprise and Adren Harris. Then without clearing up the substantive issues brought to his attention, Judge Paul Gessner changes the topic. This is only one example of many, as will be displayed in the November 8, 2011 Transcript located within the exhibits following this complaint.

165. Likewise, Judge Timothy Kincaid and L. Davis Weddle committed mail and/or wire fraud on September 4, 2012; and/or caused mail and/or wire fraud to be committed on October 31, 2012 by court reporter Miriam G. Dutton- within the meaning of 18 U.S. Code § 1343 and 18 U.S. Code § 1341. Judge Timothy Kincaid and L. Davis Weddle knew and had full knowledge that Ms. Myers's criminal case had been dismissed and as a result she was entitled to receive her property back. L. Davis Weddle intentionally mislead the court, via audio signals captured on the court record, stating the following: "This was a trafficking cocaine case that had several items. I don't know if we have a list, if the Court wants to look at the list. But one was a bulletproof vest; several items regarding, one marijuana; several scales to weigh narcotics." L. Davis Weddle knowingly and willfully entered fraud upon the record by entering in those statements upon the record in furtherance of the JCSO and USMS Enterprises scheme of unlawfully withholding Ms. Myers's property, and to retaliate against Ms.Myers for their inability to perfect their plan against Tyre Myers and Dameon Myers. In addition, L. Davis Weddle intentionally left out that one of the

main concerns Ms. Myers had was for her Blackberry cell phone that had video and audio recording of the events that occurred on October 12, 2010- in which she never received; and in which was in the possession of the JCSO since October 12, 2010. Not to mention, Ms. Myers had demanded the recording from her phone for use as evidence in her favor during her criminal case, and never received it. In addition, prior to the court date of September 4, 2012, Ms. Myers placed phones calls as well as sent faxed to Adren Harris requesting another court date due to the fact that she had received notice of the September 4, 2012 hearing on or around August 20, 2012, and did not have sufficient time prepare for travel financially.

166. Also, Adren Harris knew Ms. Myers was not working and had not been employed due to the felonious charges that were on her record; and Ms. Myers had been turned down for employment due to the nature of the charges on her record, as evident in the exhibits hereafter. Furthermore, L. Davis Weddle fraudulently stated, "Ms. Myers did call a few days ago, prior to filing that motion, and said the same thing that's in the motion: that is was an inconvenience for her to be here; that she wanted to do it by phone." Again, Mr. Weddle willfully and knowingly mislead the court and stated fabricated information on the court records. What Ms. Myers did state was the following: **"Petitioner has contacted Mr. Adren Harris via telephone on August 24, 2012 and left him a message notifying him that the date schedule is not sufficient notice due to the fact that Petitioner does not reside in the State of North Carolina. In addition, as of the drafting of this motion, Petitioner has not received a response from assistant district attorney, Adren Harris. Petitioner asserts that the scheduled date for the hearing is insufficient notice, and will present an undue burden upon the Petitioner due to costs for gas, transportation, and mileage. Petitioner has already asserted that due to the underlying criminal charges she has been substantially burdened financially."**

167. Judge Timothy Kincaid knowingly and willfully disregarded the entire record that was in front of
     him and willingly and fraudulently entered on court record permission for the Johnston County
     Sheriff's Office and the Johnston County District's Attorney Office to dispose of Ms. Myers's
     property knowing that they had no lawful reason and /or possession of Ms. Myers's property to
     begin with.

168. Judge Thomas Lock committed and/or caused to be committed wire and/or mail fraud within the
     meaning of 18 U.S. Code § 1343 and 18 U.S. Code § 1341 when he entered judgement against
     Loushonda Myers, on a motion and an appeal both dated January 31, 2013, denying her the
     substantive right to her property. Judge Thomas Lock's decisions were in furtherance of the
     retaliation efforts against Ms. Myers by the JCSO, USMS, and JCDAO Enterprises goals to
     prohibit Ms. Myers from her property and withhold evidence from Ms. Myers.

169. After being notified by mail in a letter dated June 26, 2012, Judge Thomas Lock denied Ms.
     Myers her property even after being aware that her property contained substantive evidence in her
     favor. As shown by the following: "This matter is before the undersigned judge of the superior
     court of Johnston County on defendant's pro se filing captioned 'Motion for Reconsideration and
     Motion to Preserve Evidence'. Based on its review of the record and prior orders entered in this
     cause, it is ORDERED that the defendant's motion is DENIED." Ms. Myers was and is being
     denied her substantive rights to her property and substantive evidence as retaliation for the
     inability of the JCSO, JCDAO, and USMS enterprises plot to obtain a criminal conviction on her;
     and their epic failure at covering up their criminal activities and conduct.

