STATE OF NORTH CAROLINA   IN THE GENERAL COURT OF JUSTICE
COUNTY OF JOHNSTON                SUPERIOR COURT DIVISION
                                 FILE NO. 10-CRS-56376-77

```
_____
STATE OF NORTH CAROLINA )
                        )      T-R-A-N-S-C-R-I-P-T
         VS.            )
                        )         (Motions)
LOUSHONDA MYERS         )
         ·DEFENDANT.    )
_____)
```

        The transcript of the nonjury proceedings taken
in the General Court of Justice, Superior Court
Division, Johnston County, North Carolina, at the
November 7, 2011 Administrative Session before the
Honorable Paul Gessner, Judge Presiding.
                    ********

                    APPEARANCES:

Mr. Adren Harris
Assistant District Attorney
Prosecutorial District 11-B
Smithfield, North Carolina
On behalf of the State.

Mr. Steven Walker
Attorney at Law
Selma, North Carolina
On behalf of the Defendant.

_____

Tina McNair
Official Court Reporter
Judicial District 11-B
Smithfield, North Carolina

1    MR. HARRIS:  Loushonda Myers.  Your Honor,

2  the State and defense have agreed to a trial date in

3  this matter for January 9.  All pretrial motions shall

4  be heard on January 3rd and shall be filed and certified

5  on opposing counseling on or before December 22nd.

6    MR. WALKER:  Your Honor, I've been informed

7  by my client just here that that is too soon of a trial

8  date and she does not consent to that trial date.

9    MR. HARRIS:  Your Honor, this case has been

10  on for disposition several times.  Prior to this, Ms.

11  Ballard was the retained attorney.  It had been on for

12  second setting disposition multiple times, that matter,

13  and then after Ms. Ballard left, it had -- Mr. Walker

14  had taken over and it has been on for disposition.  I

15  did a first setting with him, I did a second setting

16  with him.  Last admin we let it go again for disposition

17  and here we are again.  This matter needs to be set for

18  trial.

19    THE COURT:  She was indicted December 13,

20  2010 according to the calendar --

21    MR. HARRIS:  Yes, sir.

22    THE COURT:  -- that the trial court

23  administrator has provided to me.

24    MR. HARRIS:  That is correct, Your Honor.

25    MR. WALKER:  And I will say that the reason

1    we set it to this administrative setting, Mr. Harris was

2    not available last administrative setting.

3                MR. HARRIS:  It was going to be set for

4    trial anyway if I was available, but I gave Mr. Walker

5    another chance as well as his client.  I provided a plea

6    offer.  That was rejected.  We provided discovery.  I

7    know Mr. Walker has motions.  That's why I'm asking that

8    it be set for trial.  It's been set multiple times.

9    It's time to set a trial date in this matter.

10                THE COURT:  Let me look at the proposed

11    pretrial order if you have one.  I know you recited the

12    dates, but obviously I didn't write down notes and --

13                MR. HARRIS:  May I approach, Your Honor?

14                THE COURT:  Yes, please.  Do you want to be

15    heard any further on this issue on the scheduling order,

16    Mr. Walker?

17                MR. WALKER:  Yes, I do, Your Honor.  The

18    reason why -- this is one of the reasons we have these

19    administrative settings is to check to see if all the

20    discovery has been turned over.  One of the reasons that

21    we're objecting to this trial date is because we don't

22    feel like we have all the discovery.  That's why we

23    filed a Motion to Compel Discovery.  It's kind of hard

24    for us to set a motions date and expect us to file

25    motions when we don't know everything in the case.

1    That's why we filed the Motion to Compel Discovery.  We

2    filed it last time.

3            Judge Hinnant, I believe it was or Hinton,

4    she looked at it and said she wasn't going to rule on it

5    right then because it had just been filed.  Before that,

6    I sent a letter back in September asking for these

7    things and I've basically been told --- never on the

8    record, but I've been told that these things aren't

9    forthcoming even if they don't exist or we're not

10   entitled to them.

11           MR. HARRIS:  Therefore, we have a trial and

12   motions date to hear all the motions.  We turned over

13   everything in the police file if there's anything

14   outstanding to be heard before the judge on the motions

15   date.

16           THE DEFENDANT:  Your Honor, may I be heard

17   on this?

