FILED

APR 0 4 2014

JULIE A. RICHARDS, CLERK
US DISTRICT COURT, ECNC
DEP CLK

RECEIVED

2013 OCT 21 AM 9: 55

U.S. COURT OF APPEALS
FOURTH CIRCUIT

**INFORMAL BRIEF**

**CIVIL SUIT 5:12-CV-0714-D**

### PRELIMINARY STATEMENT

Plaintiff, Loushonda Myers is submitting this informal appeal brief on behalf of herself and her

minor children; C.M., A.M., and M.M.; collectively the Plaintiffs in this suit. This appeal is from the

United States District Court for the Eastern District of North Carolina, Western Division. The order is

dated August 16, 2013, and signed by Chief United States District Judge James C. Dever, III. On August

20, 2013, the Plaintiffs timely submitted their Notice of Appeal, which was subsequently filed with the

Clerk's Office on August 22, 2013.

### JURISDICTIONAL STATEMENT

Due to the nature of the complaint, the United States District Court for the Eastern District of

North Carolina (Western Division) sat as a Constitutional court, and not as a legislative court. For the

purposes of this complaint, filings, and all subsequent filings; the United States District Court and this

Court of Appeals are Article III judicial courts; vested with the judicial powers granted unto them by

Article III of the United States Constitution (also referred to as the Constitution and US Constitution

herein) under Common Law; with full respect, recognition, and guarantees of each of the Plaintiff's

Constitutionally protected and guaranteed Rights and/or Privileges.

If the order of Judge Dever is being treated as interlocutory, the Plaintiffs assert that this

appeal involves substantive, substantial, and/or controlling questions of law; there is substantive,

material, and/or fundamental grounds for difference of opinion; and immediate appeal is proper,

necessary, and in the best interest of justice (28 USC § 1292 - Interlocutory decisions). However, the

Plaintiffs assert that they are appealing as a substantive right of law under the United States Constitution,

Article III, IV, VI, and Amendments I, IV, V, VI, VII, VIII, IV, and X; N.C.G.S. § 4-1-Common Law; and

Rule 2, FRAP) The issues presented are collateral to the merits of this case; not reviewable if the matter

1

is not addressed immediately; and the outcome of the civil suit will be conclusively determined by the issues. Thus, the immediate appeal of this order is just and proper; and it will effectively aid in the speedy disposition of the suit. And, jurisdiction is proper under the US Constitution; 28 U.S.C. §1331; 28 USC § 1292; and 28 USC § 1332. The issues are presented below.

## ISSUES

### PLAINTIFFS DID IN FACT STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

On and around October 12, 2010, agents; officers; and/or employees of the Johnston County Sheriff's Office (here after referred to as JCSO) and its STAR Team ["The S.T.A.R. Team consists of selected deputy sheriffs, including a Team Commander, Assistant Commander, and numerous tactical operators and snipers. These officers are highly trained and equipped for tactical and high-risk situations for the protection of our communities."- (JCSO Website)], along with the United States Marshals (herein refers to both North Carolina and South Carolina Marshals) did in fact unlawfully take away, hinder, restrict, obstruct, and/or abrogate the Plaintiffs' unalienable, substantive, and fundamental God-given Rights and Privileges. These substantive rights and privileges are guaranteed and protected by the United States Constitution, as well as the Constitution of the State of North Carolina and Federal Laws.

On or about October 8, 2010 thru October 12, 2010, the US Marshals trespassed and encroached upon the Plaintiffs' property disguised as tow truck operators and/or with tow truck operators allegedly looking for a vehicle. In one incident, startling the Plaintiffs, the men came at night shining flashlights through the Plaintiffs' windows and looking inside their home. Moments later, they pounded on the door. Ms. Myers answered the door, and asked the men what they wanted. The men stated that they were looking for the owner of a vehicle. Ms. Myers was shown a picture of a female and asked if she knew the woman. She responded that she did not know the woman. They then asked to look in her garage for a vehicle. Ms. Myers told the men no. In separate incident, the US Marshals, again, came upon the

2

Plaintiff's property while they were away from home. When she returned to the home, the repairman

working on the AC unit stated that some tow men were at her home interrogating him. The repairman

stated that they were interrogating him about a silver car. During none of these incidents did any of the

Plaintiffs give permission for the US Marshals to be present on their property and/or search their

property; nor did the US Marshals present lawful orders and/or documents granting them permission to

be present and/or search the Plaintiffs' property. (4th Amendment to US Constitution)

     Both the US Marshals and the JCSO unlawfully seized, arrested, and/or kidnapped the Plaintiff,

Loushonda Myers, when they obstructed, prevented, and/or restricted her from having access to her home

on the morning of October 12, 2010. In a display of authority, under the color of law, the US Marshals

abruptly and recklessly pulled their vehicle in front of Ms. Myers's vehicle while forcibly telling Ms.

Myers that she could not have access to the property or the home. At this moment the US Marshals did in

fact unlawfully trespass upon the Plaintiffs' property; seize their home and property; deprive the

Plaintiffs' of their substantive rights to their property and home; and held the Plaintiffs' property and

home hostage. Neither the US Marshals nor the JCSO showed nor presented Ms. Myers a valid warrant

and/or legal documentation that supported their actions. Agents of the JCSO witnessed, assisted, and/or

collaborated in this incident and also spoke with Ms. Myers. The JCSO and its agents, officers, and/or

employees aided, assisted, and/or participated in a conspiracy to deprive Ms. Myers of her substantive

rights when they (a) failed to follow proper procedures and seized, kidnapped, and/or deprived the

Plaintiffs of their home and property without lawful process; (b) failed to uphold the substantive rights of

Ms. Myers and the minor children as required by their oaths to refrain from unlawful searches and

seizures; refrain from depriving Citizens of their substantive Constitutionally protected Rights and/or

Privileges; carry out their duty and obligation to protect serve, and/or uphold the substantive

Constitutionally protected Rights and/or Privileges of Citizens; and refrain from arbitrarily intruding into

3

the private, protected lives of Citizens; (c) failed to verify, obtain, and/or present valid arrest warrants for

Dameon Myers and Tyre Myers; and (d) failed to verify the NCIC system and the many other numerous

systems that are available for law enforcement officers to verify, check, and/or confirm information in

order to properly carry out their duties and obligations to the Citizens in a lawful manner. Whether done

knowingly or unknowingly; willingly or unwillingly, the JCSO should have known as trained officers,

agents, and/or employees of Johnston County, its Sheriff's Office, and the State of North Carolina that

they were in fact in violation of the Plaintiffs' substantive Rights and/or Privileges. Ignorance of the law

is no excuse for law enforcement officers, agents, and/or employees to violate substantive rights and/or

privileges. Johnston County, its Sheriff Office, and its agents actions and/or omissions were done

collectively in an effort to further the goals of "law enforcement sources" in South Carolina. There was a

meeting of the minds as soon as the US Marshals, Captain Fish, Kritch Allen, and the other officers,

agents, and/or employees of the JCSO willfully and knowingly deprived Ms. Myers and her children of

their home and property; failed to provide Ms. Myers with a valid arrest warrant for Tyre Myers or

Dameon Myers; and when Ms. Myers and her children were forcibly kidnapped and restricted, hindered,

obstructed, and/or prevented from accessing their home and property without lawful procedures and/or

process. There is no excuse for failure to abide by the law when you have taken an oath to uphold the law

and the United States Constitution as the US Marshals and the officers/agents of the JCSO have done.

Based solely on fabricated, tainted, deceptive and/or misleading information, Detective Kritch

Allen applied for the first defective search warrant. This search warrant was issued for Tyre and Dameon

Myers. Kritch Allen completed an alleged "affidavit", which contained no set of facts. Detective Allen's

entire affidavit contained fabricated, deceptive, tainted and /or misleading information, and it contained

hearsay, at times triple hearsay from the US Marshals (who had already broken the law and became

trespassers of the law) and "sources in South Carolina". Kritch Allen did not see Tyre nor Dameon Myers

4

at the Plaintiffs' residence; Kritch Allen did not have personal knowledge of any crime committed, being committed, nor about to be committed; Kritch Allen did not possess a valid arrest warrant; Kritch Allen did not verify the NCIC nor any other law enforcement database to verify the fabricated and/or fraudulent information provided to him; and Kritch Allen committed fraud upon the court and facilitated an ongoing criminal and civil conspiracy when he knowingly, willingly, and/or willfully used fabricated, tainted, deceptive, and/or misleading information and hearsay in an affidavit and produced it to a magistrate and/ or judge as fact. Detective Allen knows or should have known that an affidavit must contain facts. As ultimately proven, Detective Allen's affidavit contained no facts, only deceptive, deceitful, and/or crafty manipulations of words. Magistrate Keith Underwood signed the first defective, unlawful, and/or tainted search warrant.

Then, as if once was not enough, after executing the first fraudulently obtained search warrant; Kritch Allen applied for a second defective search warrant knowingly and/or willfully using the same fraudulent, deceptive, and/or fabricated information from the first unlawful search warrant. Detective Allen had full knowledge and/or awareness that the information in the first search warrant was false, malicious, fabricated, and/or tainted; yet, he used it for the issuance of the second search warrant and again, knowingly and/or willfully committed fraud upon the court, malicious prosecution, and/or misprison of treason. Detective Allen knew or should have known that the information for the second search warrant was false, tainted, fabricated, and/or misleading. In fact Detective Allen did know this, and chose to seek out a different magistrate to perpetrate the fraud; as well as intentionally, maliciously, willingly, knowingly, and/or willfully failed to inform the Magistrate that the first search warrant yielded no bodies. Magistrate Walter Stanley signed the second defective, unlawful, and/or tainted search warrant.

