IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-714-BO

| | | |
|---|---|---|
| LOUSHONDA MYERS, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM IN SUPPORT |
| | ) | OF MOTION TO DISMISS |
| THE STATE OF NORTH CAROLINA, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

Defendant, Deputy U.S. Marshal Bryan Konig, by and through the United States Attorney for the Eastern District of North Carolina, respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

PROCEDURAL HISTORY

Plaintiff, on behalf of herself and others (including her minor children), initially filed this lawsuit on November 1, 2012, naming a myriad of defendants including state governmental bodies, state law enforcement officers, state judges, state prosecutors and other attorneys in private practice. [DE-3] ("Compl."). Although Plaintiff's original complaint referenced Deputy Konig by name (see Compl. ¶ 5), Plaintiff specifically omitted naming Deputy Konig as a defendant and did not obtain

the issuance of a summons for him or effect service of process. [DE-7]

On August 16, 2013, the Court issued an order striking Plaintiff's minor children as parties and dismissing the remainder of Plaintiff's claims (some with and some without prejudice). [DE-164] The Court dismissed the claims against the State of North Carolina and its agencies (and officers acting in their official capacities) by virtue of the immunity granted by the Eleventh Amendment; dismissed the individual claims against the North Carolina magistrates under the doctrine of absolute judicial immunity; dismissed the individual claims against the private attorneys who did not act under color of state law for purposes of 42 U.S.C. § 1983 liability; and dismissed the claims against the remaining defendants (primarily the state law enforcement officers) without prejudice to allow Plaintiff to refile an amended complaint with more particularized allegations.

Plaintiff filed her amended complaint on March 31, 2014. [DE-189] ("Am. Compl."). In addition to renaming the same defendants who were dismissed without prejudice, Plaintiff's amended complaint adds AT&T (and its affiliates), Deputy Marshal Konig, other unknown agents of the Marshals Service,[1] BB&T bank,

---

[1] While this motion to dismiss is not brought on behalf of the "unknown agents" since DOJ representation cannot be authorized on behalf of a

and two additional individuals who apparently are employees of the Johnston County Sheriff's Office. (See Am. Compl. ¶¶ 11-16, 27). Plaintiff's Amended Complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Claims 1 and 2); civil rights claims pursuant to 42 U.S.C. §§ 1983 and 1985 (Claim 3); claims of violations of the North Carolina state criminal code and for the crime of "treason" (Claims 4 and 13); claims of violations of Plaintiff's constitutional rights under the Fourth, Fifth, Sixth, Eighth Ninth and Fourteenth Amendments (Claim 5); and various causes of action under the common law of torts (Claims 6 through 12).

## FACTS

Deputy Konig leads the Violent Fugitive Task Force for the United States Marshals Service (USMS) in the Eastern District of North Carolina. The allegations contained in Plaintiff's amended complaint pertaining to Deputy Konig are summarized as follows.

On October 11, 2010, the USMS in Raleigh received a collateral lead request from the USMS Office in the District of South Carolina indicating that two fugitives – Tyre Myers (Plaintiff's husband) and his brother Dameon Myers – were believed to be located in Johnston County, North Carolina. [DE-

---

John Doe defendant, the same arguments in favor of dismissing Deputy Konig would apply equally to them, and would warrant the Court's dismissal of these nameless defendants *sua sponte*.

189-18] (Probable Cause Aff., ¶ 2). Tyre Myers was wanted by the Georgetown (South Carolina) Sheriff's Office on two bench warrants for failure to appear and violations of conditional release. [DE-189-22] (NCIC Report). Information available to the USMS indicated that the Myers brothers were involved in the distribution of illegal drugs and guns, robberies, home invasions, and were known to use ballistic body armor. [DE-189-25] Tyre Myers's NCIC report also showed that he had a prior arrest or conviction for assaulting a police officer. [DE-189-22] USMS considered both fugitives to be armed and dangerous.

Early on the morning of October 12, 2010, Deputy Konig and his task force established surveillance on the Johnston County residence where Tyre Myers was believed to be located. [DE-189-18] (Probable Cause Aff., ¶ 2). At approximately 8:30 a.m., a black male resembling known photos of Tyre Myers was seen smoking on the back porch of the dwelling with an unknown black female (who was later identified as Plaintiff). (Id.) At approximately 10:40 a.m., a vehicle departed from the garage of the residence and an investigative stop was conducted by Deputy Konig several blocks away. (Id.) Upon identifying Plaintiff as the driver of the vehicle, Deputy Konig asked her a few questions (and sought consent to search the home, which was denied) and then let her go on her way. (Id.); (Am. Compl. ¶¶ 84-85). During the traffic stop, two other teams maintained

surveillance on the house and did not observe anyone entering or leaving the residence. (Probable Cause Aff., ¶ 2).