**USMS Enterprise Fraud**

170. By letter dated June 4, 2012, John Patterson; on behalf of the United States Marshals Service
     agents and/or employees; responded to the Tort Claim that Ms. Myers filed on behalf of herself

and her children. Mr. Patterson knowingly, grossly understated the amount demanded by Ms. Myers's. In his letter, Mr. Patterson stated, "This acknowledges receipt of the four 95's claims for Damage, Injury, or Death, you filed with the U.S. Marshal Service (USMS) on your behalf and on behalf of each your three minor children, [C., A., and M. Myers] (names omitted), presumably in the amount of $48,000.00 each." Mr. Patterson knew that this amount was incorrect, and intended to defraud Ms. Myers and her children of the demanded amount. On June 12, 2012, Ms. Myers responded via email to Mr. Patterson with the correct amount demanded, as well as a copy of the claims and the materials Mr. Patterson requested in his June 4, 2012 letter. Mr. Patterson responded by stating, "Thank you Ms. Myers for providing the documents responsive to my letter and for clarifying the claimed amount of your claim and the amounts on the claims on behalf of your minor children. These documents will be incorporated into the claim files, awaiting review."

171. Then on December 31, 2012, Gerald Auerbach, general counsel for the USMS, wrote Ms. Myers a letter, again, stating the incorrect amount demanded; and stating the following: "Additionally, on June 4, 2012, this office sent you a letter requesting certain information and documentation required to substantiate your claim, to include reports of physicians and medical documentation and itemized bills. We never received the requested documentation." Yet, on June 12, 2012, Mr. Patterson acknowledge receipt of the documents; and stated that they were going to be "incorporated into the claim files". Mr. Auerbach knowingly:(a) placed materials containing fraudulent information inside the USPS for delivery to Ms. Myers; (b) intended to defraud Ms. Myers and her children; and (c) intended to defraud Ms. Myers and her children of redress, remedy, and/or relief for damages and/or injuries caused by agents and/or employees of the USMS. Mr. Patterson and Mr. Auerbauch's conduct and actions are illegal activities as defined in 18 U.S. Code § 1961; and conducted within 18 U.S. Code § 1343 and 18 U.S. Code § 1341.

**Pattern of Racketeering Activity: Tampering With A Witness, Victim, or an Informant in Violation of 18 U.S. Code § 1512**

172. As detailed within this complaint, Bryan Konig, the Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, Sheriff Steve Bizzell, AT&T Inc., AT&T Mobility, LLC; Unknown agents/employees of AT&T Inc. and AT&T Mobility, LLC, and/ or BB&T did in fact:

(A) influence, delay, or prevent the testimony of any person in an official proceeding;

(B) cause or induce any person to—

(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(ii) alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding; an/or

(iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; and/or

(iv) be absent from an official proceeding to which that person has been summoned by legal process; and/ or

(C) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense within the meaning of 18 U.S. Code § 1512.

173. BB&T withheld Ms. Myers's money without providing her the opportunity to defend and/or prove that the seizure was unlawful: BB&T withheld Ms. Myers's money without providing her lawful process; and BB&T withheld Ms. Myers's money in furtherance of the RICO Defendants' schemes, and placed Ms. Myers in fear of economic harm.

174. AT&T Inc., AT&T Mobility, LLC; and the Unknown agents/employees of AT&T Inc. and AT&T Mobility, LLC withheld substantive discovery materials, evidence, proofs, and/or documentations during both Ms. Myers's criminal and civil proceedings; and are withholding substantive discovery materials, evidence, proofs, and/or documentations to this day in order to cover up their unlawful activities, as well as the unlawful activities of their conspirators and their respective enterprises. And, these RICO Defendants participated in the unlawful scheme to frame Dameon and Tyre Myers for criminal acts they did not commit.

175. Bryan Konig and the Unknown agents/employees of the USMS knowingly withheld and/or manufactured substantive discovery materials, evidence, documentations, proofs, and/or testimony during the criminal and civil procedures of Ms. Myers. These things were done to facilitate the SC Enterprise's goals, and their goals; and to cover up their unlawful activities and conduct. Additionally, these RICO Defendants participated in and organized a plot to help frame and maliciously prosecute Dameon and Tyre Myers for acts that they did not commit.

176. A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, Sheriff Steve Bizzell withheld and/or manufactured substantive discovery materials, evidence, documentations, proofs, and/or testimony during the criminal and civil proceedings of Ms. Myers. These things were done to facilitate the SC Enterprise's goals and their goals; and to cover up their unlawful activities and conduct. Furthermore, the named RICO Defendants participated and/or managed an illegal enterprise to assist in the unlawful plot to frame, maliciously prosecute, and/or imprison Dameon and Tyre Myers, as well as unlawfully exert pressure on Ms. Myers.