18           THE COURT:  Ma'am, you have the right to

19   remain silent.  You need to understand that anything you

20   say can and will be used against you.  Mr. Walker is

21   standing right beside you and I would not allow you to

22   say anything without first consulting with him about

23   anything that you want to say.

24           THE DEFENDANT:  I already have and I would

25   like to speak.

```
 1              THE COURT:  Well, let me just caution you
 2    that right now I need to review this.
 3              Mr. Walker, did you have anything else you
 4    wanted to offer at this time?
 5              MR. WALKER:  Other than what's in the Motion
 6    to Compel Discovery, that's things that I do believe
 7    that we're entitled to under the discovery statute.
 8              THE COURT:  I was looking for that
 9    specifically and I found where -- it looks like last
10    month Judge Hinton -- I think I just found your Motion
11    to Compel.
12              MR. WALKER:  There was a Motion for
13    Discovery of DSS Materials.  My understanding DSS has
14    left those with Judge Lock and he's going to perform an
15    in-camera review and give us those things, but that's
16    not part of the Motion to Compel.
17              THE COURT:  I found a Motion for Voluntary
18    Discovery, August 10, 2011.
19              MR. WALKER:  This would be October 3rd.
20              THE COURT:  Motion to Compel.  I just found
21    it.  Did you want to hear that at this time, the Motion
22    to Compel?
23              MR. WALKER:  Yes.  I'm asking to hear it.  I
24    think it's proper.  I understand we have a motions date,
25    but also part of the things we do through an
```

1    administrative session is work out discovery matters.

2           THE COURT:  Before I address the matter

3    raised in the Motion to Compel, did you have any other

4    matters or motions on behalf of the State at this time

5    other than the scheduling order and the motion for --

6    didn't you say there was a Motion for Reciprocal

7    Discovery? ·

8           MR. HARRIS:  I have one, Your Honor.  I have

9    not handed it up.

10          THE COURT:  Okay.  Were there any other

11   matters for the State before I hear from Mr. Walker?

12          MR. HARRIS:  No, Your Honor.

13          THE COURT:  I'll come back to you in a

14   minute.

15          So I have reviewed your Motion to Compel.

16   You're specifically seeking those things that you have

17   set forth in Number 6A through H, correct?

18          MR. WALKER:  Yes, Your Honor.  And also I

19   believe in paragraph 7, either a statement that was made

20   by her or at least something on the record.  We were

21   given notice in the discovery.  That's the way the

22   discovery always comes is that you're given notice of

23   these three things which trigger important time

24   deadlines.  Sometimes it's there, sometimes it's not,

25   and so you're having to go through it.  I've been put on

1    notice that we're going to have a statement of hers

2    admitted into evidence.  If they intend to use it, I

3    don't have a statement in there.  So I either want to

4    know whether there's a statement or not, or if there is

5    a statement I want a copy of it.

6            THE COURT:  Okay.  Well, let's take them one

7    at a time starting at the top, 6A.

8            MR. WALKER:  Okay.

9            THE COURT:  Discovery indicates that law

10   enforcement sources in South Carolina notified Johnston

11   County Sheriff's Office that two fugitives were residing

12   in the defendant's home.  Defendant's entitled to any

13   notes taken in regard to those law enforcement sources

14   in South Carolina.  You're specifically seeking notes

15   that may have been taken by the recipient for the

16   Johnston County Sheriff's Office?

17           MR. WALKER:  Yes.  Notes or indications or

18   -- all we know is this is from the search warrant, says

19   that there are law enforcement sources in South Carolina

20   that are involved.  We need to find out were these

21   anonymous sources, were these law enforcement sources,

22   who are the law enforcement sources in South Carolina.

23   If we don't know who the -- I mean, there are tons of

24   law enforcement sources in South Carolina.  How are we

25   going to narrow it down to find out who -- to

1    investigate what we need to file on a Motion to Suppress

2    if we can't find out where this information is coming

3    from that's given to the magistrate.