Keep in mind, the first search warrant listed Tyre and Dameon Myers as the individuals that the

5

US Marshals and the JCSO were searching for. It also stated that an **"unknown black male resembling known photos of Tyree Myers was seen on the back porch of the residence"**; yet, the search warrant issued named both Tyre Myers and Dameon Myers. Not to mention, Detective Allen stated in his alleged sworn affidavit, **"surveillance was maintained on the residence and no one was seen entering or leaving the residence."** However, neither Tyre Myers nor Dameon Myers was inside the home. Again, these actions violated the substantive rights of the Plaintiffs, including but not limited to; being free from unlawful search and seizure; being free from kidnapping; being free from being held as hostages; being free from human trafficking; being free from false imprisonment; and being free from malicious prosecution. (Trezevant v. City of Tampa, 741 F.2d 336 (11th Cir. 1984)) Additionally, the Plaintiffs' possess substantive rights to liberty; rights to enjoy their home and property; rights to be free from government intrusion; and rights to be secure and safe in their property (tangible and intangible) and home. Moreover, Kritch Allen and the JCSO's STAR Team; a team of heavily armed, military style, ballistically trained, platoon of tactical snipers and special operations agents, were called in to execute a search warrant. Yet, none of these agencies, the US Marshals or the JCSO, produced a NCIC report showing why such a **deadly team of special operations agents** were needed to execute a search warrant of the Plaintiffs' home and property.

Magistrates Keith Underwood and Walter Stanley failed in their duties to uphold the US Constitution and the laws of North Carolina when they failed to follow proper procedures and laws. Both Magistrates failed to question Kritch Allen concerning his personal knowledge and his first hand knowledge of the incident. Underwood and Stanley failed to secure reliable, untainted, and/or factual evidence prior to the issuance of a search warrant. Both Magistrates failed to exercise due diligence, care, and safeguards for the Plaintiffs' substantive rights when they failed to question any of the US Marshal agents, officers, and/or employees that were available and able to be questioned. Underwood and Stanley

6

failed to inquire as to why US Marshal agent Bryan Konig did not obtain a warrant from a federal judge;

they failed to inquire as to why agent Bryan Konig did not appear before him and present himself to

obtain the warrant; and they failed in the proper review of Kritch Allen's affidavit due to the fact that

Kritch Allen stated in his affidavit that "Deputy United States Marshal Bryan Konig came to the Johnston

County Sheriff's Office on October 12, 2010, and met with Detective Kritch Allen and provided the

above information to Detective Allen." An affidavit must contain facts, and one must exercise the upmost

care and caution before trespassing, depriving, and/or obstructing a Citizen's substantive Rights and/or

Privileges.

　　　　After the search and seizure at the Plaintiffs' home, Ms. Myers was seized and placed

under arrest. Officer Billis/Gillis placed Ms. Myers under unlawful arrest. Officer Billis/Gillis failed to

inform Ms. Myers of what she was being accused. Ms. Myers asked Officer Billis/Gillis why she was

being arrested, and he responded by telling her she knows why. This is a willful and/or knowing failure to

disclose to the accused the accusations against them, and thereby a substantive violation of due process.

(State v. Ladd, 308 N.C. 272, 302 S.E.2d 164 (1983)) Captain Fish drove Ms. Myers's vehicle with her

children inside, kidnapping the children and taking them hostage, back to the home. Ms. Myers was

forced into Officer Billis's/Gillis's patrol car and driven back to the home. Ms. Myers and her minor

children were in fact unlawfully arrested, kidnapped, and/or held hostage; and they were the victims of

assault and battery. (State v. Robinson, 145 Me. 77, 72 Atl. 260) Back at the home, Ms. Myers witnessed

US Marshal Bryan Konig, going through her cell phone, which was not the subject of any lawful search

warrant; and later discovered that both the US Marshals and JCSO searched her son's cell phone which

was in his possession, and also not the subject of any lawful search warrant. (4th Amendment, US

Constitution) This illegal search and detention was done in the presence of the JCSO officers, and they

failed to report the unlawful search and seizure of Ms. Myers's property and the property of the minor

7

child. Both the US Marshals and the JCSO knew or should have known that they were conducting an illegal search and seizure of Ms. Myers, her minor child and/or their property.

In further violation of substantive law and procedures, the US Marshals, who initially searched and seized Ms. Myers's cell phone, turned over her phone to JCSO. Ms. Myers's phone contained video evidence and proofs of substantive Constitutional violations. During Ms. Myers's criminal proceedings and after the dismissal of her charges, Ms, Myers was constantly denied, hindered, and/or obstructed from obtaining the substantial evidence inside of her phone. (Brady v. Maryland, 373 U.S. 83 (1963); Kyles v. Whitley, 514 U.S. 419 (1995)) Ultimately, Judge Thomas Kincaid denied Ms. Myers's motion for the return of her property, including the cell phone. A subsequent motion for reconsideration was then denied by Johnston County resident judge, Judge Lock. The Plaintiffs will later expound on these incidents.

Under color of law, office, and/or title, Magistrate Hale issued a $400,000 bond for Loushonda Myers. Magistrate Hale knew or should have known that she lacked personal, subject matter, and/or territorial jurisdiction. Additionally, Magistrate Hale considered statements of two JCSO that were not on the record in consideration of the excessive bail amount that was ordered. (8th Amendment, US Constitution) Detective Kritch Allen and an unknown JCSO stated that Ms. Myers was involved in a drug ring that included Georgia, Arizona, and California in front of Magistrate Hale; and immediately before bond was set. Thereby, hearsay, assumptions, and/or false tainted, misleading, and/or fabricated information; not facts, was used against Ms. Myers. Magistrate Hale did in fact deprive Loushonda Myers of her substantive rights and/or privileges, including but not limited to due process; fundamental rights to her children; life; liberty; property; and freedom from government intrusion. These violations occurred when Magistrate Hale ordered Loushonda Myers to be jailed and deprived of her freedom, property, and/or life prior to a finding of jurisdiction, guilt, and/or trial by jury in the proper court. (4th

8

Amendment, US Constitution)

Likewise, Magistrate Stanley, under color of law, office, and/or title, issued a $1000 bond for

Loushonda Myers. Magistrate Stanley knew or should have known that he lacked he lacked personal,

territorial, and/or subject matter jurisdiction. The foregoing applies to Magistrates Hale and Underwood.

Magistrates Stanley, Hale, and Underwood did in fact deprive Loushonda Myers of her substantive rights

and/or privileges, including but not limited to due process; fundamental rights to her children; life;

liberty; property; freedom from government intrusion; privacy; and/or deprivation of Constitutional and

Civil Rights. Furthermore, Loushonda Myers was imprisoned for two weeks and deprived of her

freedom, property, and/or life prior to a finding of jurisdiction, guilt, and/or trial by jury in the proper

court. (4th Amendment, US Constitution)

Throughout these events and/or incidents the minor children are at all times relevant due

to the fact that the above acts and/or omission also deprived them of their God-given, substantive,

fundamental, and/or unalienable rights and/or privileges to their property; their mother; their freedom;

their life; and their safety, security, and freedom to be free from government intrusion.

The following officers, agents, and/or employees of the JCSO were also present and willfully,

knowingly, willingly, and/or negligently aided, participated, collaborated, and/or conspired with the US

Marshals on October 12, 2010 in the unlawful search and seizure of the Plaintiffs' home and property;

and the deprivation of Ms. Myers and her children's substantive rights: Fish, Allen, Pate, Creech, Canady,

Case, Daughtry, Stewart, Johnson, Billis/Gillis, and unknown officers/agents of the Johnston County

Sheriff's Office. These officers did in fact know and/or should have known that they were in fact aiding,

conspiring, perverting the course of justice, and/or participating in substantive Unalienable and

Constitutional Rights and/or Privileges violations. The Plaintiffs' claims cannot be dismissed. (Conley v.

Gibson, 355 U.S. 41, 45-46 (1957); Neitzke v. Williams, 109 S. Ct.1827, 1832 (1989))

9

### Detective Kritch Allen & JCSO and Agents/Officers

1) In Detective Allen's "affidavit" for the first search warrant (Record- Mem. Opp. State Ex. A1 thru A3) he states, "Information was received from law enforcement sources in South Carolina indicating that Tyree Myers and Dameon Myers were at the residence ... as of Friday, October 8, 2010 and continuing to today, October 12, 2010." **However, the information that the JCSO received was never turned over in discovery. Ms. Myers never received an arrest warrant for either Tyre nor Dameon Myers; she never received the source of the information indicating that Tyre and Dameon Myers were at her home; she never received the NCIC report for Dameon Myers; and she never received any additional discovery that she demanded.** In fact, Adren Harris stated under oath and to the court as well as Ms. Myers that he spoke to Captain Fish, and Captain Fish told him that the only thing they have is what is in the police report and search warrant. **Yet, Captain Fish stated in his statement that "[the US Marshals] had a warrant", and that "the US Marshall's were going to go into her house".** (Record- Mem. Opp. State Ex. C-1, Para. 4) Most shockingly, the JCSO never obtained and/or verified the NCIC report for Dameon nor Tyre Myers. **Tyre Myers's NCIC report was not pulled until October 13, 2010 (Record- Mem. Opp. State Ex. D), and Dameon Myers's NCIC report was allegedly never pulled by the JCSO; Kritch Allen; Magistrate Stanley, Underwood, or Hale; Adren Harris; and/or any trained, skilled, experienced, and/or learned officers of the law and/or court.** (Record- Mem. Opp. State Ex. H-10 Lines 4 thru H-11 Line 12)

2) Kritch Allen went on to state, "an unknown black male resembling known photos of Tyree Myers was seen on the back porch of the residence". **Kritch Allen did not see this unknown black male; Ms. Myers was never presented with the "known photos"; and the alleged unknown male was never properly identified as being Tyre Myers,** it was only speculated and assumed that the alleged unknown male was Tyre Myers.