When Plaintiff returned from her errand, she was denied access to her home while Johnston County Sheriff personnel (who had been contacted for assistance by Deputy Konig) applied for a search warrant. (Am. Compl. ¶ 86-87). While executing the search warrant, the officers did not locate the fugitive Tyre Myers, but they did find men's clothes in the master bedroom that "were way too big for [Plaintiff's] oldest son to wear," and Plaintiff's neighbors subsequently verified that a large frame black male had been living there. [DE-189-20] (Report of A.C. Fish). The initial search also found a small marijuana grow operation in plain sight in the laundry room. (Id.)

Based on this find (and the failure to apprehend Tyre Myers), the operation was turned over to local authorities who applied for a second warrant to search the home for evidence of drug crimes. (Id.) The second search turned up (in addition to the marijuana previously mentioned) 74.9 grams of cocaine, a large amount of money, and drug packaging paraphernalia. (Id.) Plaintiff was arrested, charged with various drug offenses, and taken into custody. (Id.); (Am. Compl. ¶¶ 89-90). Plaintiff eventually made bond on October 29, 2010. (Am. Compl. ¶ 102). Prior to trial, on December 30, 2011, the state prosecutor

dismissed all charges against Plaintiff. (Am. Compl. ¶ 114);
[DE-191-10] (Notice of Dismissal).

<u>STANDARD OF REVIEW</u>

The purpose of a motion to dismiss for failure to state a
claim is to test the sufficiency of a complaint and should be
granted if the facts alleged do not plausibly support a legal
theory that would entitle Plaintiff to relief. <u>Edwards v. City
of Goldsboro</u>, 178 F.3d 231, 243-44 (4th Cir. 1999). In
evaluating a Rule 12(b)(6) motion, the court assumes "all well-
pleaded, nonconclusory factual allegations in the complaint to
be true," <u>Aziz v. Alcolac, Inc.</u>, 658 F.3d 388, 391 (4th Cir.
2011), but need not accept the truth of "legal conclusions drawn
from the facts" or "unwarranted inferences, unreasonable
conclusions or arguments," <u>Giarratano v. Johnson</u>, 521 F.3d 298,
302 (4th Cir. 2008) (internal quotations and citation omitted).
To survive a motion to dismiss, Plaintiff's "[f]actual
allegations must be enough to raise a right to relief above the
speculative level," thereby "nudg[ing] [her] claims across the
line from conceivable to plausible." <u>Bell Atlantic Corp. v.
Twombly</u>, 550 U.S. 544, 555, 570 (2007). In deciding a Rule
12(b)(6) motion, the Court may consider (in addition to the
complaint itself) matters of public record, items appearing in
the record of the case, and exhibits attached to the Complaint.

6

<u>Bartlett v. Frederick County, Md.</u>, 246 Fed. Appx. 201, 205 (4th Cir. 2007).

Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint and not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. <u>Richmond, F. & P. R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993). Thus, dismissal of a claim that the complaint itself reveals to be time-barred is appropriate under Rule 12(b)(6). <u>See</u> <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 181 (4th Cir. 1996); 5B Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 (3d ed. 2014) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).")

<u>ARGUMENT</u>

**1.    <u>Claims 6-12 (Common Law Tort Claims):</u>**

The Federal Tort Claims Act ("FTCA") creates a remedy against the United States Government for certain personal injuries and property damage caused by government employees in the course and scope of their official duties. At the same time

7

the FTCA waives the government's sovereign immunity for these types of claims, it grants absolute immunity from liability to the government employees themselves, with two limited exceptions. The relevant statutory provision, 28 U.S.C. § 2679(b)(1), provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred. (emphasis added)

The following subsection, 28 U.S.C. § 2679(b)(2), contains the only exception to the official immunity doctrine:

> Paragraph (1) does not extend or apply to a civil action against an employee of the Government— (A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

Claims 6 through 12 of Plaintiff's complaint all attempt to state causes of action arising under the common law of torts. Assuming without conceding that Plaintiff's complaint is legally sufficient to state such claims, the claims do not fall within

8

one of the exceptions listed in 28 U.S.C. § 2679(b)(2), and thus Deputy Konig enjoys absolute official immunity from those claims under § 2679(b)(1).  See United States v. Smith, 499 U.S. 161, 163 (1991); Osborn v. Haley, 549 U.S. 225, 247 (2007). Plaintiff's only remedy for these causes of action would lie against the United States itself,[2] and the tort claims against Deputy Konig must be dismissed.