**Retaliating Against a Witness, Victim, or an Informant in Violation of 18 U.S. Code § 1513**

177. As detailed within this complaint, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J.

Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and/or Sheriff Steve Bizzell retaliated against Ms. Myers, Dameon Myers and/or Tyre Myers within the meaning of 18 U.S. Code § 1513 by: (a) withholding substantive discovery materials, evidence, documentations, proofs, and/or testimony (b) making fraudulent statements in furtherance of the issuance of search warrants; (c) making fraudulent statements in furtherance of excessive bail, and extorting Ms. Myers by forcing her to pay bail; (d) maintaining criminal charges against Ms. Myers; (e) seizing and/or destroying Ms. Myers's favorable evidence contained in her Blackberry cell phone; (f) knowingly failing to report unlawful activities and conduct to the proper judicial officers; and (g) recruiting the JCDSS in an effort to exert pressure on Ms. Myers and take away her substantive rights to her children.

178. Bryan Konig, the Unknown agents/employees of the USMS retaliated against Ms. Myers, Tyre Myers, and/or Dameon Myers within the meaning of 18 U.S. Code § 1513 by: (a) withholding substantive discovery materials, evidence, documentations, proofs, and/or testimony; (b) making fraudulent statements; (c) influencing the conduct of the JCSO Enterprise, JCDSS Enterprise, and AT&T Enterprise to participate in patterns of unlawful activities; including but not limited to extortion, depriving Ms. Myers of her substantive parental rights, and creating a fear of economic harm.

179. AT&T Inc., AT&T Mobility, LLC; and the Unknown agents/employees of AT&T Inc. and AT&T Mobility, LLC retaliated against Ms. Myers, Tyre Myers, and/or Dameon Myers by: (a) withholding substantive discovery materials, evidence, documentations, proofs, and/or testimony; and (b) knowingly failing to report the criminal actions of their co-conspirators.

180. Each of the RICO Defendants have participated in multiple predicate acts, as described within this complaint and shown with facts, documentations, proofs, evidence, and/or within the exhibits

following this complaint; and each of their conduct constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

181. Loushonda Myers was in fact injured in her business and property by the RICO Defendants'; including but not limited to: damage to her reputation; loss of finances; damage, destruction, and/ or theft of property; attorneys' fees; travel expenses; hinderance, obstruction, and deprivation of gainful employment; loss of economic status; and loss of property. Ms. Myers's injuries and damages were a direct, proximate, and reasonably foreseeable result of the conduct, actions, and/ or omissions of the RICO Defendants and their violations of 18 U.S.C. § 1962(c).

182. Ms. Myers is entitled to permanent injunctive relief that includes the RICO Defendants and anyone acting in concert with them, including but not limited to, the following: (a) prevention from withholding and/or obstruction of obtaining evidence, proofs, and/or documentation by the JCSO, USMS, JCDSS, AT&T Inc., AT&T Mobility, LLC, and any other agency, department, agents, and/or likewise involved in and/or contributing to the events that occurred prior to, on, around, and after October 12, 2010; (b) prevention from swearing of false warrants and/or making false affidavits that contain information stated as "upon information and belief" and not fact; (c) prevention from willful, knowing, and/or willing failure to intervene and report misconduct and/or unlawful acts and/or activities; and (d) prevention from the unlawful targeting, discrimination, and/or malice conduct towards the Myers Family.

### SECOND CLAIM FOR RELIEF
### Violations of 18 U.S.C. § 1962(d)
### (Against all RICO Defendants)

183. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

184. The RICO Defendants have knowingly, willingly, and/or willfully conspired, collaborated, and/or

joined forces and agreed together and with others to violate 18 U.S.C. § 1962(c) as described within this complaint and in violation of 18 U.S.C. § 1962(d).

185. Shown by facts, proofs, evidence, documentation, and conduct, the RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts; the RICO Defendants knew that the predicate acts were part of racketeering activities; and the RICO Defendants knew that the agreement and participation of each one of them allowed the commission of these patterns of racketeering activities. The conduct of the RICO Defendants constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

186. Shown by facts, proofs, evidence, documentation, and conduct, the RICO Defendants knew and agreed to facilitate their own Enterprise's schemes, as well as to facilitate and help the other RICO Enterprises schemes. The RICO Defendants knew they were engaging in a pattern and/or patterns of racketeering activity and/or activities in carrying out and/or engaging in their own schemes, as well as those schemes generated, operated, and/or managed by other RICO Enterprises, as described within this complaint.

187. Ms. Myers was injured as a direct and proximate cause of the RICO Defendants conspiracy in violation of 18 U.S.C. § 1962(d). Ms. Myers has been injured and/or damaged in her business and property. These injuries and damages include but are not limited to damage to her reputation; loss of finances; damage, destruction, and/or theft of property; attorneys' fees; travel expenses; hinderance, obstruction, and deprivation of gainful employment; loss of economic status; and loss of property. Ms. Myers's injuries and damages were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. § 1962(d).