4              THE COURT:  You want to be heard?

5              MR. HARRIS:  Briefly, Your Honor.  As far as

6    A, the State has provided all the information that the

7    Johnston County Sheriff's Department received regarding

8    the search warrant.  Therefore, they were given a search

9    warrant to go in and look for the fugitive that was

10   spotted by the marshal service.  Other than that, there

11   is no other information that I know that exists

12   regarding South Carolina other than what they

13   communicated for the basis of the search warrant, the

14   Johnston County Sheriff's Department.

15             THE COURT:  All right.

16             MR. HARRIS:  And Your Honor, just so that

17   we're clear, this is a trafficking cocaine case.  That

18   initially began with the marshals coming to the Johnston

19   County Sheriff's Department stating that they had two

20   fugitives from South Carolina, I think for murder or

21   some type of robbery.  When they went to the defendant's

22   home, they had a surveillance, just an eye surveillance

23   watching.  They saw an individual that matched the

24   physical description of one of the individuals, I

25   believe is her husband, and that she had not seen him in

1  so many years according to her. At that point they then

2  contacted the Johnston County Sheriff's Department

3  saying look, got this fugitive, this person matches the

4  description. He's been on the run, we've been chasing

5  them. The Johnston County Sheriff's Department got the

6  search warrant for that instance, the fugitive.

7           Upon entering, looking for this individual,

8  they see in plain sight, because in the laundry room on

9  top of the washer/dryer was an indoor marijuana growing

10 operation. When they see the drug operation, they go

11 back, based on that, and get another search warrant for

12 drugs and narcotics within the home. When they go back

13 on that second search warrant during the search, they

14 find in the bathroom in a drawer several ounces of

15 cocaine. That's what this stems from. Those are the

16 facts basically in the case, Your Honor. I just want to

17 give the Court an overview.

18           So the information regarding the NCIC report

19 about Tyree and Damien Myers -- I know the Court's going

20 one by one. But again, the only involvement regarding

21 the trafficking in drugs stem from, initially from the

22 search warrant for these fugitives. That was the

23 contact that the Johnston County Sheriff's Department

24 had with the marshals from South Carolina. That was it.

25           THE COURT: Well, they're asking for any

1    records or notes that may have been taken by the

2    sheriff's office regarding the obtaining, I guess, of

3    the first search warrant for the fugitives.

4              MR. HARRIS: And that's what -- we've handed

5    all that over. If you look at the search warrant, it

6    says verbatim what happened. Just like I explained to

7    the Court, they were contacted -- the Johnston County

8    Sheriff's Department didn't know anything about it until

9    they were contacted from the marshal service saying this

10   is the situation we have. We need your assistance or

11   what have you. All notes that were taken, the report,

12   I've provided all of that to defense counsel. There is

13   no -- as a matter of fact, I went downstairs yesterday

14   and met with Captain Fish who's in charge of the

15   narcotics unit, who's in charge of the Johnston County

16   Sheriff's Department. I asked him was there anything

17   else regarding the marshal service, any other notes,

18   anything else, any photographs, were they out there

19   taking pictures of the house that you guys received, any

20   video cameras. He says no, there were none. What's in

21   that search warrant and what's in our police report,

22   that's our interaction with them. That's the

23   information we received. That's it.

24              THE COURT: Okay. Are you aware of any NCIC

25   report showing that Damien Myers is a fugitive from

1    justice or just the one for Tyree that was handed over?

2            MR. HARRIS:  The only one that we have is

3    the one for Tyree that was handed up.

4            THE COURT:  Which was used as a basis for

5    the probable cause of the original search warrant?

6            MR. HARRIS:  Exactly.  Yes, Your Honor.

7    That's the one that fits the description of the

8    individual they saw.  They saw one individual.  I

9    believe it was two -- I don't know if they're brothers

10   or not, but that was the one.  And based on that, that's

11   why we handed that over because that's what we used for

12   the basis of a search warrant.

13           MR. WALKER:  I think the important thing to

14   also note in the overview is they indicated in their

15   search warrant application in the Affidavit that they

16   never lost the surveillance on the house that they kept

17   there, that they surrounded the house.  This was --

18   Johnston County Narcotics came to help out on the

19   fugitive catch.  It's not a SWAT team or anything like

20   that.  It's narcotics agents.  They came in and they

21   searched the house and they never find the fugitive and

22   they never lost surveillance.

23           I think that should be noted, that we've got

24   narcotics agents executing a search warrant to find a

25   fugitive and the fugitive is not present in the house.