3) Allen stated, "[a] traffic stop was conducted outside the sight of the residence and the female operator was identified as Loushonda Roshelle Myers." First and foremost the U.S. Marshals did not have lawful jurisdiction to conduct a traffic stop of Loushonda Myers. ( Id., at 45; Id., at 41; 3 Wheat., at 350, 351.; U.S. v. Bevans, 16 U.S. 336 (1818), reaff. 19 U.S.C.A., section 1401(h); Downes v. Bidwell, 182 U.S. 244 (1901)) The US Marshals are agents of the United States government and, Loushonda Myers was in fact not on federal territory, a federal zone, and/or federal property. Therefore, the US Marshals were in fact without jurisdiction; deprived of any and all power under their supposed authority; and in fact operating outside the scope of the law. "The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any area within the exterior boundaries of a State," Id., at 46. The US Marshals did in fact conduct an illegal seizure, arrest, and/or search of Ms. Myers and her vehicle. Officers may only stop someone if they have reasonable suspicion that the person committed, is committing, or is about to commit a crime. (United States v. Cortez, 449 U.S. 411, 101 S. Ct. 690, 66 L.Ed. 2d 621 (1981); United States v. Hensley, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985); Delaware v. Prouse, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); Brown v. Texas, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979)) In this case, the US Marshals (a) were without personal, territorial, and/or subject matter jurisdiction; (b) did not know who the driver of the vehicle was; (c) did not have reasonable suspicion that a crime was committed, was being committed, or that the unknown person driving the vehicle was about to commit a crime; (d) were without probable cause (probable cause must be determined form facts known at the time and not from the results of the later search, seizure, and/ or arrest of a natural being- (Smith v. Ohio, 494 U.S. 541, 110 S. Ct. 1288, 108 L. Ed. 2d 464 (1990)); (e) the US Marshals do not have jurisdiction over minor traffic offenses; and (f) **Loushonda Myers in fact did not commit a traffic offense.**

4) Kritch Allen admitted that Ms. Myers was in fact unlawfully interrogated by the US Marshals when he

stated, "Ms. Myers was questioned about the identity of the male inside the residence and Ms. Myers stated that no one else was inside the house."

5) Allen did in fact admit that the US Marshals were uncertain if anyone was inside the Plaintiffs' home due to the fact that the US Marshals asked for permission to search the Plaintiffs' residence and was denied. (**"permission to walk through the residence was requested...Permission was denied..."- Detective Allen's search warrant affidavit**)

6) Detective Allen stated, "During this traffic stop and questioning surveillance was maintained on the residence and no one was seen entering or leaving the residence. .... an unknown black male was seen opening the blinds in the residence and looking out at surveillance officers. When Ms. Myers returned to the residence, officer denied her entry to the residence and, upon approach, distinctly heard the sound of a door locking on the side garage door." **Yet, during the illegal search and seizure, which began on or around 7:00 a.m. and lasted all day and into the evening; no one was found inside the home and no trap doors were found in the home either.** These agents and officers stated that they **"distinctly heard the sound of a door locking".** Yet again, **no one was found inside the home. During their illegal search and seizure, their facts were proven to be untrue.** The same agencies and/or agents (US Marshals and JCSO, agents and/or officers) that stated they seen and/or heard facts, proved that their own facts were not seen and/or heard; and was in fact false, fabricated, tainted, unreliable, and/or and misleading. Clearly, the statements of the US Marshals and the JCSO (including Kritch Allen) were contrary to the truth, fraudulent, false, fabricated, evidence of a conspiracy, a profound perversion of justice, and/or misleading.

7) Kritch Allen admitted that the Plaintiffs' were in fact unlawfully deprived of their substantive rights to their property when he stated, "[when] Ms. Myers returned to the residence, officer denied her entry to the residence." (4th Amendment, US Constitution)

12

8) Detective Allen and the JCSO knew or should have known that in order to enter into a third party's residence to search for someone that in fact does not live there, certain requirements must be met (4th Amendment, US Constitution; Perez v. Simmons, 884 F. 2d 1136 (9th Circuit 1989); State v. Hewson, 88 N.C. App. 128, 362 S.E.2d 574 (1987)):

a) The US Marshals and the JCSO must have a copy of the arrest warrant. Neither agencies nor their respective agents/officers possessed and/or ever presented a valid arrest warrant;

b) The US Marshals and the JCSO and their officers and agents must be authorized to arrest the individual and/or individuals they were allegedly seeking. As stated in Item number 3 above, the US Marshals did not have this authority, and the JCSO and its officers also did not possess this authority due to jurisdictional want (third party home, federal agents, interstate commerce, and/or no facts to rely on);

c) The US Marshals and the JCSO and their officers and agents must possess lawful, valid search warrants. As shown in the prior items and paragraphs; lawful, valid search warrants did not exist; and/or were fraudulent, falsified, tainted, and/or misleading. Like stated in a and b, they did not have a lawful presence.

**d) The US Marshals and the JCSO and their officers and agents must have lawful reasonable grounds to believe that the people they are seeking are located within the residence. The alleged reasonable grounds were two bodies. No bodies were inside the home, everything was based off of this. Thus, everything that was based on the alleged bodies is in fact fraud. As stated in a, b, and c, the US Marshals and JCSO lacked lawful presence at the Plaintiffs' home.**

9) Detective Kritch Allen did in fact apply for and was unlawfully granted a general search warrant. In Detective Allen's second search warrant affidavit, Paragraphs 5 and 6, Detective Allen did in fact fail to

13

use facts relevant, pertaining to, and/or involving Ms. Myers. Detective Allen did in fact fail to specifically set forth what he was in fact searching for. (4th Amendment, US Constitution; State v. Connard, 81 N.C. App. 327, 344 S.E.2d 568 (1986) aff'd, 319 N.C. 392, 354 S.E.2d 238 (1987); Mapp v. Ohio, 367 U.S. 643 (1961); Katz v. United States, 389 U.S. 347 (1967); Weeks v. United States, 232 U.S. 383 (1914)) In fact, the US Marshals and the JCSO and their respective agents/officers seized receipts from purchases and opened new, sealed items that were still in the manufacturer's packaging. Detective Allen stated that stolen goods may be located inside the Plaintiffs' home, yet Detective Allen did in fact fail to provide a scintilla of facts and/or evidence to support his elaborate claims to have a reasonable belief that the Plaintiffs' possessed stolen property in their home. In addition Detective Allen stated, "it is common practice for drug traffickers" in the affidavit for the second search warrant; **yet Ms. Myers has not been, nor never was and/or has been identified as a drug trafficker, except by the aforementioned agencies, agents and/or officers, and their facts have been proven beyond a doubt to be false, fabricated, tainted, and/or misleading.** Despite this fact, Detective Allen, the JCSO, Johnston County, and/or the STATE/state of North Carolina labeled Ms. Myers; slandered her name; and did not provide one piece of credible, reliable, and/or factual evidence and/or proof. Kritch Allen's statements were in fact contradictory, conclusory, and without factual basis. (Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723(1964)). **Just like in a, b, c, and d, they failed to produce a body; failed to produce an arrest warrant; failed to produce a valid NCIC report; and failed to produce fact, proof, and/or evidence to support their theory and/or story.**

10) Four agencies were present at the Plaintiffs' home. **ONE OF THEM, should have had the sense, morals, and/or training to stop the substantive violations being done to the Plaintiffs. Being that none of them did, they all violated. All of these agencies made the same flaws, and/or have the same procedural flaws.**

14

### Magistrates/Judges, State of North Carolina, Johnston County

Magistrate Stanley and Underwood did in fact sign and issue search warrants that were based upon fraud, false, and/or tainted information. As stated before, their actions did in fact violate the Plaintiffs' God given, Constitutional, and/or Civil Rights and/or Privileges. Their official title of judges does not relieve them from the responsibility and duty to impartially examine the evidence and proofs before them, as well as the person requesting the search warrant. Magistrate Stanley and Magistrate Underwood knew or should have known that the US Marshals and the JCSO lacked jurisdiction (personal, subject matter, and/or territorial) and that the US Marshals are employees of the federal government and therefore may only exercise jurisdiction on federal zones and territories. The soil of a state is not federal territory and/or a federal zone. (Id., at 45; Id., at 41; 3 Wheat., at 350, 351.; U.S. v. Bevans, 16 U.S. 336 (1818), reaff. 19 U.S.C.A., section 1401(h); Downes v. Bidwell, 182 U.S. 244 (1901)) Furthermore, Magistrates Stanley and Underwood knew or should have known from reading and/ or examining Detective Allen's affidavit that the affidavit was comprised totally of hearsay, conclusions, and/or Detective Allen's alleged experience on other cases. None of these things are factual information, proofs, and/or evidence as it pertains to Ms. Myers, her children, and their property; and the inclusion of these things in an alleged affidavit does not make it a lawful affidavit that can invoke the lawful jurisdiction of a de jure court.