**2.    Claims 4 and 13 (State Criminal Statutes and Treason):**

Claim 4 of Plaintiff's complaint attempts to state causes of action arising under various provisions of the North Carolina criminal code.  North Carolina courts have recognized that violations of the state criminal code do not generally give rise to civil causes of action.  See, e.g., Gillikin v. Springle, 118 S.E.2d 611, 214 (N.C. 1961); Robinson v. Forest Creek Ltd. P'ship, 712 S.E.2d 895, 897 n.2 (N.C. Ct. App. 2011). Similarly, federal courts will not imply a private right of action from a bare criminal statute absent a showing of

---

[2] However, any claim that Plaintiff might otherwise have against the United States is now barred by the FTCA's statute of limitation.  The exhibits that Plaintiff attached to her complaint show that she did file an Administrative Tort Claim with the USMS, which was administratively denied on December 31, 2012. [DE-191-4] (Acknowledgment of Receipt of Administrative Tort Claim); [DE-191-6] (Denial of Administrative Tort Claim).  Pursuant to 28 U.S.C. § 2401(b), litigation must be initiated against the United States in U.S. District Court "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  The limitations period therefore expired on June 30, 2013, with no such claims having been brought against the United States to-date.

affirmative legislative intent to create a civil remedy. See Federal Sav. & Loan Ins. Corp. v. Reeves, 816 F.2d 130, 138 (4th Cir. 1987); Tribble v. Reedy, 1989 WL 126783 (4th Cir. Oct. 20, 1989). Cf. Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001).

However, even assuming that the alleged violations of the North Carolina criminal code did give rise to an implied cause of action, they would be barred by the official immunity provisions of the Westfall Act cited above. The only exceptions to the doctrine of official immunity recognized by 28 U.S.C. § 2679(b)(2) are claims arising under the United States Constitution or "a statute of the United States under which such action against an individual is otherwise authorized" (emphasis added). Implied causes of action arising under state statutes do not fall within this exception. Claim 4 must therefore be dismissed.

Finally, although the crime of treason is found in the text of the Constitution itself and therefore arguably might fall with the exception recognized by 28 U.S.C. § 2679(b)(2)(A) for Constitutional violations, Claim 13 fails for the alternative reason that a violation of the criminal law, standing alone, does not create civil liability. Indeed, the Fourth Circuit has specifically held that no private right of action may be implied for treason. Rodriguez v. Doe, 549 F. App'x 141, 146 (4th Cir. 2013). Accordingly, Claim 13 should be dismissed as well.

## 3.  Claim 4 (Violations of the United States Constitution):

In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action for money damages against federal officers for alleged violations of the Fourth Amendment protection against unreasonable searches and seizures. The Supreme Court has extended the Bivens remedy to alleged violations of the Fifth Amendment due process right and Eighth Amendment's prohibition against cruel and unusual punishment, but has resisted extending it into other new contexts. See Corr. Serv. Corp. v. Malesko, 534 U.S. 61, 66-68 (2001).[3] Furthermore, while Bivens-type claims are specifically excepted from the scope of official immunity under 28 U.S.C.

---

[3] Notably, however, to the best of Defendant's knowledge, Bivens has never been extended to a claim for a violation of the excessive bail clause of the Eighth Amendment, see Krohn v. United States, 578 F. Supp. 1441, 1446 (D. Mass. 1983) ("Although a cause of action may be implied under the Eighth Amendment's cruel and unusual punishment clause, no federal court appears to have held that a cause of action may be implied under that amendment's other restrictions on federal authority.") (citation omitted), rev'd in part on other grounds, 742 F.2d 24 (1st Cir. 1984); or a claim for a violation of the Ninth Amendment, see Stranberg v. City of Helena, 791 F.2d 744, 478 (9th Cir. 1986) ("[T]he ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim."); or a claim for violations of international treaties, see In re Iraq and Afghanistan Detainees Litig., 479 F. Supp. 2d 85, 109 (D.D.C. 2007) ("[A] Bivens remedy is available only for constitutional violations, not for violations of some other source of law, such as international law or treaties."). Furthermore, the Fourteenth Amendment is applicable only to the states, and not the federal government or the actions of federal officials (which are governed by the Fifth Amendment). See Massey v. Ojaniit, 759 F.3d 343, 354 n.5 (4th Cir. 2014). Therefore, each of these claims should be dismissed for failure to state a claim.