188. Pursuant to 18 U.S.C. § 1962(c), Ms. Myers is entitled to treble damages, costs, and attorney's fees from the RICO Defendants.

## THIRD CLAIM FOR RELIEF: FEDERAL LAW VIOLATIONS
### (Against all RICO Defendants)

**Count 1: 42 U.S. Code § 1985(2) and (3) - Conspiracy to interfere with civil rights**

189. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

190. As shown by facts, proofs, evidence, and/or documentation; and within this complaint and following exhibits; Bryan Konig, the Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, Sheriff Steve Bizzell, AT&T Inc., AT&T Mobility, LLC; Unknown agents/employees of AT&T Inc. and AT&T Mobility, LLC, Unknown agents/ employees of the JCSO, and/or BB&T did conspire to deter, by force, intimidation, and/or threat; and did in fact impede hinder, obstruct, and/or defeat the due course of justice in both North Carolina and South Carolina, with the intent to deny to Ms. Myers, Tyre Myers, and Dameon Myers the equal protection of the laws; and/or to cause injury and damage to Ms. Myers and to her children and property due to Ms. Myers's lawful enforcing and/or attempting to enforce her substantive rights, as well as the substantive rights of her children, and family members to the equal protection of the laws.

191. As shown, the RICO Defendants did unlawfully deny Ms. Myers, her children, Tyre Myers, and Dameon Myers equal protection under the law; failed to cooperate during both a federal and state investigation; denied Ms. Myers and her children their substantive due process Rights under the Constitution of the United States, Treaty of Peace and Friendship of 1787, and Universal Declaration of Human Rights; take, withhold, destroy, and/or otherwise hinder Ms. Myers and her children from the lawful possession and use of their property, liberties, and freedoms.

## Count 2: 42 U.S. Code § 1983 - Civil action for deprivation of rights

192. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

193. As detailed within this complaint and shown through facts, proofs, evidence, and/or documentations; Ms. Myers was deprived of her substantive rights under the color of law, color of statute, ordinance, regulation, custom, and/or usage of her rights, privileges, and/or immunities secured by the United States Constitution and Laws thereof by the RICO Defendants named herein.

194. Under the color of law, color of statute, ordinance, regulation, custom, and/or usage:

(1) Bryan Konig and the Unknown agents/employees of the USMS deprived Ms. Myers of her freedom, children, liberties, and property. The named Defendants deprived Ms. Myers of her substantive substantive rights including but not limited to: her Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment Rights;

(2) A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, Unknown officers/ employees of the JCSO, and/or Sheriff Steve Bizzell deprived Ms. Myers of her freedom, children, liberties, and property. The named defendants deprived Ms. Myers of her substantive Rights including but not limited to: her Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment Rights;

(3) AT&T Inc., AT&T Mobility, LLC; and Unknown agents/employees of AT&T Inc. and AT&T Mobility, LLC deprived Ms. Myers of her substantive right to privacy under the Ninth Amendment of the United States Constitution, and her substantive right to freedom from unlawful searches and seizure under the Fourth Amendment of the United States Constitution;

(4) Branch Banking and Trust (BB&T) deprived Ms. Myers of her substantive right to

freedom from unlawful search and seizure under the Fourth Amendment of the United States

Constitution, as well as her substantive right to her property under the Ninth Amendment of

the United States Constitution.

## FOURTH CLAIM FOR RELIEF: STATE LAW VIOLATIONS
**(Against US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/employees of the JCSO)**

### Count 1: N.C.G.S. Article 10 § 14-39-Kidnapping

195. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of

this complaint as if set forth in full.

196. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the

USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James

Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and officers/employees

of the JCSO did in fact commit and/or cause to be committed the unlawfully confine, restrain,

and/or remove; and/or caused the unlawful confinement, restraint, and/or removal of Ms. Myers

and Ms. Myers's minor children against their will by unlawfully arresting and causing the

unlawful confinement of Ms. Myers in the Johnston County jail for the purposes of holding her

her hostage for payment of money; extorting money and property from her and her children;

coercing Ms. Myers to participate in their schemes against Dameon and Tyre Myers; and for the

purposes of placing her in involuntary servitude for the State of North Carolina.

197. Additionally, Ms. Myers's minor children were also unlawfully kidnapped and/or caused to be

unlawfully kidnapped by the above named RICO Defendants. The minor children were held

against their will and forcefully removed from their home, property, and mother; and unlawfully

placed in the care and/or custody of the State of North Carolina and/or the Johnston County

Department of Social Services as wards. The actions and/or omissions of the above named RICO

Defendants were beyond the scope of their duties, and beyond their oaths.

### Count 2: N.C.G.S. Article 10 § 14-41 Abduction of children

198. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of

this complaint as if set forth in full.

199. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the

USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James

Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officer/

employees of the JCSO unlawfully did in fact commit and/or cause to be committed the unlawful

abduction of Ms. Myers's minor children by seizing, restraining, and/or removing the minor

children from their lawful parent, home, and property against their will; and unlawfully placing

them in the possession of other individuals whom were not lawfully a parent, caregiver, guardian,

and/or possessed lawful custody. The actions and/or omissions of the above named RICO

Defendants were beyond the scope of their duties, and beyond their oaths.

### Count 3: N.C.G.S. Article 10 § 14-43.3 Felonious restraint

200. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of

this complaint as if set forth in full.

201. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the

USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James

Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and officers/employees

of the JCSO did in fact commit and/or cause to be committed the unlawful restraint of Ms. Myers

and her minor children by unlawfully seizing and/or holding Ms. Myers and her children against

their will and without their consent; and unlawfully removing them from their lawful home and

property and unlawfully transporting them by vehicle to an unlawful place; unlawful place of

confinement; and/or into a place, person, entity, and/or likewise of unlawful custody. The actions

and/or omissions of the above named RICO Defendants were beyond the scope of their duties,

and beyond their oaths.

**Count 4: N.C.G.S. Article 10-A § 14-43.11  Human trafficking**

202. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of
this complaint as if set forth in full.

203. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the
USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James
Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/
employees of the JCSO committed and/or cause to be committed the unlawful act of human
trafficking by unlawfully seizing Ms. Myers and her children against their will; and in reckless
disregard harbored and/or transported Ms. Myers and her minor children from their lawful home
and property and into involuntary servitude to the State of North Carolina and/or agencies,
departments, and/or likewise without lawful purpose, reason, and/or likewise. The actions and/or
omissions of the above named RICO Defendants were beyond the scope of their duties, and
beyond their oaths.

**Count 5: N.C.G.S. Article 14 § § 14-51 and 14-51.2 Burglary and Other House Breakings
and N.C.G.S. Article 17 § 14-87  Robbery with firearms or other dangerous weapons**

204. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of
this complaint as if set forth in full.

205. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the

USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James

Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/

employees of the JCSO did commit and/or cause to be committed the unlawful acts of burglary

and robbery by unlawfully using force and violence to enter and take Ms. Myers and her minor

children's personal property and possessions; while using firearms and other dangerous weapons;

endangering the life of Ms. Myers and her children, with the intent, purpose, and goal to take the

lawful property of Myers and her children. The home and property of Ms. Myers and her children

were in fact burglarized, and the property there in- as well as other property, taken, seized, and/or

destroyed. The actions and/or omissions of the above named RICO Defendants were beyond the

scope of their duties, and beyond their oaths.

**Count 6: N.C.G.S. Article 19-D § 14-113.31. Prohibition of falsely obtaining, selling, or soliciting
telephone records and Article 50 § 14-370 Wrongfully obtaining or divulging knowledge of
telephonic messages
(Against US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch
Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry,
Danny Johnson, Lt. Stewart, David Hildreth, unknown officers/employees of the JCSO, AT&T Inc.,
AT&T Mobility, LLC; and Unknown agents/employees of AT&T Inc., and AT&T Mobility, LLC)**

206. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of

     this complaint as if set forth in full.

207. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the

     USMS did in fact commit and/or cause to be committed the unlawful acts of obtaining and

     divulging telephone records and messages by unlawfully communicating fraudulent information

     with AT&T Inc., AT&T Mobility, LLC; and unknown employees and agents of AT&T Inc. and

     AT&T Mobility, LLC with the intent and purpose of committing illegal activities and participating

     in unlawful conduct. A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A.

Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/employees of the JCSO did in fact use the unlawfully obtained information to commit unlawful acts and illegal crimes against Loushonda Myers, her children, Tyre Myers, and Dameon Myers including but not limited to robbery, burglary, larceny, kidnapping, and extortion. The acts and/or omissions of the above RICO Defendants were beyond the scope of their duties, and beyond their oaths.

### Count 7: N.C.G.S. Article 20 § 14-118.4 Extortion

208. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

209. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/ employees of the JCSO did in fact extort Ms. Myers by threatening her with loss of life, liberty, freedom, and her children in order to obtain an unfair advantage of her; to obtain an unfair advantage over Tyre and Dameon Myers; to take property of value from Ms. Myers and her children; and to cause a fear of economic harm , as well as facilitate their goals. The acts and/or omissions of the above RICO Defendants were beyond the scope of their duties, and beyond their oaths.