1    That's why these things are important, to be able to

2    have these things and to know these things.  Were they

3    really going in there after a fugitive or was this

4    something to get the search warrant to go in there for

5    another reason?  We don't have these things.  I can't

6    imagine that the sheriff's department would go and do

7    these things without covering their bases.  So the next

8    one down is that we don't have the arrest warrants.

9             THE COURT:  Well, the arrest warrants should

10    be a South Carolina process or some other process.  They

11    would be -- the NCIC, I think, would then entitle that,

12    but the hit on the NCIC paperwork, if I'm not mistaken,

13    is what would entitle them to arrest them on the

14    Fugitive from Justice Warrant, which is issued in North

15    Carolina.

16             MR. WALKER:  And I would like a copy of

17    that.

18             THE COURT:  Well, it's in the Clerk's Office

19    I'm sure.

20             MR. WALKER:  I don't -- my thing is one of

21    the requirements to go in for a search warrant for

22    arrest is that you're going to serve the arrest warrant

23    and arrest the person when you go in there.  I would

24    think that the sheriff's department would have had that

25    in their possession, had that in their file.  I've

1    turned over their whole file, I don't have that. Now,

2    it may be on file in the Clerk's Office and I may be

3    able to get there, but --

4                THE COURT: If he was in fact arrested.

5                MR. WALKER: Or if he was going to be

6    arrested. I would think that they would need to at

7    least verify that they were going in to arrest somebody

8    if they had a warrant to do that.

9                THE COURT: I think he's already addressed

10   the concerns that you've raised in D about the

11   photographs, audio or video recordings. It sounds as

12   though there are not or at least that's what I picked up

13   a few minutes ago. Are you aware of any audio

14   recordings or any other information involving her phone?

15               MR. HARRIS: No, Your Honor. The only thing

16   that -- when I spoke with Captain Fish and when the

17   marshals were getting ready to do their entry or

18   whatever, Captain Fish had a conversation with the

19   defendant saying, you know, you need to watch out or

20   whatever. The defendant took her phone and was, I guess

21   trying to record what was going on, and he just said you

22   need to make sure that you're a safe distance when these

23   guys are coming into the home. That phone, as I

24   indicated to Mr. Walker, is in evidence. Any time he

25   wants to make an appointment to go down there and look

1  at her phone, review it or whatever, I told him that

2  he's more than welcome to do that.

3          MR. WALKER:  I don't believe that's what I'm

4  asking for in that section.  The defendant has reason to

5  believe there are cellular phone records that may have

6  been accessed and also has reason to believe the

7  cellular phone used may have been under surveillance.

8  I'm not talking about her taking a video.  I'm talking

9  about --

10          THE COURT:  Did they get a track and trace?

11          MR. HARRIS:  No, your Honor.

12          THE COURT:  Or one of those orders to find

13  out where she's going or --

14          MR. HARRIS:  No, Your Honor.

15          THE COURT:  Three-judge panel convened so

16  they could eavesdrop on her telephone conversation.

17  Anything of that nature?

18          MR. HARRIS:  No, Your Honor.

19          MR. WALKER:  The people she talked to on the

20  phone got stopped right after that.

21          THE COURT:  Her vehicle has been removed by

22  the sheriff's office.  She's entitled to any notes or

23  reports held in the custody of the vehicle.  Is that not

24  in his field notes or report?

25          MR. WALKER:  You don't find anything about

1   what happened with the car.

2           MR. HARRIS:  Your Honor, the vehicle was

3   taken into custody.  There is an evidence log of the

4   vehicle.

5           THE COURT:  So it's being held as evidence?

6           MR. HARRIS:  It was released.  As a matter

7   of fact, when Ms. Ballard represented her, the vehicle

8   had been released some time ago, like probably two or

9   three months after she was arrested.  She has the

10  vehicle.

11          THE COURT:  What are you looking for?

12          MR. WALKER:  I'm looking for -- I mean,

13  basically, if he took notes, if he had anything about

14  what he did with that and that was in his file, we're

15  entitled to it because under the statute we're entitled

16  to everything.  It may be that there's nothing there,

17  but there may be something there.