Magistrate Hale did in fact deprive Loushonda Myers of her right to be free from the deprivation of life, liberty, or property, without due process of law. Ms. Myers was arrested, seized, and forced to enter into business (pay bail) for her liberty, after being deprived of her freedom, liberty, and substantive Rights for two weeks. Ms. Myers suffered substantially in jail for two weeks, a substantive deprivation of her substantive Right not to be deprived of her freedom and liberty without being found guilty. (4th and 5th Amendment, US Constitution) Ms. Myers was simply accused of a crime, and that was enough for

15

Magistrates Stanley, Hale, and Underwood to deprive her of her Unalienable and Constitutional Rights. This is in fact a perversion of justice. To add insult to injury, the criminal charges were dismissed only after substantive, substantial injuries and damages had befallen upon the Plaintiffs for over a year. Ms. Myers was in fact falsely imprisoned, maliciously prosecuted, and/or kidnapped by employees of Johnston County and the State of North Carolina. Therefore, 42 U.S.C. § 1983 and 1985 are applicable and relevant due to the fact that the actions and/or omissions of the above Defendants were in excess of their authority; without authority; and/or without jurisdiction. Jurisdiction must appear on the record of all court proceedings. And, the State of North Carolina is at all times material and relevant due to the fact that the aforementioned actions and/or omissions are in fact standard practice for Johnston County, JCSO, and the State of North Carolina. It is a fact that (a) the State of North Carolina is always the Plaintiff in criminal actions; (b) Defendants are taken to jail and deprived of their freedom and liberty prior to being found guilty; (c) Defendants are forced to pay money to the courts and/or agents/officers of the courts to regain their freedom; (d) in fact the common practice of the criminal courts in North Carolina are in fact "guilty until proven innocent", creating a bill of attainder in which Loushonda Myers was in fact incarcerated, held, and/or kidnapped without being found guilty of any criminal charges; and (e) the State of North Carolina was in fact placed on Notice of the substantive Constitutional Rights and/or Privileges violations by Loushonda Myers. (Record-Mot. Opp. State, Ex. U-1 thru U-2) Ms. Myers's release not depended upon her word, but dependent upon her ability to pay federal reserve notes for her release. (In re De Giacomo, (1874) 12 Blatchf. (U.S.) 391, 7 Fed. Cas No. 3,747, citing Cummings v. Missouri, (1866) 4 Wall. (U.S.) 323) These actions and/or omissions are in fact against the Unalienable Rights of Citizens and contrary to the US Constitution.

Magistrates Hale, Underwood, and Stanley did in fact have a duty and responsibility to Loushonda Myers to ensure that justice is preserved and administered properly and without regard to

16

class, status, and/or bias. The foregoing Defendants did in fact use their office, title, and/or authority

under color of law to deprive Loushonda Myers of her substantive Rights secured by the Constitution,

and did in fact commit treason. (US v Will, 449 US 200,216, 101 S Ct, 471, 66 LEd2nd 392, 406 (1980)

Cohens V Virginia, 19 US (6 Wheat) 264, 404, 5LEd 257 (1821)) Magistrates Stanley, Hale, and/or

Underwood know or should have known that as a Citizen, Ms. Myers is not bound by statutory law, but

by God's law; and any attempt, act, and/or omission that deprives her of her Rights are in fact treasonous.

(Cruden vs. Neale, 2 N.C. 338 2 S.E. 70; Hale v. Henkel, 201 U.S. 43 at 89 (1906))

Judge Paul Gessner did in fact fail to act on November 8, 2011 when Ms. Myers, a belligerent

claimant, did in fact state on the record that her Unalienable and Constitutional Rights were in fact

violated, and continuing to be violated. (United States v. Johnson, 76 F. Supp. 538 - Dist. Court, MD

Pennsylvania 1947) Paul Gessner did in fact violate his oath of office; failed to take action; and further

facilitated an ongoing conspiracy to deprive Ms. Myers of her substantive Right to due process. Paul

Gessner was made aware of the substantive Constitutional and/or Civil Rights violations and failed to act

(Record- Mot. Opp. State, Ex. H-Transcript), thus warring against the US Constitution, and breaking his

oath of office. (Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958)) Additionally, Paul Gessner was in fact

"leading" Adren Harris on November 8, 2011 in his answers to the court. (Record- Mot. Opp. State Ex.

H-11, Lines 2 thru 6) And, Judge Paul Gessner repeatedly left off the topic of discussion without

resolving the issues at hand, and he repeatedly gave the STATE and Adren Harris excuses and/or favor.

(Record- Mot. Opp. State, Ex. H-12  and 13) Paul Gessner knew or should have known that the JCSO

should have possessed a copy of the arrest warrants, yet he handed them an excuse. (Record- Lines 5 thru

14 of Exhibit H-13; Ex. H-14- Lines 19 thru 24) Moreover, Judge Gessner never resolved the issue

regarding the illegal cell phone tracking. He simply went to another issue. Judge Gessner knew or should

have known that Adren Harris had in fact committed fraud upon the court due to the contradictory

17

statements that Mr. Harris made in court did not match the records of the court in which he, Judge

Gessner, possessed and reviewed; and he knew or should have known Mr. Harris admitted false, tainted,

and/or misleading evidence to the court.

On September 3, 2012, Judge Timothy Kincaid did in fact knowingly, willingly, and/or willfully

deprive Ms. Myers and her children of their substantive Rights to their property when he denied Ms.

Myers's motion for the return of her property, despite the fact that Ms. Myers's criminal charges had been

dismissed due to **no probable cause for arrest**; despite the fact that the Plaintiff was not given

reasonable notice of the hearing; and despite the Plaintiff not being given reasonable time to prepare

financially for a four hour drive to fight for property that should have never been seized to begin with.

(Record-Mot. Opp. State Ex. J-1 thru 5) After Ms. Myers's criminal charges were dismissed in her favor,

the Plaintiffs' property should have been returned without prompting, question, and emphatically without

doubt. It is not the responsibility of the Plaintiffs to right the wrongs of the State of North Carolina and its

agents. It is their responsibility and duty to correct their wrongs without prompting, court intervention,

and/or being asked. It is in fact part of their duty under their oaths of office and allegiance to the US

Constitution to be accountable for their actions and/or omissions.

Judge Thomas Lock did in fact fail under his oath of office and duty to the court and Ms. Myers

as well. Ms Myers did in fact notify Judge Thomas Lock of substantive due process violations on

December 13, 2011 after not receiving any additional discovery from Adren Harris as the court ordered

him to provide, and after having several unsuccessful conversations with her court appointed attorney,

Steven Walker. Thomas Lock failed to act and failed to investigate and/or reprimand Adren Harris or

Steven Walker for their conduct. Later, on June 26, 2012, after unsuccessful attempts of reaching Adren

Harris, Ms. Myers sent Judge Lock another letter. In this letter Ms. Myers explicitly stated that she

needed her property, and that she feared substantive evidence within her Blackberry phone would be

18

tampered with, lost, and/or destroyed. (Record-Motion Opp. State Ex. W-1 thru 2; L, M, N) Likewise, Thomas Lock failed to act as required by his oath of office, and he failed to secure the safe return of the Plaintiffs' property after being duly put on notice.

Then on January 31, 2013, Judge Lock denied Ms. Myers's motion for reconsideration in the matter of the Plaintiffs property (Judge Kincaid denied the initial motion). Judge Lock stated, "This court also notes that the district court of Johnston County, on even date herewith, has entered an order granting defendant's motion to expunge these files. Accordingly, defendant hereby is advised that this court will be unable to and will not entertain or consider any further motions or other filings by defendant in that the files in this case will be destroyed and will not exist." (Record- Mot. Opp. State Ex. LL-1) This being after Loushonda Myers's criminal charges were dismissed and after the foregoing judges knew or should have know that the search and seizure was in fact illegal. **How is it that Ms. Myers forfeited her property when it was illegally seized and taken?** These actions and/or omissions deprived, limited, and/or restricted the Plaintiffs of their substantive Rights to their property, while alluding to the fact that now Ms. Myers can exercise another equally important and substantive Right to earn a living for her family through employment. In deed, Judge Lock cannot deprive the Plaintiffs of a substantive Right and claim it is proper or justified so that they can exercise another substantive Right. "To take away all remedy for the enforcement of a right is to take away the right itself .... that is not within the power of the State." (Poindexter v. Greenhow, 114 U.S. 270, 303 (1885)) In fact any denial, deprivation, and/or hinderance of a substantive right in in fact violative of the US Constitution and Lock's oath of office. Judge Lock did in fact commit treason when he deprived the Plaintiffs of their substantive Rights and/or Privileges. It is the duty of all those that have taken an oath to uphold the US Constitution and the laws thereof to act without moral turpitude at all times. It is their duty and obligation to be a defender of Rights, a hero to uprightness, and a shield from depravity, and/or a gatekeeper to justice. "When a judge

19

acts where he or she does not have jurisdiction to act, the judge is engaged in an act or acts of treason." (US v. Will  449 US 200,216, 101 S Ct, 471, 66 LEd 2nd 392, 406 (1980); Cohens v. Virginia, 19 US (6 Wheat) 264, 404, 5LEd 257 (1821))

### Adren Harris and Susan Doyle

Adren Harris, the district attorney appointed to Ms. Myers's case, failed to verify and oversee Detective Allen's affidavit. Adren Harris willfully, knowingly, and/or willingly violated Ms. Myers's, substantive due process rights when he knowingly, willfully, and/or willingly failed to turn over substantive discovery materials and introduced false, fabricated, and/or tainted information, materials, and/or proofs to the Superior Court of Johnston County against Ms. Myers. (Brady v. Maryland, 373 U.S. 83 (1963); Kyles v. Whitley, 514 U.S. 419 (1995)) "The prosecutor is not a witness; and he should not be permitted to add to the record either by subtle or gross improprieties. Those who have experienced the full thrust of the power of government when leveled against them know that the only protection the citizen has is in the requirement for a fair trial." (Donnelly v. Dechristoforo, 416 U.S. 637 (1974)) Adren Harris willfully, knowingly, and/or willingly committed perjury when he stated under oath in Superior Court to Judge Paul Gessner that a NCIC report was used as the basis for probable cause in the issuance of the search warrants. Mr. Harris knew and/or should have known that the NCIC report was not pulled until October 13, 2010, the day after Ms. Myers was unlawfully detained, seized, searched, and arrested; and her children kidnapped. (Record- Mem. Opp. State Ex. D and Ex. H-10 & H-11; Lines 12-15) Adren Harris willfully, knowingly, and/or willingly withheld material evidence in the criminal case against Loushonda Myers, and Mr. Harris willfully refused to produce, obtain, and/or diligently seek out material documentation, evidence, proofs, and/or information. (Record- Mem. Opp. State Ex. G-6; H-7, Lines 12-14) (Brady v. Maryland, 373 U.S. 83 (1963); Kyles v. Whitley, 514 U.S. 419 (1995)) These substantive materials was and/or is vital to the Ms. Myers proving her innocence and/or regaining her