11

§ 2679(b)(2), they remain subject to the defense of qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). However, due to the availability of other meritorious defenses asserted hereinafter, Defendant will reserve discussion of the qualified immunity defense for further proceedings, should it become necessary.

Because Bivens is a judicially created remedy with no express limitations period, the Fourth Circuit has held that courts should apply the statute of limitation governing personal injury claims in the state where the claim accrued. Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999). In North Carolina, the applicable limitation is three years. See N.C. Gen. Stat. § 1-52(5) (stating that an action must be brought "[w]ithin three years ... for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated").

Looking to Plaintiff's complaint, it is clear that all the allegations pertaining to Deputy Konig relate to events which took place on October 12, 2010. (Am. Compl. ¶¶ 84-98). This conclusion is further confirmed by the voluminous exhibits attached to her complaint, all of which mention only the October 12 date in connection with Deputy Konig. [DE-189-2] (Myers Aff.); [DE-189-7] (Letter for Investigation); [DE-189-8] (Complaint to USM Parker). Any cause of action which Plaintiff

12

possesses against Deputy Konig for conducting an unlawful investigative stop and/or entry into her home therefore accrued on that date. See Brooks v. City of Winston-Salem, 85 F.3d 178, 182-83 (4th Cir. 1996) (cause of action for warrantless arrest or detention accrues on date of seizure); Cramer v. Crutchfield, 648 F.2d 943, 945 (4th Cir. 1981) (cause of action for illegal search accrues on date of search). Thus, the limitations period during which Plaintiff could have filed a Bivens complaint expired on October 12, 2013. Plaintiff's amended complaint, the first in this case naming Deputy Konig as a defendant, was not filed until March 31, 2014. Therefore, these claims are barred by the applicable statute of limitation unless the claims "relate back" to the filing of her original complaint pursuant to Fed. R. Civ. P. 15(c).

Under Rule 15(c), an amendment that changes the party against whom a claim is asserted relates back to the date of the original pleading only if "the new party ... received adequate notice within the limitations period and suffer[s] no prejudice in its defense." Goodman v. Praxair, Inc., 494 F.3d 458, 473 (4th Cir. 2007).[4] Fourth Circuit precedent suggests that

---

[4] For purposes of Rule 15(c), the "limitations period" includes not just the time prescribed by the statute of limitations, but also the time allowed under Fed. R. Civ. P. 4(m) for effecting service of the original complaint (typically 120 days after filing). See Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010). In this case, the Rule 4(m) service period began on the day the Court granted Plaintiff's in forma pauperis petition, see id., which was November 19, 2012 [DE-2],

"adequate notice" is achieved when there is either actual notice (e.g., service of the complaint on the party to be added), see Robinson, 602 F.3d at 609, or where there is commonality of counsel, an identity of interests, and/or a close relationship (e.g., parent-subsidiary) between the original defendant and the new defendant, see Goodman, 494 F.3d at 473-75.

In this case, Deputy Konig did not receive formal notice of the lawsuit until he was served with the complaint and summons on or about July 17, 2014 [DE-204], well after the limitation period expired. Furthermore, none of the factors identified in Goodman that would justify an inference of adequate constructive notice are present here: the original defendants were all state actors with no hierarchical affiliation to either Deputy Konig or the USMS and who were represented by either private counsel or the North Carolina Attorney General. The only notice that the United States or an agency closely related to Deputy Konig received prior to the expiration of the limitations period was that Plaintiff had filed an Administrative Tort Claim with the USMS sometime in 2012. [DE-191-4] (Acknowledgment of Receipt of Administrative Tort Claim); [DE-191-6] (Denial of Administrative Tort Claim). However, this certainly would not constitute adequate notice to Deputy Konig that he faced the possibility of

and expired 120 days later, on March 19, 2013. Because the three-year statute of limitation did not itself expire until October 12, 2013, this later date controls the "limitations period" in which "adequate notice" must be received.

individual liability in a _Bivens_ case; to the contrary, to the extent that Deputy Konig even knew about the Administrative Tort Claim, it would have given him a strong indication that Plaintiff had elected to pursue other, mutually exclusive remedies. _Cf._ _Burt v. Johns_, No. 5:10-CT-3156-BO, 2012 WL 1029194, at *4 (E.D.N.C. Mar. 26, 2012) (discussing the collateral effects of pursuing parallel remedies under the FTCA and _Bivens_). Accordingly, Plaintiff's amended complaint should not relate back under Rule 15(c) and the _Bivens_ claims against Deputy Konig should be dismissed as time-barred.