### Count 8: N.C.G.S. Article 30 § 14-221.1 Altering, destroying, or stealing evidence of criminal conduct

210. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

211. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the

USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/ employees of the JCSO did in fact alter, destroy, steal, and/or remove substantive evidence, material, documents, and/or proofs in order to: (a) conceal, cover up, and/or keep secret the acts and/or omissions of their criminal enterprises, and the other criminal enterprises involved; (b) conceal, cover up, and/or keep secret the criminal activities; (c) prevent Ms. Myers from having a fair trial; (d) conceal cover up, and/or keep secret the unlawful conduct and acts perpetrated against Dameon and Tyre Myers; and (e) prevent Ms. Myers from obtaining evidence, documents, proofs, and/or materials she had a substantive right to. The above named RICO Defendants accomplished this criminal act by accessing the files and/or evidence of their respective agencies and/or departments and removing, stealing, altering, and/or destroying evidence and/or files that were in fact relevant to criminal offenses. The acts and/or omissions of the above RICO Defendants were beyond the scope of their duties, and beyond their oaths.

**Count 9: N.C.G.S. Article 30 § 14-225  False reports to law enforcement agencies or officers**

212. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

213. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/ employees of the JCSO did in fact make false statements and/or reports to law enforcement agencies, officers, and/or agencies and officers working collaboratively with law enforcement agencies and/or officers in order to hinder and obstruct justice; effect fear of economic harm; carryout illicit activities; and effect the plans of their criminal schemes.

214. US Marshal Bryan Konig, Unknown agents/employees of the USMS did in fact relay false in

formation the the JCSO and the officers/employees there of. These statements were proven to be

false by statements and/or reports received from the JCSO. and documents. As detailed

throughout the complaint and as shown in the exhibits following this complaint, the statements of

the above RICO Defendants were false and proven to be false through their own records, proofs,

documents, and/or statements. In addition, the above RICO Defendants made statements and/or

reports that were proven to be false to JCDSS with the intent and/or purpose of taking away Ms.

Myers's children; extorting Ms. Myers; effecting fear and harm upon Ms. Myers; and promoting

their goals. The acts and/or omissions of the above RICO Defendants were beyond the scope of

their duties, and beyond their oaths.

## Count 10: N.C.G.S. ARTICLE 31 § 14-230- Willfully failing to discharge duties; § 14-231-Failing to make reports and discharge other duties
### (Against Sheriff Steve Bizzell)

215. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of

this complaint as if set forth in full.

216. As detailed in this complaint, Ms. Myers sent a written complaint to Sheriff Steve Bizzell

detailing the unlawful acts and/or omissions of the above named and unknown officers/employees

of the JCSO, as well as the agents/employees of the USMS. Sheriff Steve Bizzell did not carryout

and/or perform his proper duties under his office and/or oath and failed to protect citizens of

North Carolina, when it was within his power to do so. Sheriff Bizzell's actions an/or inaction was

done with malice, corruptness, and with intent to do harm. Sheriff Bizzell did not respond to Ms.

Myers's complaint, even though it is within his duty to do so. The actions and/or omissions of

Sheriff Steve Bizzell is beyond his duties and not within the scope of his employment.

## FIFTH CLAIM FOR RELIEF: VIOLATIONS OF THE SUPREME LAW OF THE LAND: UNITED STATES CONSTITUTION AND THE TREATIES THEREOF
### (Against all RICO Defendants)

217. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full for each Count and violation.

### Count 1: Fourth Amendment

218. As detailed in this complaint, AT&T Inc.; AT&T Mobility, LLC; Unknown employees/agents of AT&T Inc. and AT&T Mobility, LLC; Branch Banking and Trust (BB&T), US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/employees of the JCSO did in fact violate Ms. Myers's substantive Fourth Amendment Right causing substantial irreparable harm, injury, and/or damage. *The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.* As proven by Adren Harris's own admission and documentation, **no probable cause existed**; and the alleged probable cause submitted to two different magistrates have been proven to be false, fabricated, and/or tainted.

219. AT&T Inc.; AT&T Mobility, LLC; Unknown employees/agents of AT&T Inc. and AT&T Mobility, LLC unlawfully searched and opened to search by other individuals and/or agencies; and released, communicated, participated, and/or gave up confidential communications, surveillance, tracking, tracing, and/or pinging of Ms. Myers's cellular phones without lawful process, warrant, and/or lawful means.

220. Branch Banking and Trust (BB&T) did unlawfully search, seize, and unlawfully transfer, hold, and/or otherwise give up property and/or money belonging to Ms. Myers without lawful process, warrant, and/or other lawful means. Branch Banking and Trust (BB&T) failed to notify Ms. Myers of their actions prior to unlawfully depriving her of substantive rights to her property and/or money.

## Count 2: Fifth Amendment

221. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/employees of the JCSO did in fact violate Ms. Myers's substantive Fifth Amendment Right. *No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*

222. Ms. Myers was never presented or indicted by a grand jury prior to being seized and incarcerated the above named RICO Defendants. Additionally, as detailed herein, Ms. Myers was deprived of her life, liberty, and property without due process and her property, as well as her children's property, has been taken without compensation. Ms. Myers and her children's home and property were seized without lawful warrants and/or indictment; Ms. Myers was denied substantive discovery materials; and Ms. Myers was denied her and her children's lawful property, even after

her charges were dismissed. Ms. Myers is being denied property and substantive documents, proofs, evidence and/or effects to this day.