18          THE COURT:  If it exists, you got to give it

19  to them otherwise --

20          MR. HARRIS:  I understand, Your Honor.

21          THE COURT:  All right.  Are you aware of any

22  other law enforcement agencies or the marshals of the

23  Wake County Sheriff's Office having any notes of their

24  participation involving this activity or this incident?

25          MR. HARRIS:  No, sir, Your Honor.

1    MR. WALKER:  I would just be shocked to find

2    -- I didn't find any -- see anything in the discovery

3    files where any discovery request had been made of the

4    U.S. Marshals or to ask them if they had anything.  I

5    just can't imagine that they'd have a couple of U.S.

6    Marshals coming in and if they take no notes and leave

7    no tracks of anything of what they're doing in this

8    case.  All this started with the U.S. Marshals.  I don't

9    think we can get around the discovery statutes by just

10   bringing in a federal agency and let them start doing it

11   and then say, oh, you're not entitled to that because we

12   can't make them give the stuff over.

13         THE COURT:  If it exists, I'm going to

14   require the State to turn it over anyway.

15         MR. HARRIS:  Very well, Your Honor.

16         THE COURT:  I guess in number 7, you're

17   asking for full disclosure of any and all evidence that

18   they have in their possession that they intend to use?

19         MR. WALKER:  Our local rules have a form

20   that you use when you're given discovery that you got

21   check boxes to give notice of evidence you intend to

22   use.  These are the things that come under -- I don't

23   know if I've got the statute listed there, but the

24   things that give you -- basically, you got ten days to

25   file a Motion to Suppress for these things.  Instead of

1    using a check box anymore, basically what I get in

2    discovery is we intend to use all evidence that we have

3    including, but not limited to, these three things.

4            So we don't know if -- to me, that's not

5    notice under the statute, to say well, if we got it,

6    we're going to use it.  It's the same as me filing to

7    move to suppress all the evidence and that's it.  I got

8    a basis for it.  That's just not a specific enough

9    notice.  It kind of destroys the notice statute.  So I'm

10   asking that if any of those things exist that I be given

11   a copy of them.  If not, then they go on the record that

12   they don't intend to use those things because they don't

13   exist and it changes my preparation.

14           THE COURT:  You want to be heard?

15           MR. HARRIS:  Your Honor, only that language

16   tracks exactly the statute.

17           THE COURT:  And you're required to continue

18   to supplement your discovery under the statute.

19           MR. HARRIS:  Yes.

20           THE COURT:  Comply with all forms of the

21   statute.

22           MR. HARRIS:  That is correct.

23           MR. WALKER:  To put me on notice that

24   they're going to use something that doesn't exist,

25   really goes -- that's not what the notice statute is

1  for. The notice statute says that I have notice that

2  something exists and it's going to be used. But just

3  saying we're using everything in existence, including

4  these things, doesn't survive notice under that statute.

5          THE COURT: But you have a list of

6  everything they have?

7          MR. WALKER: I have what they've given me in

8  discovery. But as you say, I didn't feel like that was

9  everything or I wouldn't have filed the Motion to

10  Compel.

11          THE COURT: It better be everything.

12          MR. WALKER: I hope so. I really can't see

13  that it's everything. The statute says that we're

14  entitled to the complete files of all law enforcement

15  agencies involved in the investigation. I don't have a

16  single, solitary thing from the U.S. Marshals. My

17  client -- and I do need to amend, if I may, orally amend

18  my motion.

19          The discovery indicates that the Wake County

20  Sheriff's Office was involved. That is not indicated in

21  the discovery, I'm sorry, but my client recalls the Wake

22  County Sheriff's Office being involved, that they were

23  there, but I have nothing from the Wake County Sheriff's

24  Office either. Those are both law enforcement agencies

25  and I'm entitled to their complete file, but I don't

1    have it.

2              THE COURT:  I'm going to ask if you would

3    ascertain if there's anything available from the U.S.

4    Marshal Services or from the Wake County Sheriff's

5    Office.  And if there is, you're required to disclose it

6    or turn it all over related to this incident.

7              MR. HARRIS:  Very well, Your Honor.

8              THE COURT:  Anything else, Mr. Walker?

9              MR. WALKER:  The only thing is is about the

10   -- if there was a statement made by her, that we don't

11   have that.  We've been put on notice of that.  I believe

12   off the record it's been indicated that there was no

13   statement, but I would like to get that on the record in

14   case that pops up at trial.