20

illegally seized property. Adren Harris knowingly, willfully and/or willingly committed perjury and/or

fraud upon the court when he knowingly, willfully, and/or willingly introduced fabricated, false, and/or

misleading testimony, documents, and/or proofs to the Superior Court of Johnston County. (U.S. v

Holzer, 816 F.2d. 304, 307; U.S. v. Tweel, 550 F. 2d. 297, 299, 300 (1977); Morrison v. Coddington, 662

P. 2d. 155, 135 Ariz. 480(1983)) "Fraud destroys the validity of everything into which it enters." (Nudd v.

Burrows, 91 U.S 426) Harris knowingly, willfully, and/or willingly failed to provide the NCIC report for

Dameon Myers knowing that he has direct access to this database. Even after being ordered by the court

on November 8, 2011, Adren Harris still failed to comply with the court and turn over additional

substantive discovery materials- denying Ms. Myers due process, exculpatory evidence, and the Right to

confront her accuser. Moreover, Adren Harris prepared the order for Judge Gessner and in this order he

admitted that he had failed to provide discovery when he stated the following: "The Sate has agreed to

provide discovery that it is obligated to provide, but has not already provided." **Thus, substantively**

**depriving Loushonda Myers of her substantive due process Rights for approximately a year.** Harris

did in fact willfully, knowingly, and/or intentionally disobey a direct order of the court. (Record- Mot.

Opp. State Ex. I-1 thru 2) Adren Harris did in fact commit mis-prison of felon when he willfully,

knowingly, intentionally, and/or willingly withheld material evidence, proofs, and/or information from

the Court and Ms. Myers, as well as when he withheld material information concerning the true reason

behind the US Marshals unlawfully seizing the Plaintiffs' home and property. The real reason being- a

murder that occurred in Georgetown, South Carolina in 2003 (Record- Mem. Opp. State Ex. G-6; H-8,

Lines 17 thru 21). Adren Harris knew about this information since October of 2010 and failed to mention

this until Ms. Myers court date on November 8, 2011. Thus, hindering and obstructing justice and/or

violating due process procedures. Despite this fact, Adren Harris still failed to produce any substantive

discovery materials pertaining to his admittance in Court concerning the murder, and he failed to obtain

any information from the US Marshals and/or South Carolina law enforcement, including the arrest

warrants for Tyre and Dameon Myers. Additionally, Ms. Myers submitted an FOIA request to the FBI on

October 22, 2011. On or about Febraury 22, 2012, Ms. Myers received a copy of a statement from a

JCSO officer that was not turned over in her discovery; despite the fact that on November 8, 2011 Adren

Harris stated that he spoke with Captain Fish of the JCSO and everything that the JCSO had possessed

was turned over to Ms. Myers. In fact, this was perjury, and constitutes fraud. (Record-Mem. Opp. State

Ex. H-10, Lines 11 thru 20) Harris did in fact willfully, intentionally, and/or knowingly hide, conceal,

and/or deceitfully withhold substantive material facts. (Record- Mem. Opp. State Ex. G-6; H-3, Line 6;

H-4, Lines 12-15; H-10 and H-11, Lines 24-6). Adren Harris did in fact conspired with the US Marshals

and the JCSO, as well as the JCDSS; and Adren Harris did in fact conceal a conspiracy and cover up-

whether willfully or not; knowingly or unknowingly; and willingly or unwillingly. Ignorance of the law is

no excuse.

Also, Adren Harris failed in the fair administration of justice when he failed to impartially

evaluate the facts surrounding Ms. Myers's case and continued to prosecute Ms. Myers. The foregoing

actions and/or omissions of Adren Harris does in fact constitute compounding substantive violations

including but not limited to breach of trust; breach of office; treason, for warring against the United

States Constitution and the substantive rights, protections, and/or privileges therein; malfeasance; breach

of fiduciary duty; perverting the course of justice; and/or breach of duty. Adren Harris's actions and/or

omissions were in fact done under color of law, title, and/or office.

Susan Doyle, district attorney for Johnston County, was made fully aware of the actions and/or

omissions of the Defendants and failed to act. (Record-Mot. Opp. State Ex. Y-1 thru Y-2) Susan Doyle

did in fact commit a breach of duty, office, and/or trust. Susan Doyle did in fact commit misprison of

felony due to the fact that she was made aware of substantive God given, Constitutional, and/or Civil

22

rights violations and failed to act, Ms. Doyle violated her fiduciary responsibilities under the US

Constitution. "Silence can only be equated with fraud when there is a legal and moral duty to speak or

when an inquiry left unanswered would be intentionally misleading".... Susan Doyle knew or should have

known that she had a legal and moral duty to respond to Ms. Myers after being contacted regarding

substantive Constitutional and Civil Rights violations. (U.S. v. Tweet, 550 F. 2d, 297, 299, 300 (1977);

McNally v. U.S., 483 U.S. 350, 371-372 (quoting U.S. v. Holzer, 816 F.2d, 304, 307; Morrison V.

Coddington, 662 P.2d, 155, 135 Ariz. 480 (1983))

    The above also applies to The State of North Carolina; North Carolina State Bar; Krista Bennett,

Fern Gunn Simeon; John Silverstein, and the Unknown agents of the North Carolina State Bar; and North

Carolina Court System. Each of these Defendants were given notice and the opportunity to respond the

Plaintiffs' Petition and/or concerns. (Record- Mot. Opp. State Ex. AA-1 thru AA-2; Mot. Opp. State Bar

Ex. 1 thru 8) The North Carolina State Bar (also referred to as State Bar herein), Krista Bennett, Fern

Gunn Simeon; John Silverstein failed to take the appropriate actions once notified and given facts,

evidence, and proofs against Aleta Ballard. Fraud was committed the moment the State Bar and its

agents/officers failed to take action when notified by Ms. Myers that grave Constitutional and Civil

Rights violations were committed by Aleta Ballard. Moreover, the State Bar knew or should have known

that their ability to oversee and reprimand "licensed" attorneys represents a conflict of interest due to the

fact that the State Bar is mainly comprised of "licensed" attorneys that must investigate their peers. As

sworn officers of the court and/or employees of the State of North Carolina Krista Bennett, Fern Gunn

Simeon, and John Silverstein know or should have known that they have a duty and responsibility to

properly address allegations of Constitutional violations and misconduct of officers of the court.

    The State of North Carolina has a duty a obligation to its Citizens to protect their Unalienable

Rights and/or Privileges from all threats both foreign and domestic. The State of North Carolina failed in

23

its duties and obligations when it failed to uphold the substantive Rights and/or Privileges of the

Plaintiffs.

### Aleta Ballard and Steven Walker

Aleta Ballard did in fact commit the following:

(a) Fraud. Ms. Ballard concealed the fact that obtaining a "licensed" bar attorney would strip Ms.

Myers of substantive God-given and Constitutionally protected Rights and Privileges. Ms. Ballard failed

to explain to Ms. Myers that her first duty is to the legislative, de facto courts, and not Ms. Myers.

(Corpus Juris Secundum) Ms. Ballard knew or should have known that this information must be

disclosed in order for Ms. Myers to enter into a valid contractual agreement. Aleta Ballard knew or

should have known that in order for a human being to waive any of their unalienable Rights and/or

Privileges they must be fully informed, aware, and know that they are in fact waiving their substantive

Rights. Aleta Ballard also failed to disclose the fact that a fundamental process of any legitimate court

procedure is the question of jurisdiction. Aleta Ballard allowed the court to proceed against Ms. Myers

without jurisdiction being proven on the record. As a "licensed" bar attorney deemed to know the law,

Ms. Ballard knew or should have known that jurisdiction must be proven and not assumed or waived.

Ignorance of the law is no excuse.

(b) Malpractice. Ms. Ballard failed to challenge jurisdiction; a substantive, fundamental, mandatory

requirement of due process. (5th Amendment US Constitution) Ballard did in fact fail to obtain

substantial, substantive discovery materials after being requested to do so by Ms. Myers on numerous

occassions. (Record- Mot. Opp. Ballard Ex. 1 thru 12-A ) And, Ms. Ballard failed to submit a discovery

request, which prevented, obstructed, and/or deprived Ms. Myers of the substantive right to compel

discovery, a substantial due process violation. (Record- Mot. Opp. Ballard Ex. 11 & 1 thru 17) Aleta

Ballard did in fact hinder and obstruct Loushonda Myers from obtaining these materials when she

24

repeatedly lead Ms. Myers to believe she would bring the issues to a judge, and never did. Furthermore, Aleta Ballard committed fraud when she intentionally lead Ms. Myers to believe that she would submit a motion to compel discovery, knowing that she never submitted a discovery request in the first instance. Aleta Ballard did in fact delay, hinder, and/or restrict Loushonda Myers from obtaining due process by failing, delaying, and/or hindering her from receiving substantive discovery materials. Ballard's actions did in fact cause Ms. Myers unnecessary emotional distress, mental anguish, and anxiety. For approximately eight months, Aleta Ballard did in fact lead Ms. Myers to believe that she would and/or could obtain the discovery materials that were in fact being hidden, obstructed, and/or covered up. Ms. Ballard's action did in fact substantially hinder the administration of justice; substantially delay justice for Ms. Myers, and substantially hindered Ms. Myers from receiving a proper and/or just defense.