Even if it were timely, however, Plaintiff's complaint fails to allege any facts that would plausibly support a claim that Deputy Konig violated her constitutional rights. Plaintiff alleges that the Marshals were able to place the fugitive Tyre Myers at her residence using electronic surveillance. (Am. Compl. ¶¶ 107, 219). While Plaintiff's complaint contains conclusory allegations that the electronic surveillance constituted an illegal search without lawful process, she alleges no facts in support of this assertion and her conclusions are not entitled to a presumption of truth.[5] _See_ _Vitol, S.A. v. Primerose Shipping Co. Ltd._, 708 F.3d 527, 547

---

[5] Additionally, Plaintiff would lack standing to assert a claim for a violation of the Fourth Amendment as to the alleged electronic surveillance insofar as it was a phone known to be used by and under the control of Tyre Myers that was being tracked. _Cf._ _Casella v. Borders_, 404 F. App'x 800 (4th Cir. 2010).

(4th Cir. 2013). Once eyes-on surveillance was established at Plaintiff's residence, a male matching a photograph of the fugitive was observed smoking a cigarette with Plaintiff on the back porch. (Am. Compl. ¶ 98); [DE-189-18] (Affidavit in Support of Search Warrant); [DE-189-21] (Report of C.K. Allen). Taken together, electronic surveillance placing Tyre Myers at the address corroborated by positive eyewitness identification would be sufficient to establish probable cause to obtain a search warrant. See Steagald v. United States, 451 U.S. 204, 213 (1981) (holding that a search warrant is required to enter the home of a third-party to effectuate the arrest of a fugitive upon "a showing of probable cause to believe that the legitimate object of a search is located in a particular place").

When the Marshals then observed a car leaving the residence, Deputy Konig conducted an investigative stop pursuant to Terry v. Ohio, 392 U.S. 1 (1968), in order to ascertain if the fugitive was in the vehicle.[6] (Am. Compl. ¶ 84). Once the driver was identified as Plaintiff, Deputy Konig asked her if she knew the fugitive (she acknowledged that she did, but denied that he was in the house) and sought consent to search her house (which she denied), whereupon Plaintiff was permitted to depart. (Am. Compl. ¶ 85). These facts do not support a constitutional

---

[6] DMV records also indicate that there was an insurance stop on the vehicle Plaintiff was driving. [DE-189-24]. This explains why Plaintiff's car was ultimately impounded by the Johnston County Sheriff's Office. [DE-189-21] (Report of C.K. Allen).

16

violation because "an officer may, consistent with the Fourth Amendment" (and upon less than probable cause) "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). "Because the intrusion created by an investigative stop is minimal, the reasonable suspicion standard is not onerous." Park v. Shiflett, 250 F.3d 843, 850 (4th Cir. 2001). Under the totality of the circumstances,[7] Deputy Konig had both probable cause to believe that Plaintiff was harboring a dangerous fugitive in her house (as evidenced by the search warrant they later obtained), and reasonable suspicion to conduct a brief stop of Plaintiff's vehicle as it left the house to investigate the identity and business of its occupants. See United States v. Bugg, 561 F. App'x 248, 251 (4th Cir. 2014) (upholding Terry stop of vehicle where "officers had good reason to believe that [the vehicle's occupant] was connected in some meaningful way to a suspected

_____

[7] Deputy Konig proffers to the Court that should this claim be allowed to proceed, additional evidence will show that shortly before Plaintiff drove away from her residence, the garage door was suspiciously lifted by a few inches (not far enough for the Marshals to see in the garage, but potentially enough for someone inside to see out). Furthermore, Ms. Myers had the driver's seat laid back and was wearing a baseball cap pulled low over her eyes and what appeared to be a man's shirt as she drove away from the residence. These facts provide additional reasonable suspicion for the Terry stop, as Deputy Konig initially believed that the vehicle's driver could be the male suspect they had observed on the back porch. In retrospect, it would appear that Plaintiff's exit from the residence in this manner was a ruse to divert the attention of the Marshals so that Tyre Myers could make an undetected escape.

dangerous fugitive"); United States v. Keen, 200 F. App'x 218, 219 (4th Cir. 2006) (upholding Terry stop of vehicle where "the officers reasonably suspected that [an occupant of the vehicle] was the fugitive for whom they were searching"). Cf. also United States v. Montieth, 662 F.3d 660, 665-66 (4th Cir. 2011) (holding that a warrant based on probable cause to search a residence furnishes reasonable suspicion to conduct a Terry stop of vehicle observed departing the residence).