**Count 3: Sixth Amendment**

223. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/ employees of the JCSO did in fact violate and/or cause to be violated Ms. Myers's substantive Sixth Amendment Right. *In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.*

224. Ms. Myers was denied the right to confront the witnesses against her; she was denied being informed of the nature and cause of the accusation; she was denied compulsory process for obtaining witnesses in her favor due to the denial of her due process rights; including the issuance of fraudulent warrants; the making of false statements; denial of substantive discovery materials; denial of evidence Ms. Myers recorded on her Blackberry phone; and denial of the identity and/or identities of the person and/or persons that initiated the false, fraudulent accusations against her, among other gross denials.

**Count 4: Eighth Amendment**

225. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James

Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/ employees of the JCSO did in fact violate Ms. Myers's substantive Eighth Amendment Right. *Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.* Ms. Myers was unlawfully denied the opportunity to give her word as her bond and was forced to pay an excessive bail amount due to the actions and/or omissions of the above named RICO Defendants in instituting unlawful seizure, arrest, search, and imprisonment.

## Count 5: Ninth Amendment

226. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, and unknown officers/ employees of the JCSO did in fact violate Ms. Myers's substantive Ninth Amendment Rights. *The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.*

227. Ms. Myers was denied the Right to her children, freedom, liberty, life, and property without due process of law; forced to prove her innocence against fraudulent charges; denied equal justice within the courts; denied help when complaining of Constitutional violations, injuries, and harm; denied access to the courts to petition for the redress of Constitutional violations occurring to her minor children due to her not possessing a bar license; denied remedy in the law; forced to repeatedly petition the courts, Johnston County Sheriff Office, United States Marshal Service, the State of North Carolina, and numerous governmental agencies, entities, agents, and individuals for redress, while being ignored, denied, and/or disregarded despite having proof, evidence, and/ or documentation of having been injured, harmed, and/or damaged.

228. Furthermore, Tyre and Dameon Myers suffered damages as a result of the RICO Defendants'

actions including but not limited to: defamation of character; obstruction of justice for willingly, knowingly, and willfully participating in a conspiracy to frame Tyre and Dameon Myers for at least one murder; discrimination; and deprivation of due process.

## Count 6: Fourteenth Amendment

229. As detailed in this complaint, US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, Sheriff Steve Bizzell, and unknown officers/employees of the JCSO did in fact violate Ms. Myers's substantive Fourteenth Amendment Right. *No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

230. As shown in the complaint and the accompanying exhibits, the above named RICO Defendants did in fact deny Ms. Myers her Fourteenth Amendment Right by denying, restricting, and/or limiting Ms. Myers's due process Rights due to her race, gender, and social status; and her family's race and social status. Ms. Myers and her family are not white individuals and do not possess a substantial amount of wealth and/or political influence. As shown in the exhibits, another white female, the daughter of the Wake County Sheriff, was charged with similar crimes and received a favorable outcome of her criminal charges without the turmoil, threats, humiliation, and financial burdens that were placed upon Ms. Myers.

## Count 7: Violations of Treaties

231. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of

this complaint as if set forth in full.

232. Ms. Myers has been and is currently being denied substantive Rights guaranteed under the Supreme Laws of the Land including but not limited to the following Supreme Laws:

    (a) 1787 Treaty of Peace and Friendship;

    (b) International Covenant on Civil and Political Rights; and

    (c) Universal Declaration of Human Rights.

### Sixth Claim for Relief: False Imprisonment

233. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

234. As shown by facts, evidence, proofs, and/or documentations, Ms. Myers's criminal charges were in fact dismissed due to no probable cause for arrest. Ms. Myers fought against the criminal and civil charges that were initiated against her; and Ms. Myers was in fact imprisoned for two weeks due to the criminal charges initiated against her.

### Seventh Claim for Relief: Emotional Distress

235. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

236. Ms. Myers experienced severe emotional distress and turmoil during the criminal and civil matters initiated against her, not to mention during the weeks incarcerated separated from her children. Ms Myers's horrifying experiences began on October 12, 2010, and is still occurring and affecting her to this day.

237. Ms. Myers and her children have lost most of their personal property due to the financial burden that has been placed upon them. Ms, Myers now lives in a fragile financial state.

### Eight Claim for Relief: Loss of Consortium

238. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

239. Ms. Myers spent two weeks away from her children, and void of the companionship and benefits of being together as a family with her children.

### Ninth Claim for Relief: Loss, deprivation, and destruction of property

240. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

241. As shown by facts, evidence, proofs, and/or documentations, Ms. Myers was in fact deprived of her and her children's personal property; including receipts, money, vehicle, cell phones, and personal papers and effects.