15             THE COURT:  Are you aware of any statement

16   she's made?

17             MR. HARRIS:  Your Honor, the State is not

18   aware of any statements the defendant has made.

19             THE COURT:  Okay.  With the exception of

20   ascertaining Wake County Sheriff's Office and the U.S.

21   Marshal Service, the Motion to Compel is denied.  The

22   State is required to provide anything that they have in

23   their possession, custody or control or anything that

24   they can require -- they're required to turn it over.

25             MR. WALKER:  So you're granting the motion

| | |
|---|---|
| 1 | in part and denying it in part? |
| 2 | THE COURT: Correct. |
| 3 | MR. WALKER: Okay. Now, Your Honor, before |
| 4 | you finish your ruling, my client has asked me multiple |
| 5 | times if she can speak to the Court. I advised her that |
| 6 | that is generally not -- well, you've advised her of her |
| 7 | rights. If you want to give her the opportunity to |
| 8 | speak, I'm going to let her have the opportunity to |
| 9 | speak. I have, of course, advised her against it and |
| 10 | even advised her of the right to remain silent. If she |
| 11 | wishes to speak, I'm not going to stop her. |
| 12 | THE COURT: Ms. Myers, do you understand you |
| 13 | have the right to remain silent? |
| 14 | THE DEFENDANT: Yes, I do. |
| 15 | THE COURT: Do you understand that anything |
| 16 | you say can and will be used against you? |
| 17 | THE DEFENDANT: Yes, I do. |
| 18 | THE COURT: Do you understand that Mr. |
| 19 | Walker is standing right next to you and has the |
| 20 | opportunity to speak on your behalf? |
| 21 | THE DEFENDANT: Yes, I do. |
| 22 | THE COURT: Have you talked to him about |
| 23 | whatever it is you want to say to me? |
| 24 | THE DEFENDANT: Yes, I have. |
| 25 | THE COURT: How old are you? |

1          THE DEFENDANT:  I'm 33.

2          THE COURT:  How far did you get in school?

3          THE DEFENDANT:  I'm in college.

4          THE COURT:  Can you read and write?

5          THE DEFENDANT:  Yes, I can.

6          THE COURT:  Are you now under the influence

7   of alcohol, drugs, narcotics, medicines, pills or any

8   other intoxicant?

9          THE DEFENDANT:  No.

10          THE COURT:  Has anybody promised you or

11   threatened you in any way to have you give up your right

12   to remain silent and come in here and ask questions or

13   make statement here in open court?

14          THE DEFENDANT:  No.

15          THE COURT:  And the decision to make these

16   comments or statements that you want to make, is that a

17   decision that you and you alone have made?

18          THE Defendant:  Yes, I have.

19          THE COURT:  And have you talked to Mr.

20   Walker about the possible impact or effect that these

21   in-court statements could have on you?

22          THE Defendant:  Yes.

23          THE COURT:  And even after talking with him

24   about that, and I'm not asking about what he said or

25   what you said to him, that's your business and not

1   appropriate for me to go there, but the decision that

2   you're making to make these statements came after you

3   have talked with your lawyer about this?

4            THE DEFENDANT: Yes.

5            THE COURT: If there's something that you

6   feel like you must ask me, you may go ahead. Before I

7   do that, I'm going to say that you have knowingly,

8   intelligently, freely and voluntarily waived your rights

9   with respect to making a statement here in open court

10  and understand your rights regarding the right to remain

11  silent.

12           THE DEFENDANT: Uh-huh. The first thing

13  that I would like to bring to the Court's attention is

14  that Mr. Harris stated my previous attorney, Ms. Aletha

15  Ballard, that it has been going on with her prior to Mr.

16  Walker. I would like to present evidence to the Court

17  that for almost a year I have been asking Ms. Ballard to

18  obtain additional discovery information. I've also

19  asked her to inform Mr. Harris that he is -- under the

20  Sixth Amendment of the Constitution, I have a right to

21  confront my accuser. Also under the Fourteenth

22  Amendment, I am entitled to due process, which means

23  that I am entitled to every piece of information that

24  the prosecution has against me and the prosecution has a

25  duty to fully investigate what's going on.