Moreover, Ballard failed to diligently review the discovery materials that were in her possession. Ms. Ballard failed to notice that the NCIC report for Tyre Myers was not pulled until October 13, 2010, the day after the US Marshals and JCSO executed their well crafted, illicit, tactical assault on the Plaintiffs. Ms. Ballard failed to notice that the NCDMV report for Loushonda Myers was also pulled on October 13, 2010, the day after the alleged "traffic stop" on Loushonda Myers. Also, Aleta Ballard failed to notice that the NCIC report for Loushonda Myers was not pulled until October 13, 2010, again, the day after the JCSO wrongfully accused Ms. Myers of being involved in a drug trafficking ring. Not to mention, there are no codes on Ms. Myers's NCIC report to substantiate any of the allegations that the JCSO fraudulently presented in court against Ms. Myers.

Lastly, Aleta Ballard is also a "licensed" attorney that also represents clients as a court appointed attorney. As a court appointed attorney Ms. Ballard receives payment from the state/STATE and/or government of North Carolina, a conflict of interest and/or duties.

(c) Ms. Ballard is in fact a proper Defendant under a Section 1983 claim. Due to the fact that her actions

25

and/or omissions aided, assisted, and/or further facilitated the injuries, damages, and/or Constitutional

and Unalienable Rights of the Plaintiffs. Aleta Ballard's actions and/or omissions did in fact facilitate a

conspiracy with a state actor or state official. (Dennis v. Sparks, 449 U.S. 24, 101 S.Ct., 183; Adickes v.

S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598); Hafer v. Melo, 502 U.S. 21 (1991); U.S. v. Frega, 179 F.

3d 793 (9th Cir. 1999)) Aleta Ballard knew or should have known that Adren Harris was in fact

intentionally, willfully, and/or willingly hindering, obstructing, and/or stalling due process for Ms. Myers

by failing to retrieve, submit, and/or obtain substantial, substantive discovery materials. Yet, Ms. Ballard

failed in her duties to inform the court, as well as her client, Ms. Myers. This is in fact misprison of

treason.

(d) Aleta Ballard knew or should have known that she has a duty to report the substantive Constitutional

and due process violations that were occurring to Ms. Myers. Ballard knew or should have know that the

willful failure to to report judicial, official, and/or substantive misconduct, fraud, and/or conspiratorial act

and/or omissions are in fact a violation of her oath, as well as misprison of treason. (18 U.S.C. Section

2382)

Steven Walker did in fact commit the following:

(a) Fraud. Again, just as in (a) in the preceding paragraph, Steven Walker concealed the fact that

obtaining a "licensed" bar attorney would strip Ms. Myers of substantive God-given and Constitutionally

protected Rights and Privileges.

(b) Malpractice. Steven Walker failed to diligently and/or properly obtain substantive discovery materials

for Ms. Myers. (Record-Mot. Opp. Walker Ex. 20 & 20-A) Steven Walker agreed to a trial date without

conferring with Loushonda Myers and without having all of the necessary, substantive discovery

materials. (Record-Mot. Opp. Walker Ex. 9) During Ms. Myers November 8, 2011 hearing before Judge

Paul Gessner, Steven Walker never stated that in court for the record that substantive Constitutional

26

violations had occurred and were continuing to occur; thereby failing in his duties and/or obligations as a court officer to report prosecutorial, law enforcement, and/or judicial misconduct. (Record- Mot. Opp. Walker Ex. H-1 thru H-26) Steven Walker failed in his duty to be diligent when he failed to take notice that the date the NCIC report was pulled for Tyre Myers was in fact after the assault on the Plaintiffs' home and property.

In addition, Ms. Myers provided a complete breakdown and explanation of her entire case to Mr. Walker. Ms. Myers conducted her own research and provided Steven Walker with several complete substantive motions to be submitted to the court. (Record- Mot. Opp. Walker Ex. 1 thru 20-A) In fact, had Ms. Myers not been diligent, thorough, and unrelenting when dealing with Mr. Walker and Adren Harris she would have in fact suffered more damages, harm, and/or injuries than she has already sustained.

(c) Misprison of felony. On November 8, 2011, after Ms. Myers's hearing before Paul Gessner, Steven Walker responded to Ms. Myers and told her the following: "I believe your constitutional rights were violated, and I intend to protect those rights as discussed." Yet, **Mr. Walker had the opportunity to do so the morning of the hearing and never once stated to Paul Gessner that Constitutional violations had occurred and/or were still occurring.** (Record-Mot. Opp. Walker Ex. 9; Mot. Opp. State Ex. H-1 thru 26) On December 14, 2011, Steven Walker responded to an email that Loushonda Myers had sent him. In this email Steven Walker stated, **"Marshal Konig told me that he has a report from the US Marshals in SC detailing the reasons why they thought "fugitives" were there. He told Mr. Harris that he has no such information. I know I didnt make that up. I specifically remember him telling me that he had that information, but didn't give a copy of it to the JCSO, that he just showed it to them."** (Record-Mot. Opp. Walker Ex. 16) Then on December 16, 2011, Walker sent the following response to Ms. Myers: **"Marshal Konig told me he had a report from the SC Marshals and the arrest warrants. He told Mr. Harris that he only had the arrest warrants. I don't understand how**

27

**the story can be so different."** (Record-Mot. Opp. Walker Ex. 17) Steven Walker is in fact a proper

Defendant under a Section 1983 claim. Mr. Walker knew or should have known that an intentional cover

up of information was being committed, and that he has a duty and responsibility to report such violations

to the court; and not facilitate and/or participate therein.

Moreover, Scott Hixon, solicitor for Georgetown County, South Carolina, sent Mr. Walker a letter

admitting that Ms. Myers was in fact conducting her own research, and in fact providing substantial

evidence that there was in fact a cover up and/or conspiracy was being conducted that stemmed from

Georgetown, South Carolina. (Record-Mot. Opp. State Ex. Q-3 thru 5) However, Scott Hixon did in fact

lie and/or perjure himself within this letter due to the fact that Stephen Brown, an investigator with the

Georgetown County Solicitor's Office, did in fact inform Ms. Myers, and her family members that were

also present, that the US Marshals were in fact in contact with their office on the day of October 12, 2010

throughout the entire assault on the Plaintiffs. And, Ms. Myers did in fact file a formal complaint due to

the lies, fabrication, and/or fraudulent information stated in Scott Hixon's letter, and relayed personally to

her by Scott Hixon. (Record- Mot. Opp. State Ex. R-1 thru 3 and S) All of these proofs, evidence, and/or

material facts have been submitted to the district court and have in fact been overlooked and/or ignored.

### North Carolina Department of Health and Human Services & JCDSS

The Johnston County Department of Social Services, under the direct supervision and authority of

the North Carolina Department of Health and Human Services (hereafter referred to as NCDHHS).

NCDHHS, initiated a case against Loushonda Myers alleging three different reasons, with three different

dates. At no time did Terrae Carmon or Kimberly Franklin, nor the JCDSS or the NCDHHS provide

Loushonda Myers with the specific reason she was being threatened with the deprivation and removal of

her children from her custody; and the reason her children were being threatened with being a ward of the

state/STATE. Pursuant to Section V. of the North Carolina Department of Health and Human Services

28

Manual, Loushonda Myers had the right to " know the allegations of abuse, neglect, or dependency reported" that initiated the case. Plaintiff was never informed why her rights and those of her children were being violated. Not once did anyone inform Loushonda Myers of what actions were being alleged against her that surmounted to neglect, nor did the agents of the JCDSS and NCDHHS present valid search warrants before conducting a search of the Plaintiffs' home.

Furthermore, two of the complaints arose after Ms. Myers was released from the Johnston County Jail. The last report stated information that was available from the search warrants and maliciously accused plaintiff's oldest child of being a drug dealer. (Record- Ex. T-1 thru T-9) Both agencies, the NCDHHS and the JCDSS failed to properly investigate and turn over materials essential to her defense, thereby denying the Plaintiffs due process. The Plaintiffs have the right to know who initiated the complaint against her, as well as the actions that were alleged of her and her children. An accused person has the right to confront their accuser and know the circumstances that gave rise to the allegations. (5th and 6th Amendments of the US Constitution)

Neither NCDHHS, JCDSS, Kimberly Franklin, or Terrae Carmon ever raised an appropriate injury against Loushonda Myers until November 5, 2010; and at that time the information stated was similar to the information provided from the law enforcement agencies that were involved in the investigation, search, and seizure of Loushonda Myers - which raises the issue of malice, intent, and conflict of interest. Additionally, the NCDHHS; the JCDSS; and their agents, Kimberly Franklin and Terrae Carmon, committed fraud when they concealed material facts and/or evidence, and presented themselves in a manner that suggested that they had legal authority to execute control over the Plaintiffs, and/or deprive them of their substantive and fundamental rights.