Deputy Konig then contacted the Johnston County Sheriff's Office for assistance in obtaining a search warrant of the residence. When Plaintiff returned from her errand, she was denied access to the residence until the warrant could be obtained and executed. (Am. Compl. ¶¶ 86-87). Again, this type of seizure is permissible under the Fourth Amendment in order to preserve the status quo provided that the officers act with due diligence to obtain the necessary warrant. See, e.g., Illinois v. McArthur, 531 U.S. 326 (2001) (upholding restraint of dwelling's occupant while a search warrant was obtained where police had probable cause to search the home, they reasonably believed that detention was necessary to preserve the status quo, and the restraint was reasonable in length and scope); Segura v. United States, 468 U.S. 796, 810 (1984) (plurality opinion) ("We hold, therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal

of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents."). Likewise, the continued detention of Plaintiff while the search warrant was executed was constitutionally permissible. See Michigan v. Summers, 452 U.S. 692, 705 (1981) (holding that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted").

Finally, Plaintiff's complaint fails to state a claim that the Fourth Amendment was violated when Deputy Konig and his team searched her residence pursuant to a facially valid warrant. Police may rely on a magistrate's probable cause determination when executing a search unless the officer has "no reasonable grounds for believing that the warrant was properly issued." United States v. Leon, 468 U.S. 897, 922 & n.23 (1984) (asking "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization"); see also Malley v. Briggs, 475 U.S. 335, 345 (1986) (adopting the Leon standard in a § 1983 civil suit). Plaintiff attempts to escape this result by alleging that the search warrant affidavit contained "false, fabricated, and/or tainted statements." (Am. Compl. ¶ 94).

Plaintiff's conclusory allegations in this regard are not, however, adequate to state a claim when the only "fact" she alleges to support them is the bald assertion that the fugitive was not located inside the home. This is particularly true where documentation which Plaintiff herself appended to the complaint shows that while Plaintiff consistently denied that anyone was living in her house besides herself and her three children, the search of the residence turned up a lot of men's clothes in the master bedroom that "were way too big for [Plaintiff's] oldest son to wear," and Plaintiff's neighbors verified that a large frame black male had been living there. [DE-189-20] (Report of A.C. Fish). Nowhere in Plaintiff's complaint does she plead any facts that would suggest the police report to be false, nor does she attempt to explain the inconsistency between the police report and the contrary facts she alleges. Because "conclusions drawn from the facts, ... unwarranted inferences, unreasonable conclusions, or arguments" do not suffice to state a claim upon which relief can be granted, Plaintiff's Fourth Amendment Bivens claim should be dismissed.

Deputy Konig's involvement in this matter ended when the first search of Plaintiff's residence failed to turn up the fugitive Tyre Myers. The second warrant and search for illegal drugs, and the ensuing arrest, criminal prosecution, and

administrative tax collection proceedings, did not fall under the purview of the USMS and were handled exclusively by the Johnston County Sheriff's Office and other state actors. Accordingly, Plaintiff's complaint also fails to state a claim against Deputy Konig with respect to any of the remaining constitutional deprivations claimed by Plaintiff in this case.

4. __Claim 3 (Violations of 42 U.S.C. §§ 1983 & 1985):__

Like <u>Bivens</u> claims, claims brought under 42 U.S.C. §§ 1983 and 1985 are subject to North Carolina's three-year statute of limitation for personal injury claims. <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985); <u>McCausland v. Mason County Bd. of Ed.</u>, 649 F.2d 278 (4th Cir. 1981); <u>McHam v. N.C. Mut. Life Ins. Co.</u>, 2007 WL 1695914, at *2 (M.D.N.C. June 11, 2007). Accordingly, Claim 3 should be dismissed as time-barred for the same reason Plaintiff's <u>Bivens</u> claim is time-barred.

Moreover, Plaintiff's complaint fails to state a claim upon which relief can be granted under these statutory provisions. Section 1983 reaches only those acting under color of state law, and so the conduct of a Deputy U.S. Marshal acting under color of federal law is cognizable only under <u>Bivens</u>. <u>Giancola v. State of W. Va. Dept. of Public Safety</u>, 830 F.2d 547, 549-50 (4th Cir. 1987). Furthermore, none of the allegations lodged by Plaintiff fall within the ambit of § 1985.