### Tenth Claim for Relief: Malicious Prosecution

242. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

243. As shown by facts, evidence, proofs, and/or documentations; US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, Sheriff Steve Bizzell, and unknown officers/employees of the JCSO did in fact initiate malicious criminal and civil charges against Ms. Myers. Both Civil and Criminal charges were dismissed, with the criminal charges being dismissed due to no probable cause to arrest. And, both the civil and criminal charges were dismissed in favor of Ms. Myers.

### Eleventh Claim for Relief: Fraud

244. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

245. US Marshal Bryan Konig, Unknown agents/employees of the USMS, A.C. Fish, Kritch Allen, Deputy Gillis, Don Pate, J. Creech, J. Canady, A. Case, James Gerrell; Captain Daughtry, Danny Johnson, Lt. Stewart, David Hildreth, Sheriff Steve Bizzell, unknown officers/employees of the JCSO, AT&T Inc.; AT&T Mobility, LLC; Unknown employees/agents of AT&T Inc. and AT&T Mobility, LLC, and Branch Banking and Trust committed fraud whether in action or by silence where there was a duty to speak.

246. The RICO Defendants withheld and failed to speak the truth where there was a substantive duty to do so, and/or or introduced information, documents, proofs, and likewise that they knew contained false, fabricated, and/or fraudulent information.

## Twelfth Claim for Relief: Loss of Earning Capacity

247. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

248. As shown by facts, evidence, proofs, and/or documentations; Ms. Myers was unable to obtain gainful employment due to the felonious charges on her record that were initiated on October 12, 2010, until July 2013. Ms. Myers and her children were forced to participate and currently still participate in federal food stamp benefits. Ms. Myers and her children now live below the poverty line due to the conduct and actions of the RICO Defendants.

## Thirteenth Claim for Relief: Treason

249. Ms. Myers realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if set forth in full.

250. As shown by facts, evidence, proofs, and/or documentations; the RICO Defendants levied war against the United States and the Supreme Laws of the Land pursuant to Article III, § 3; by depriving, restricting, and/or taking away Ms. Myers's substantive Rights guaranteed by the

Supreme Laws of the United States.

## DEMAND FOR RELIEF/REMEDY/REDRESS

Ms. Myers demands judgement as follows:

### First Claim for Relief: Violations of Violations of RICO, 18 U.S.C. § 1962(c)(All Patterns/Acts/Conduct):

1. Trebled damages, injuries, and harm pursuant to 18 U.S.C. § 1964(c); to include interest,

attorney's fees and costs;

### Second Claim for Relief : Violations of 18 U.S.C. § 1962(d) (All Patterns/Acts/Conduct)

2. Trebled damages, injuries, and harm pursuant to 18 U.S.C. § 1964(c); to include interest,

attorney's fees and costs;

### Third Claim for Relief: Violations of Federal Laws (All Counts)

3. Damages, injuries, and/or harm in the amount of $100 million and attorney's fees and costs,

pursuant to 42 U.S. Code § 1988;

### Fourth Claim for Relief: Violations of State Law (All Counts)

4. Damages, injuries, harm in the amount of $100 million;

### Fifth Claim for Relief: Violations of the Supreme Law of the Land and the Treaties Thereof (All Counts)

5. Damages, injuries, harm in the amount of $500 million;

### Sixth through Thirteenth Claims for Relief

6. Damages, injuries, harm in an amount to be determined at trail by Jury;

### As to all Claims and Causes of Action:

Case 5:12-cv-00714-BO   Document 189   Filed 03/31/14   Page 103 of 104

7. Speedy Remedy: The plaintiffs are seeking remedy that will prevent further substantial and irreparable injury from befalling upon them;

8. Substitution and Interim Remedies to provide for the information, evidence, and/or discovery materials that Plaintiff, Ms. Myers, has been denied;

9. Injunctive relief against the Defendants to prevent the selling, disposing, transferring, dissipation, and/or likewise of assets;

10. As a natural citizen in the Republic of the United States, Ms. Myers has the duty to prosecute for Constitutional and substantive Rights violations; as such, on behalf of Mr. Dameon Myers and Mr. Tyre Myers, as private attorney general, Ms. Myers demands any and all remedy and/or relief that is just;

11. As to Ms. Myers, any and all remedy and/or relief that is just;

12. If necessary; Plaintiffs demands for all issues to be decided by the Jury Demanded;

13. If the Defendants move to dismiss this suit, Plaintiffs Demands that it be heard by the jury demanded, and only be dismissed if the Jury considers it lacks merit.

March 21, 2014.

Loushonda Myers
In Propria Persona Plaintiff
Private Attorney General
on Behalf of Dameon Myers and Tyre Myers
In Propria Persona Plaintiffs