1    Mr. Harris mentioned that the marshals came

2    to my home stating that these people were wanted for

3    murder and robbery.  In the affidavit it states they

4    were wanted for robbery and narcotics.  However, as I

5    told my attorney, Mr. Walker, they were there in my home

6    searching for other things.

7    Mr. Harris also stated that the U.S.

8    Marshals contacted the Johnston County Sheriff's

9    Department and asked them to assist.  The marshal has

10   the authority to arrest anyone wherever they find them.

11   On the date that they came to my home, they had an

12   unlawful presence at my home.  They did not have a

13   search warrant for the individuals -- an arrest warrant,

14   excuse me, for the individuals that they were seeking.

15   They did not confirm the NCIC report.

16   As a matter of fact, the NCIC that I have

17   for Mr. Tyree Myers, to the bottom, states that there is

18   no NCIC warrant in the database.  Then Mr. Harris also

19   mentioned that I could of -- that the things that he

20   gave Mr. Walker is in its entirety.  It's not in it's

21   entirety because Ms. Ballard never filed a formal motion

22   for discovery.  And without her ever filing a formal

23   motion for discovery, there's no way she could ever put

24   in a motion to compel discovery in which she promised me

25   in numerous e-mails that she would put in a motion to

1   compel discovery.

2           Mr. Harris also mentioned that the Johnston

3   County Sheriff's Department saw a grow operation in my

4   laundry room.  But what he's failing to mention is that

5   when the U.S. Marshals came to my home, Mr. (Cognic,)

6   who's the head of the marshal's team, actually went to

7   the marshal's office and told them all this ridiculous

8   information, telling them that they had surveillance

9   down on my home.  However, Mr. Harris is saying that

10  there was no surveillance.  But yet in my affidavit, the

11  search warrant affidavit and also the affidavit of Det.

12  Allen Creech, they're saying that surveillance was done

13  on the home, but none of this has been produced in my

14  discovery.  What they did when they came to my home was

15  a violation of my Fourth Amendment right of unlawful

16  search and seizure.

17          THE COURT:  Well, those are all arguments

18  that are relevant and may be brought up at a later point

19  in time.

20          THE DEFENDANT:  Without my complete

21  discovery there's no way that I can properly defend

22  myself --

23          THE COURT:  I understand that.

24          THE DEFENDANT:  -- with a motions date of

25  January 3rd.

1    THE COURT:  And that's what Mr. Walker has

2    been advocating for this morning on your behalf and

3    that's what we have addressed with the DA's Office, with

4    Mr. Harris, and he is required to provide everything

5    that he has in his custody and control.  I've required

6    him to ascertain if there's anything else available from

7    the U.S. Marshal Service and from the Wake County

8    Sheriff's Office.  And I'm going to ask Mr. Harris to

9    prepare an order that reflects the Motion to Compel

10   rulings that I made today.  I am going to sign the

11   scheduling order and order that the matter be set on the

12   trial calendar for January 9.  Pretrial motions are to

13   be heard on January 3 and December 22 is the date for

14   all motions to be filed by.  You are free to go.

15          MR. WALKER:  We, of course, Your Honor,

16   reserve the right to make a motion for a continuance if

17   we don't have the discovery in time.

18          THE COURT:  Absolutely.

19          MR. HARRIS:  Your Honor, may I approach with

20   the Order of Reciprocal Discovery.  It tracks the

21   statute.

22          MR. WALKER:  As far as it tracks the

23   statute, I'm fine with it, Your Honor.

24          THE COURT:  All right.  Thank you.

25

## CERTIFICATE

STATE OF NORTH CAROLINA )
COUNTY OF JOHNSTON      )


        I, Tina McNair, the officer before whom the
foregoing proceeding was taken, do hereby certify that
said hearing is a true and verbatim transcript of said
proceeding.

        I further certify that I am neither counsel
for, related to, nor employed by any of the parties to
the action in which this proceeding was heard; and
further, that I am not a relative or employee of any
attorney or counsel employed by the parties thereto, and
am not financially or otherwise interested in the
outcome of this action.

        This the 19th day of December, 2011.


                        _____

                        Tina McNair
                        Official Court Reporter
                        Judicial Disrict 11B.
                        Smithfield, NC.
                        919.209.5512 - Work