The minor children were kidnapped, interrogated, and/or deprived of their substantive and fundamental rights and/or privileges by the US Marshals, agents of the JCSO, and agents of the North

29

Carolina Department of Health and Human Services. The NCDHHS did in fact act under color of law,

title, and/or office when their agents/officers Kimberly Franklin and Terrae Carmon did in fact unlawfully

kidnap, interrogate, and/or deprive the minor children of their substantive rights and privileges when they

did the following: aid the JCSO in the depriving the children of their mother and forcing the children into

the care and custody of another family; interrogate the children concerning their familial and private

lives; forced the minor children into subjection; forced the minor children into inspection of their body

and property; trespass, searched, and seized the children's home; and trespassed in their private lives

without the proper authority and/or delegation of authority. The NCDHHS nor their agents possessed a

valid arrest and/or search warrant for the minor children, Loushonda Myers, or their home. However, the

NCDHHS and its agency, agents and/or employees did in fact trespass upon the substantive rights of the

Plaintiffs on numerous occasions. In fact, JCDSS, a division of the NCDHHS, did in fact compound their

actions when they solicited the aid of the Georgetown County Department of Social Services in

Georgetown, South Carolina to conduct an inspection of the Plaintiffs' home after the Plaintiffs' moved

from the State of North Carolina. These actions were committed under the color of law, office, and/or title

and were a direct result of the willful, knowing, and/or willing failure of the State of North Carolina; its

counties; departments, agencies, and/or divisions; and agents, officers, and/or employees to follow proper

procedures and protocols; uphold their oaths; abide by the laws of North Carolina; and uphold the US

Constitution. In addition, the JSDSS used fabricated, false, and/or tainted information as the basis for

interfering in the Plaintiffs' fundamental rights to be free from government intrusion and unlawful

searches and seizures. Statements were given by law enforcement officers that stated Ms. Myers was

harboring fugitives and that her oldest son possessed three cellular phones, and was somehow involved

with drugs. **These statements were false from its conception and proven to be false, fabricated, and/
or tainted due to the fact that the agencies involved disproved their own facts.**

30

The JCSO, US Marshals, and the JCDSS, as well as their respective agents and/or officers, did in fact commit human trafficking when they forcefully; willfully; willingly; and/or knowingly seized Ms. Myers's minor children for the purposes of removing them from their mother and placing them in the custody of the STATE and/or state of North Carolina. The JCSO, US Marshals, and the JCSO, as well as their respective agents and/or officers did in fact commit kidnapping when they forcefully; willfully; willingly; and/or knowingly robbed Ms. Myers of her children and forced the minor children to become wards of the STATE/state against their will, thereby kidnapping Ms. Myers's children and committing the act of piracy by depriving the Plaintiffs' of their freedom; substantive rights; and/or substantive property-which includes unenumerated substantive rights.

Furthermore, these agencies and their agents did in fact interrogate the minor children without lawful representation and/or legal guardian. Thereby depriving the minor children of their substantive rights to due process, safety, and/or security in their private being as a human. More importantly, Ms. Myers's oldest son was forced into interrogation by the JCSO, US Marshals, and the JCDSS and their respective agents and/or officers, knowing that allegations were made against him were "criminal". (Record-Mem. Opp. State T-1 thru T-9) C.M. was deprived of his substantive right to be free from self incrimination; his substantive right to be fully informed and aware of the allegations against him; his substantive right to be given due process; his substantive right to be represented by lawful counsel; his substantive right to be silent; and his substantive right to confront his accuser and/or accusers. A.M. and M.M. were also forced into interrogation and denied their substantive right to be represented by legal counsel; their substantive right to be fully informed and aware of the nature and cause of the allegations against them; their substantive right to be silent; their substantive right to confront their accuser and/or accusers; their substantive right to due process; and their substantive right to be free from self incrimination. Ignorance of the law is no excuse.

31

### Illegal Cell Phone Tracking and Wake County

On and around October 12, 2010 the US Marshals, JCSO, and Wake County Sheriff Office (herein also referred to as WCSO) did in fact use unlawful cell phone tracking, tracing, and/or surveillance. Plaintiff, Loushonda Myers, did in fact see law enforcement vehicles at locations that she stopped at on the morning of October 12, 2010; and the US Marshals had a SUV with a female agent sitting on the passenger side peering at a laptop during the entire incident. This female never left the vehicle. In addition, Shareef Marshal, a friend, was tracked, seized, searched, and/or threatened by the US Marshals and the WCSO after being contacted by cellular phone.

Moreover, during Ms. Myers' unauthorized tax substance case, a subpoena was issued to AT&T to provide tracking information for two cellular phones that Ms. Myers had with them. Not only did AT&T fail to comply with the subpoena, but shortly after Ms. Myers had a phone conversation with an attorney for AT&T, William M. Schur, Ms. Myers's unauthorized tax case was dismissed in her favor. (Record-Mot. Opp. State Ex. EE-1 thru EE-3)

The US Marshals, nor JCSO never disclosed how they arrived and trespassed at the Plaintiffs' home. However, an FBI report did in fact state that communication with the alleged gang is done through cellular phone. (Record- Mot. Opp. State Ex. E-4 thru E-7 and F-1 thru F-3) Additionally, during Ms. Myers November 8, 2011 hearing, Adren Harris admitted on record that the proper procedures for obtaining a warrant to track cellular phones were not done. (Record -Mot. Opp. State Ex. H-14 Lines 10 thru 18) The US Marshals and JCSO did in fact violate the Plaintiffs substantive rights against unlawful government intrusion and unlawful cell phone tracking pursuant to the US Constitution and 18 USC § 2511.

Furthermore, the WCSO failed to properly respond to a FOIA request sent directly to their office. The WCSO did in fact respond by writing "NO RECORDS FOUND" without stating the person that

32

received the request; without stating if the requested records were even searched for; without stating who actually actually responded to the request; and without notating the date.

In conclusion, the Plaintiff's did in fact state claims against the foregoing Defendants in the above captioned civil suit, and must not be hindered, restricted, and/or obstructed from seeking and/or receiving redress, remedy, and/or compensation for the negligent and/or colorable acts and/or omissions of the foregoing Defendants; whether knowingly and/or unknowingly; willingly and/or unwillingly; willfully and/or unwillfully.

### DISMISSAL OF THE PLAINTIFFS SUIT WAS IMPROPER AND AN ERROR IN LAW
### DISMISSAL OF THE MINOR CHILDREN WAS IN FACT IMPROPER

The Honorable Judge Dever cannot restrict, hinder, and/or take away a right and claim that it is for the protection of another right. He cannot say they are protecting the rights of the minor children in one breathe, and then take away their rights. Contrary to Judge Dever's statement, Ms. Myers did in fact rebut the 4th Circuit ruling; and has received this as an attempt to take away her fundamnetal parenthood rights. Such a violation of substantive rights is not necessary. To do so would put the Court and its officers in peril of hindering and obstructing justice. "To take away [a] remedy for the enforcement of a right is to take away the right itself ...... that is not within the power of the State [nor this Court]" (Poindexter v. Greenhow, 114 U.S. 270, 303 (1885))

Importantly, as it pertains to the minor children (1) Loushonda Myers has an innate property right under common law, and she cannot be hindered, restricted, and/or denied by the law her right to defend her property (NAACP v. Button (371 U.S. 415); United Mineworkers of America v. Gibbs (383 U.S. 715); Johnson v. Avery 89 S. Ct. 747 (1969); Brotherhood of Trainmen v. Virginia ex rel. Virginia State Bar (377 U.S. 1); Gideon v. Wainwright 372 U.S. 335; Argersinger v. Hamlin, Sheriff 407 U.S. 425); (2)

33

Fit parents are presumed to "act in the best interests of their children" (Parham v. J.R., 442 U.S. 584, 602 (1979)); and (3) forcing the minor children to delay litigation for years, is contrary to the public policy concerns for potential loss of evidence, witnesses, and even parties – in effect, denying their justice now and forevermore, simply because of their current ages.

FRCP 17 (b)(3) states that the capacity to sue or be sued is determined by the law of the state where the court is located. Thus, pursuant to the Rules of Civil Procedure in North Carolina, Article 4, Rule 17; Loushonda Myers is the natural guardian of her children and has the inherent (God given), Constitutionally protected Right to bring suit on behalf of her minor children. Parents are the "natural guardian" of their children and therefore "appointment of guardians is not necessary". (Jeffery v. O'Donell, 702 F. Supp. 513 - Dist. Court, MD Pennsylvania 1987) The minor children's Rights in this suit are inherent and must be protected. And, moreover the statutory law of North Carolina reaffirms this fact. (See also, Bergstreser v. Mitchell, 448 F.Supp. 10, 15 (E.D. Mo. 1977); Missouri Pacific R. Co. v. Cox, 306 Mo. 27, 267 S.W. 382, 384 (1924); Taylor v. Missouri Pac. R. Co., 211 Mo.App. 13, 257 S.W. 511, 512 (1924); See also, Bochantin v. Inland Waterways Corp., 9 F.R.D. 592, 593 (E.D. Mo.1950))

Nevertheless, Loushonda Myers agrees that her children's interests and rights must be properly protected, and she recognizes the conundrum that Judge James C. Dever, III is facing; however there is a solution that will preserve and protect the substantive rights of Loushonda Myers and the minor children. The solution is for this Court to appoint an attorney and/or guardian ad litem to assist and advise for the minor children and Loushonda Myers. The Plaintiffs cannot afford to pay an attorney; and besides, no attorney would be willing to take on this case due to the parties involved, and the fear of being black listed.

A court appointed attorney and/or guardian ad litem to advise and assist Loushonda Myers is appropriate due to the fact that Ms. Myers is already the general guardian, guardian at litem, mother, and

34

next of kin of the minor children. This would ensure that the decisions that Ms. Myers is making does not deprive the children nor herself of any rights, and it ensures that the minor children are not being wronged. Furthermore, appointing an attorney to advise would not jeopardize the reputation and/or political status of the attorney being appointed. (Mark Ellis v. State of South Carolina, 1995; Mark Ellis v. State of South Carolina, 2001) This should be done nunc pro tunc due to the fact that it is grievous to deprive the Plaintiffs of their substantive Rights, while making them fight for other Rights. Thus, the aforementioned remedy will protect and guarantee the substantive rights and/or privileges of the minor children. This Court must exercise moral consciousness and not be swayed by men and/or man made doctrines, law, rules, and/or statutes that prevent any Citizen of any age from receiving just remedy and/ or compensation for injuries and/or damages done unto them.