21

The first clause of § 1985(2) prohibits two or more persons from conspiring to deter any party or witness from attending or testifying truthfully in a federal court. <u>Bloch v. Mountain Mission School</u>, No. 86-1279, 1988 WL 45433, at *1 (4th Cir. May 2, 1988). But this provision is inapplicable because all of the events that form the basis of Plaintiff's complaint center around proceedings that took place in state court, including both search warrant applications and her subsequent arrest and prosecution for drug offenses. [DE-189-18] (First Search Warrant); [DE-189-19] (Second Search Warrant); [DE-191-10] (Order of dismissal in 10-CRS-56376 and 10-CRS-56377).

The second clause of § 1985(2) prohibits conspiracies to impede or obstruct the due course of justice in any state with the intent to deny any citizen the equal protection of the laws, and § 1985(3) prohibits conspiracies to deprive any person of the equal protection of the laws. <u>Bloch</u>, 1988 WL 45433, at *1. Because the constitutional dimension of these provisions deals with equal protection and/or equal privileges and immunities, evidence of racial or other invidious class-based discriminatory animus is required. <u>See</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971). The crux of Plaintiff's complaint, however, involves the alleged deprivation of Fourth Amendment and Fifth Amendment due process protections, and her complaint contains absolutely no factual allegations that would support an equal

protection claim or that would suggest that there was any *discriminatory* intent in the conduct of Deputy Konig and the other defendants. Claim 3 must therefore be dismissed.

5. **Claims 1 and 2 (Violations of RICO):**

Claims 1 and 2 of Plaintiff's complaint, brought pursuant to RICO, are the only claims not barred by the statute of limitation. See Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 156 (1987) (establishing a 4-year limitations period for civil RICO claims). However, they fail for the more fundamental reason that RICO is simply not the appropriate vehicle for bringing claims against law enforcement officials discharging their public duties, as this Court has recently recognized. See Johnson v. Pope, No. 7:13-CV-78-BO, 2013 WL 6500752 (E.D.N.C. Dec. 11, 2013).

The essential elements of a federal RICO cause of action are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). "In addition, the plaintiff only has standing if ... he has been injured in his business or property by the conduct constituting the violation." Id. In this case, Plaintiff's complaint fails to allege any plausible facts to support any of these elements.

Plaintiff fails to satisfy the (first) conduct element where, as here, "the conduct [Plaintiff] complains of is

23

legitimate law enforcement activity carried out in the course of the officers' employment." Kahre v. Damm, 342 F. App'x 267, 268 (9th Cir. 2009). Similarly, the (second) enterprise element is not satisfied by "the cooperation between [a] federal agenc[y] and local police in a [criminal] investigation." Id.

Nor do the facts alleged in Plaintiff's complaint establish the (third) pattern element. "[T]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). Predicate acts are related if they have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Id. at (quoting 18 U.S.C. § 3575(e)). Continuity, in turn, refers "either to a closed period of *repeated* conduct, or to past conduct that by its nature projects into the future with a threat of *repetition*." Id. at 241 (emphasis added). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Id. at 242. In this case, the predicate acts that Plaintiff alleges are isolated events that do not satisfy the relationship plus continuity test: Deputy Konig's

actions "were directed towards a single ... goal" (apprehending a fugitive from justice, Tyre Myers); "involved a limited purpose" (providing information to obtain a search warrant for Plaintiff's residence where Tyre Myers was believed to be hiding); "involved but one set of [alleged] victims" (Plaintiff and her family); and "took place over" a brief period of time (indeed, the complaint itself shows that Deputy Konig's involvement was limited to a single day – October 12, 2010 – and the criminal charges against Plaintiff that resulted from the search concluded in a dismissal just over a year later – December 30, 2011). Menasco, Inc. v. Wasserman, 886 F.2d 681, 684-85 (4th Cir. 1989) (describing the above-quoted facts as "a paradigm [case] in which no pattern of racketeering activity is present").

Fourth, Plaintiff's complaint fails adequately to plead at least two predicate acts of racketeering as required by 18 U.S.C. § 1961(1) & (5). See Vuyyuru v. Jadhav, 2011 WL 1483725, at *19 (E.D. Va. Apr. 19, 2011) ("In order for an illegal act to constitute a racketeering act for RICO purposes, the plaintiff must plead all the elements of the underlying offense and plead facts demonstrating that the defendant could be convicted of that offense."). The predicate acts which Plaintiff alleges in her complaint are (i) extortion under the Hobbs Act, 18 U.S.C. § 1951; (ii) extortion and similar property offenses under North

Carolina law; (iii) wire/mail fraud under 18 U.S.C. § 1341 *et seq.;* and (iv) obstruction of justice under 18 U.S.C. §§ 1512 and 1513. [DE-189] (Am. Compl. ¶¶ 145-79).