Lastly, after having experienced what Ms. Myers has experienced with attorneys and the legal system, it is clear to see why there is no trust, faith, and/or belief that a licensed attorney will in fact abide by law and not political, economic, and/or corrupted influences. In fact, the Plaintiffs have shown and proven that substantial, substantive God given, Unalienable, Constitutionally protected Rights have been violated and are continuing to be violated.

### IMMUNITY IS NOT A DEFENSE

"It is the duty of courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachments thereon. Their motto should be obsta principiis." (Hale v. Henkel - 201 U.S. 43 (1906)) "How 'uniquely amiss' it would be, therefore, if the government itself— 'the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct'—were permitted to disavow liability for the injury it has begotten. (See Adickes v. Kress & Co., 398 U.S. 144, 190, 90 S.Ct. 1598, 1620, 26 L.Ed.2d 142 (1970) (opinion of Brennan, J.). A damages remedy against the offending party is a vital component of any

35

scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed." (Owen v. City of Independence, 445 U.S. 622 (100 S.Ct. 1398, 63 L.Ed.2d 673) "No man in this country is so high that he is above the law". "All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it". (U.S. v. Lee, 106 U.S. 196, 220 1 S. Ct. 240, 261, 27 L. Ed 171 (1882); Butz v. Economou, 98 S. Ct. 2894 (1978)) "It is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." (Chief Justice Marshall in Marbury v. Madison, 5 U.S. 137 (1803))

Judges, Prosecutors, and/or public officials cannot claim any type of immunity for their actions and/or omissions when they have clearly violated a Citizen's God given, Constitutional, and/or Civil Rights and/or Privileges. The Plaintiffs have submitted facts, proofs and/or evidence of the Defendants' wrongdoings, and did in fact give notice to the State/STATE and County that substantive Rights were being; and in fact were violated. And, moreover, they did in fact agree and/or confirm these facts through the dismissal of Ms. Myers's Unauthorized Tax Case, Criminal Charges, and/or ceasing the intrusion by the JCDSS. 42 U.S.C. 1983 is at all times relevant and material. (Hafer v. Melo, 502 U.S. 21 (1991)) "Non dat qui non habet---He gives nothing who has nothing." (Bouvier's Law Dictionary (1914), Maxim pg. 2149) The government cannot arbitrarily give itself nor its agents, corporations, and/or entities more rights than those which are endowed in the Citizens. To do so is at least a blatant act of terrorism and/or treason. At worst an obvious display of moral turpitude. "Constitutional rights may not be infringed simply because the majority of the people choose that they be." (Westbrook v. Mihaly 2 C3d 756)

The Plaintiffs do not derive their Rights and/or Privileges from any legislative, statutory, and/or man-made laws. The Plaintiffs' Rights and/or Privileges are inherent from God, and protected and guaranteed by the US Constitution. The Defendants do not have any lawful claims and/or protections of

36

immunity due to the fact that each of them, whether individuals and/or corporate bodies, have violated, trespassed, and/or interfered with the Plaintiffs' substantive, unalienable Rights. (Yick Wo v. Hopkins, 118 US 356, 370) "In this state, as well as in all republics, it is not the legislation, however transcendent its powers, who are supreme— but the people— and to suppose that they may violate the fundamental law is, as has been most eloquently expressed, to affirm that the deputy is greater than his principal; that the servant is above his master; that the representatives of the people are superior to the people themselves: that the men acting by virtue of delegated powers may do, not only what then- powers do not authorize, but what they forbid." (Warning v. the Mayor of Savannah, 60 Georgia, P. 93)

Therefore, immunity cannot and must not be given to any Defendant in this action under the Common Law of the US Constitution. The Plaintiffs have just and proper claims against each of the Defendants and as the guardian of justice, this court must abide by the contract it has with the United States Constitution and the People of the United States. Justice must be administered and without regard to title, office, and/or without respect of individuals. (U.S. v. Lee, 106 U.S. 196, 220 1 S. Ct. 240, 261, 27 L. Ed 171 (1882)) "When the language of the Constitution is positive and free from all ambiguity, all courts are not at liberty, by a resort to the refinements of legal learning, to restrict its obvious meaning to avoid hardships of particular cases, we must accept the Constitution as it reads when its language is unambiguous, for it is the mandate of the sovereign powers." (State v. Sutton, 63 Minn. 147, 65 WX N.W., 262, 101, N.W. 74; Cook v. Iverson, 122, N.M. 251) Furthermore, "in this state, as well as in all republics, it is not the legislation, however transcendent its powers, who are supreme--- but the people--- and to suppose that they may violate the fundamental law is, as has been most eloquently expressed, to affirm that the deputy is greater than his principal; that the servant is above his master; that the representatives of the people are superior to the people themselves; that the men acting by virtue of delegated powers may do, not only what their powers do not authorize, but what they forbid." (Warning

37

v. the Mayor of Savannah, 60 Georgia, P. 93)

## RICO

The Defendants did in fact violate state and federal laws, and have in fact committed fraud, treason, kidnapping, and/or obstruction of justice. All of the above named crimes are in fact RICO violations and must be punished as such. The Plaintiffs have in fact stated and provided facts, evidence, and/or proofs sufficient to establish a cause of action and remedy under the 18 USC Chapter 96, RICO.

## JOHNSTON COUNTY SHERIFF'S OFFICE

Johnston County Sheriff's Office cannot be dismissed simply due to the fact that the Plaintiffs' stated their name as "Department", a term still used by the county and its agents, instead of "Office" in the Complaint. Furthermore, in Ms. Myers's limited discovery materials, the captions state "Johnston County Sheriff Department". This is an ill attempt to circumvent justice.

## JURY TRIAL DEMANDED

The Plaintiffs did in fact demand a jury trial on all issues of fact and law. (FRCP 38 & 39) Therefore, under the Article III powers of this Count and the District Court, a jury must make the finding of law and fact. Plaintiffs are also seeking injunctive relief from violations, deprivations, and/or obstruction of God-given Rights, Constitutional Protected Rights, and Civil Rights. (Yick Wo v. Hopkins, 118 US 356, 370)

The Plaintiffs respectfully demand this Court to do the following:

1. Vacate, Annul, and/or Void the Order of Judge James C. Dever;

2. Order the minor children to proceed and/or remain in the suit;

3. Keep all Defendants and claims, including the Section 1983 and 1985, in the suit;

4. Allow Plaintiff's to submit an amended complaint, if necessary;

5. Allow a jury to decide all issues of fact and law;

38

6. Strike all references to the minor children and their claims being "immaterial";

7. Strike all references to the Defendants claims of immunity;

8. Allow the Plaintiffs to correct the misnomer of the Johnston County Sheriff's Office;

9. Any and all remedies this Court finds just and proper.


Respectfully, this 15th day of October, 2013.


Loushonda Myers
Sui Juris/Pro Se
Mother of Minor Plaintiffs
27 Wateree Trail
Georgetown, SC 29440
loushondamyers@yahoo.com
(843)527-2100


## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 13,548 words.


Loushonda Myers
Sui Juris/Pro Se
Mother of Minor Plaintiffs
27 Wateree Trail
Georgetown, SC 29440
loushondamyers@yahoo.com
(843)527-2100


## CERTIFICATE OF SERVICE

39

This is to certify that the Plaintiffs have served the foregoing Informal Brief on the following Defendants in the following manner (Please Note: Plaintiffs are in the process of filing in the Supreme Court for a Writ of Certiorari in regards to Electronic Filing, and Plaintiffs are currently unable to pay the costs of serving the numerous Defendants by USPS.):

**Grady L. Balentine, Jr.**
(Attorney for Defendants The State of North Carolina, Underwood, Hale, Stanley, Doyle, Harris, North Carolina Court System, Office of Indigent Services, Johnston County Public Defender's Office,and Johnston County District Attorney's Office)
**email: gbalentine@ncdoj.gov**

**David S. Mills**
(Attorney for Defendants Johnston County, Johnston County Department of Social Services, Carmen Carrae, Kimberly Franklin, and unknown officers/agents of the JCDSS)
**email: david@mills-law.com**

**Brian P.D. Oten**
(Attorney for Defendants Bennet, Simeon, Siverstein, and "unknown agents of the North Carolina Bar)
**email: boten@ncbar.gov**

**Grant S. Mitchell and Timothy C. Smith, Jr.**
(Attorneys for Defendants Bizzell, Fish, Allen, Pate, Creech, Canady, Case, Daughtry, Stewart, Johnson, Billis/Gillis, and unknown officers/agents of the Johnston County Sheriff Department)
**email: grant.mitchell@mlg-mail.com and tim.smith@mlg-mail.com**

**Roger A. Askew and John A. Maxfield**
(Attorney for Defendants Donnie Harrison, unknown officers/agents of the Wake County Sheriff Department, and Wake County)
**email: roger.askew@wakegov.com and jmaxfield@co.wake.nc.us**

**John T. Holden and Joseph L. Nelson**
(Attorney for Defendant Steven Walker and Walker Law Firm)
**email: jholden@dmclaw.com and email: jnelson@dmclaw.com**

**John P. O'Hale**
(Attorney for Defendants Aleta Ballard and Ballard Law Firm)
**email: knarron@nowlaw.com**

**Angenette Stephenson**
(Attorney for North Carolina Department of Health and Human Services)
**angie.stephenson@dhhs.nc.gov**

This _15th_ day of October, 2013.

Loushonda Myers
Sui Juris/Pro Se
Mother of Minor Plaintiffs
27 Wateree Trail
Georgetown, SC 29440
loushondamyers@yahoo.com
(843)527-2100