However, in <u>Wilkie v. Robbins</u>, 551 U.S. 537, 563-67 (2007), the Supreme Court held that allegations of extortion (under either the Hobbs Act or state law) could not form the basis of a RICO predicate act by a public officer when the beneficiary of the property allegedly taken was the government itself. Because Plaintiff's complaint does not allege that Deputy Konig (or any of the other RICO co-defendants) stood personally to gain from any of their conduct – and in fact explicitly alleges that the money seized went to the North Carolina Department of Revenue (Am. Compl. ¶ 150) – Plaintiff has failed to establish a predicate act based on extortion or robbery.

Similarly, Plaintiff cannot establish a predicate act based on obstruction of justice because both of the United States Code provisions that Plaintiff cites (18 U.S.C. §§ 1512 & 1513) apply only to obstruction with respect to an "official proceeding," which is defined in 18 U.S.C. § 1515(a)(1) to mean one of various forms of <u>federal</u> judicial or administrative proceedings. Again, as discussed in relation to Plaintiff's § 1985(2) obstruction claim, all the proceedings in which Plaintiff was involved were <u>state</u> criminal or administrative (tax)

proceedings. Therefore, Plaintiff's complaint fails to establish any predicate acts based on these provisions.

Finally, Plaintiff's reliance on alleged violations of the mail and wire fraud statutes is insufficient to establish a predicate act because Plaintiff fails to allege any "scheme to defraud," which requires "the specific intent to deprive one of something of value through a misrepresentation or other similar dishonest method," and not "simply an intent to lie to the victim or to make a false statement to him." <u>United States v. Wynn</u>, 684 F.3d 473, 478 (4th Cir. 2012). Furthermore, Fed. R. Civ. P. 9(b) requires that the circumstances constituting the fraud be pled with particularity, which Plaintiff has failed to do. In this case, Plaintiff's complaint alleges several false statements and misrepresentations that were allegedly made to third parties in furtherance of obtaining legal process to search Plaintiff's home, arrest, and prosecute her (Am. Compl. ¶ 158), but contains no facts that would plausibly support any inference of a scheme to defraud Plaintiff out of something of value by means of misrepresentation or deceit on which she relied. Therefore, Plaintiff's complaint fails to establish any predicate acts based on fraud.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's complaint should be dismissed as against Deputy Konig.

Respectfully submitted, this 15th day of October, 2014.

THOMAS G. WALKER
United States Attorney


BY:  /s/ Matthew L. Fesak
     MATTHEW L. FESAK
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: matthew.fesak@usdoj.gov
N.C. Bar No. 35276
Attorney for Federal Defendant
  Deputy United States Marshal
  Bryan Konig

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this 15th day of October, 2014 served a copy of the foregoing upon the below-listed parties by electronically filing the foregoing with the Court on this date using the CM/ECF system or by placing a copy in the U.S. Mail.

Loushonda Myers
27 Wateree Trail
Georgetown, SC 29440

Grant S. Mitchell
The Mitchell Law Group
225 Green St., Suite 1100
Fayetteville, NC 28301
Email: grant.mitchell@mlg-mail.com

Timothy C. Smith , Jr.
Yarborough, Winters & Neville, P.A.
115 E. Russell St.
Fayetteville, NC 28301
Email: timsmith@ywnlaw.com

James Raleigh Baker
Hedrick, Gardner, Kincheloe and Garofalo, LLP
4011WestChase Blvd.
Suite 300
Raleigh, NC 27607
Email: jbaker@hedrickgardner.com

Carrie Virginia McMillan
Poyner Spruill LLP
301 Fayetteville St., Suite 1900
P. O. Box 1801
Raleigh, NC 27601
Email:
cmcmillan@poynerspruill.com

Daniel G. Cahill
Poyner Spruill LLP
P. O. Box 1801
301 Fayetteville St., Suite 1900
Raleigh, NC 27602-1801
Email: dcahill@poyners.com

/s/ Matthew L. Fesak
MATTHEW L. FESAK
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: matthew.fesak@usdoj.gov
N.C. Bar No. 35276
Attorney for Federal Defendant
  Deputy United States Marshal
  Bryan Konig