United States District Court

Eastern District of North Carolina

Western Division

Civil Suit: 5:12-CV-00714-BO

Loushonda Myers

    In Propria Persona Plaintiff/Claimant,

        Vs.                           MEMORANDUM

THE STATE OF NORTH CAROLINA, et al

    Defendants.

JURY TRIAL DEMANDED ON ALL ISSUES, INCLUDING FACT AND LAW

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DENY/DISMISS DEFENDANTS' MOTION FOR SUMMARY JUDGEMNET AND CROSS MOTION FOR SUMMARY JUDGEMENT**

I, LouShonda Myers, now submits this Memorandum of law in support of my motion to deny/dismiss the Defendants' motion; and in support of my cross motion for summary judgement. I am incorporating by reference and record my Original Compliant, Amended Complaint, Amendment to Amended Complaint [currently awaiting ruling]; exhibits, affidavits, and/or documentation submitted to this Court; as well as those documents, materials and exhibits attached to this memorandum.

**FACTS OF CASE**

This lawsuit was stamped filed on November 19, 2012. The law suit was brought against numerous Defendants due to complaints and/or claims of Constitutional, federal, and state law violations. On March 29, 2014, I submitted an Amended Complaint pursuant to an order by

1

United States District Court Judge James C. Dever. Afterwards, Judge Dever removed himself from the law suit; and United States Magistrate Judge Jones, Jr. entered a scheduling order on February 5, 2015. Discovery was to be closed July 31, 2015. I had numerous individuals, entities, and/or persons that I was attempting to obtain discovery from and discovery was extended to August 28, 2015. However, attempts at obtaining additional material discovery information from non-parties that have discoverable materials relevant to my complaints and claims, were denied by United States District Court Judge Boyle and United States Magistrate Judge Jones, Jr.

Subsequently, I filed a Motion to Alter/Amend Judgement and a Motion for Disqualification/Recusal. I am currently awaiting a ruling. The Defendants submitted a Motion for Summary Judgment on September 28, 2015; and I was notified by the court that I had until October 19, 2015 to respond. I timely filed for an extension of time to respond- which was stamped filed on October 8, 2015 and submitted to Judge Boyle on October 8, 2015. As of the date of this filing, a response from Judge Boyles has not been given.

## MY SUBSTANTIVE, INALIENABLE RIGHTS, IMMUNITIES, AND/OR PRIVILEGES EXISTED PRIOR TO THE EVENTS AND/OR OCCURRENCES ON OR AROUND OCTOBER 12, 2010, AND STILL EXIST

The Defendants' by and through their attorney, have alleged that I must prove that I possessed Rights at the time of the violations that I have claimed. My Rights, Immunities, and/or Privileges existed prior to my existence and will remain long after my existence. It is axiomatic that no piece of paper, legislature, and/or statute can give me that which I have already possessed as a natural, flesh and blood human being, made in the image and likeness of the Almighty God.

2

My substantive, inalienable Rights were in existence and established because of who I am. The United States Constitution is a contract that the government must adhere to; and a source of protection and guarantees that the government will not deny those Rights, Immunities, and/or Privileges. "Men are endowed by their Creator with certain unalienable rights, - life, liberty, and the pursuit of happiness; and to "secure," not grant or create, these rights, governments are instituted. (*Budd v. People of State of New York, 143 U.S. 517 (1892)*)

## FRAUD

Fraud vitiates every transaction and all contracts. Indeed, the principle is often stated, in broad and sweeping language, that fraud destroys the validity of everything into which it enters, and that it vitiates the most solemn contracts, documents, and even judgments. – (37 Am Jur 2d at Section 8) The entire events and/or occurrences, and conduct and/or activities that I am complaining about and claiming remedy for involves numerous acts of fraud and deception. Fraud entered these matters from the very beginning and is still being allowed to taint and/or destroy this present law suit.

### The Beginning of the Activities/Conduct/Events/Occurrences

In order to properly investigate anything, it is imperative that one look at the beginning. For the purposes of this Memorandum, the beginning is days before October 12, 2010- when United States Marshal Service Agents encroached upon my property disguised as tow truck operators. [Amend Comp. ¶ ¶ 82 and 83]. These agents were unlawfully trespassing on my property and did not show me a warrant or any lawful process. (Ex. 2 Affidavit of LouShonda Myers) I am complaining and claiming that this is in fact in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3

Then, on October 12, 2010, I left my home in my personal car and was abruptly taken over by two vehicles with lights resembling those of a police officer. I pulled to the side for what I thought was to let them pass, and to my surprise- it was me that they were after. [Amend Comp. ¶ 84 and 85]. Contrary to the Defendant's, Detective Kritch Allen statements in his notes and the two separate search warrant affidavits (Ex. 6 and 8), he stated that a "traffic stop" was initiated. I claim and complain that the "stop" was a violation of the Fourth Amendment to the United States Constitution. The "stop" executed on me was not a routine traffic stop; nor was it a redirected traffic stop pursuant to Michigan v. Long (1983) 463 US 1032 [officer saw knife inside car]; People v. Valencia (1993) 20 Cal.App.4th 906, 918 ["If the driver cannot produce his or her license, or satisfactory proof of identity, or the registration, then the officer may expand the scope of the detention, depending on the circumstances."]; nor was it a pretext traffic stop, pursuant to the following: *Whren v. United States (1996) 517 US 806, 813; Ohio v. Robinette (1996) 519 US 33, 38; Arkansas v. Sullivan (2001) 532 US __ [149 L.Ed.2d 994]; People v. Woods (1999) 21 Cal.4th 668; People v. Marquez (1992) 1 Cal.4th 553, 578; People v. Valenzuela (1999) 74 Cal.App.4th 1202, 1207, fn.2* ["In a pretext case, only the investigative motive is bona fide." Quoting *U.S. v. Bowhay (9th Cir. 1993) 992 F.2d 229, 231]; U.S. v. Hill (6th Cir. 1999) 195 F.3d 258, 264* ["(A)n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle."]; *U.S. v. Perez (9th Cir. 1994) 37 F.3d 510, 513* ["A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop."] This "stop" was in violation of the Fourth Amendment, pursuant to *Rodriguez v. United States, 575 U.S. ___ (2015)* which states," We hold

that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation. Id., at 407. The Court so recognized in Caballes, and we adhere to the line drawn in that decision." And, by their own evidence, the alleged insurance stop on my car was not pulled and/or realized as a valid excuse for a "traffic stop" until 17: 03:06 or 5:03pm on October 12, 2010 (Ex. 3); and I was not written a citation until 18:13 or 6:13pm on October 12, 2010 (Ex. 4); and further, the traffic citation was thrown out and/or dismissed because I provided proof that I had insurance on my vehicle at the time of the alleged "traffic stop" and/or date. (Ex. 5) I committed no traffic violation; and the United States Marshal Service has no jurisdiction over traffic violations. "In deciding whether a challenged governmental action violates the [Fourth] Amendment, we have taken care to inquire whether the action was regarded as an unlawful search and seizure when the Amendment was framed." (*Florida v. White, 526 U.S. 559, 563 (1999)*)

The United States Marshal Service violated by Constitutional Rights to travel freely; and they committed fraud along with the Johnston County Sheriff's Office Defendants by entering false, misleading, and/or tainted information onto court records and for the purposes of obtaining a search warrant- as will be shown within this memorandum, accompanying exhibits, and the record.

## THE SEARCH WARRANTS

### First Search Warrant

The probable cause affidavit begins by stating, "I, C. Kristian Allen, hereby swear and affirm that the foregoing affidavit is based on my personal knowledge...." This statement is material misrepresentation of fact. Detective Konig may have had personal knowledge of his experience working as a Detective of the Johnston County Sheriff's Office; but as to the personal knowledge in regards to the material information stated within his affidavit for the first and second search warrant; it is admitted that United States Marshal Detective Konig provided the above information to him. (Ex. 6, Pg. 2, Item #3) While hearsay can be admissible to establish probable cause, in this instance [as admitted within the affidavit of Detective Alen]- Detective Allen stated, "Information was received from law enforcement sources in South Carolina indicating that Tyree Myers and Dameon Myers were at the residence located at 19 Topsail Island Drive.... As of Friday, October 8, 2010 and continuing to today, October 12, 2010"; and he concluded by stating, "Deputy United States Marshal Bryan Konig came to the Johnston County Sheriff's Office on October 12, 2010, and met with Detective Kritch Allen and provided the above information to Detective Allen." (Ex. 6, Pg. 2, Item #1 and #3) This is not only hearsay, but double hearsay and/or triple hearsay; not to mention that the alleged "law enforcement sources from South Carolina" can be any individual, entity, department, person, and/or likewise. Reliability and credibility cannot be established.

Even more, THE SEARCH WARRANT DOES NOT CONTAIN ONE STATEMENT, MENTION, AND/OR WORD THAT STATES THAT EITHER TYRE MYERS OR DAMEON MYERS WAS WANTED OR WHAT THEY WERE WANTED FOR NOR DOES IT CONATIN AN ARREST WARRANT, ORDER FOR ARREST AND/OR LIKWISE  I claim and complain the search warrant itself was facially invalid and a reasonably well trained officer would have or should have known this.

6

*"Petitioner cannot avoid liability under the rule of qualified immunity on the grounds that the act of applying for an arrest warrant is per se objectively reasonable where the officer believes that the facts alleged in his affidavit are true, and that he is entitled to rely on the judicial officer's judgment in issuing the warrant, and hence finding that probable cause exists. The question is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause, and that he should not have applied for the warrant. If such was the case, the application for the warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest."-*

*Malley v. Briggs, 475 U.S. 335 (1986)*

Then, Detective Kritch Allen went on to state the following:

"…surveillance was established on the residence at 19 Topsail Island Drive, Garner, NC. At Approximately 8:30 am, an unknown black male resembling known photos of Tyree Myers was seen on the back porch of the residence smoking a cigarette. A short time later, an unknown black female joined the male on the porch. Both persons returned to the house and closed the door after approximately 10 minutes. At approximately 10:40 am, the same black female departed the garage of the residence in a black I color Mercedes Benz vehicle. A traffic stop was conducted outside the sight of the residence and the female operator was identified as Loushonda Roshelle Myers. Ms. Myers was questioned about the identity of the male inside the residence and Ms. Myers stated that no one was inside the house. Ms. Myers was told that there was information that indicated Tyree Myers was inside the house and permission to walk through the residence was requested. Permission was denied and Ms. Myers refused to provide any additional information. During this traffic stop and questioning, surveillance was maintained on the residence and no one was seen entering or leaving the residence. Approximately 10 minutes after Ms. Myers was released, an unknown black male was seen opening the blinds in the residence and looking out at surveillance officers. When Ms. Myers returned to the residence, officer denied her entry to the residence and, upon approach, distinctly heard the sound of a door locking on the side garage door."

- Exhibit 6, Detective Allen's First Search Warrant Affidavit

This first search warrant was signed by Magistrate Keith Underwood. This first search warrant was issued for both Tyre Myers and Dameon Myers; despite, there being no mention of Dameon Myers in the probable cause affidavit by Detective Kritch Allen except, "Information was received from law enforcement sources in South Carolina indicating that Tyree Myers and Dameon Myers were at the residence located at 19 Topsail Island Drive…. As of Friday, October 8, 2010 and continuing to today, October 12, 2010". I complain and claim that Magistrate Keith

7

Underwood acted as a "rubber stamp" for the following reasons: (1) Agent Bryan Konig was not questioned nor gave any testimony in support of information that was given to Detective Kritch Allen; (2) nowhere in the search warrant affidavit does it state that Tyre Myers or Dameon Myers was wanted or for what "offense" they were at my home looking for them for; (3) the "law enforcement sources in South Carolina" is so vague that no reasonable person can ascertain as to who or what the "law enforcement sources in South Carolina" is and/or are in order to ascertain the reliability and credibility; (4) nowhere in the affidavit did a scintilla of suspicion even arise as to why Dameon Myers would be at my home; and (5) at no time was there any mention or production of an arrest warrant, order for arrest, and/or likewise for either Tyre Myers or Damoen Myers, a requirement for the search of a third party's home A reasonable well trained officer would be careful not to encroach upon my Constitutionally guaranteed Rights against arbitrary government intrusion; and a neutral and detached judge would have been even more supportive of the United States Constitution and the laws thereof of in safeguarding my substantive Rights under the Fourth Amendment.

> "[In] United States v. Leon, supra, the Court vigorously reaffirmed that the probable-cause decision must be made by a neutral and detached magistrate, stating that " the courts must . . . insist that the magistrate purport to 'perform his " neutral and detached" function and not serve merely as a rubber stamp for the police.' " Id., 468 U.S., at 914 (quoting Aguilar v. Texas, supra, 378 U.S., at 111 ). And, as we explained in Shadwick v. City of Tampa, supra, 407 U.S., at 350 , "[w]hatever else neutrality and detach- [474 U.S. 984 , 985]  ment might entail, it is clear that they require severance and disengagement from activities of law enforcement." Today the Court refuses to act on its convictions, denying certiorari in a case in which the judge who issued the search warrant indisputably "rubber-stamped" the police request....... So, you were relying on the fact that these officers were of the law- "A. Of the law sworn- "Q. -and they were in there-they were sworn officers- "A. That's right"

> - _McCommon v. Mississippi, 474 US 984 – 1985_

8

And, after all of this- being denied access to my home and property for hours; being denied my substantive Right to any arrest or search warrants, even though I was present at the home; and being denied the substantive Right be present during the search of my home- **NO ONE WAS FOUND IN MY HOME.** "The rule requiring affidavits to accompany warrants lacking particularity serves not one, but two aims: "The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion and to inform the person subject to the search what items the officers executing the warrant can seize." United States v. Hayes, 794 F.2d 1348, 1355 (9th Cir. 1986) (emphasis added), cert. denied, 479 U.S. 1086 (1987); accord Center Art Galleries — Hawaii, Inc. v. United States, 875 F.2d 747, 750 (9th Cir. 1989) (attached affidavit "assures that the person being searched has notice of the specific items the officer is entitled to seize" (internal quotation omitted)). Because the agents never served a copy of the affidavit on McGrew, the second goal was entirely unsatisfied here. Neither, in all likelihood, was the first; this court has held expressly that "neither purpose is served" when the affidavit fails to accompany the warrant. Hayes, 794 F.2d at 1355" (*United States v. McGrew 122 F. 3d 847*)

### The Second Search Warrant

Then, after the first search of my home; United States Marshal Service Agent Bryan Konig went and told Captain A.C. Fish that a marijuana leaf was found on the floor in the laundry room. "As soon as Marshal Knorig came out of the house, [he] walked over to me and said that there was an indoor marijuana set up in the laundry room and that he saw a marijuana leaf lying on the laundry room floor. I advised Agent Kritch Allen to apply for another search warrant so that we could search for drugs." (Ex. 7, Pg. 2, ¶ 3) Again, the Defendants' are relying on information given to them by Agent Konig- even though the previous information turned out

9

to be false, fabricated, and/or misleading. Similarly, in Detective Kritch Allen's notes he states, "During the search of the residence for the two fugitives, a small marijuana grow operation was located in the laundry room. The operation consisted of grow lights hanging, and potting soil, fertilizer, and pots. Some of the small starter pots had marijuana seeds in them. At this time I was notified by Captain Fish that I needed to drive back to the Sheriff's Office and meet with Lt. Stewart and apply for a second search warrant…." (Ex. 1, Pg. 2, ¶ 2) It is not plausible that Detective Allen can determine what type of seeds are within soil in a pot. His statement is conclusory; and he never noted seeing a marijuana leaf lying on the floor. Furthermore, he statement that there was a "small marijuana grow operation" in the laundry room were conclusory and based on speculation. It is my claim and complaint that the "marijuana leaf lying on the floor" was concocted in order for the Defendants to assert the "plain sight doctrine". However, fraud was entered upon the court; and within his affidavit for the second search warrant.

In the second search warrant affidavit, Detective Kritch Allen knowingly and willingly used in information know to him at the time to be false, fabricated, and/or misleading. (Ex. 8) He submitted the affidavit to Magistrate Water Stanley, whom signed the warrant. Detective Kritch Allen knowingly and willingly restated- under oath, information known at the time to be false, fabricated, tainted, and/or misleading; and he withheld from Magistrate Stanley the fact that no one was found inside my home; and Detective Kritch Allen failed to include in his affidavit that no one was found inside my home. This is not the conduct and/or actions of a reasonably well trained officer sworn to know the law.

> *"First, where the false statement of fact is made by one who believes it be true, but*
> *under circumstances which impose upon him the duty of knowing the truth; such a*
> *misrepresentation would be fraudulent, although he may be able to show some*

10

*reasonable ground for believing the truth of his statement. He is charged with a positive duty of knowing the truth and he is estopped from claiming exemption from liability on the ground of the honesty of his purpose. Secondly, where one makes an untrue statement, under the honest mistake of believing in its truth, and he should afterwards discover the falsity of the statement, and then permit the other party to continue in error, while he retains the benefit of the false statement, and it is possible for the party to be restored to their original condition, he is charged in equity with the liability of a fraud, in consequence of his subsequent misconduct, although the original misrepresentation would not of itself support the charge of fraud." (Smith v. Reese River M. Co., L. R. 2 Eq. 264, 269; Price v. Macaulay, 2 De G. M. & G. 339, 345; Ayre's Case, 25 Beav. 513, 522; Rawlins v. Wickham, 3 De G. & J. 304, 313, 316; Pulsford v. Richards, 17 Beav. 87, 94; Swan v. North Br. &c. Co., 2 H. & C. 175, 183; Babcock v. Case, 61 Pa. St. (11 P. F. Sm.) 427,430. * Reynell v. Sprye, 1 De G. M. & G. 660, 709, per Lord Cranworth; Traill v. Baring, 4 De G. J. & S. 318, 329, 330, per Turner, L. J.; Underhill t. Horwood, 10 Ves. 209, 225)*

*-[Quoting A Treatise on Equity Jurisprudence: With Particular Reference to the Present Conditions of Jurisprudence in the United States, Christopher Gustavus Tiedeman, F.H. Thomas Law Book Company, 1893]*

Furthermore, Magistrate Stanley, like Magistrate Underwood, acted as a "rubber stamp" due to the following: (1) Agent Bryan Konig was not questioned nor gave any testimony in support of information that was given to Detective Kritch Allen; (2) nowhere in the search warrant affidavit does it state that Tyre Myers or Dameon Myers was wanted or for what "offense" they were at my home looking for them for, [the second affidavit only alleges that they were fugitives in Item #4; after restating the same contents of the first search warrant]; (3) the "law enforcement sources in South Carolina" is so vague that no reasonable person can ascertain as to who or what the "law enforcement sources in South Carolina" is and/or are in order to ascertain the reliability and credibility; (4) nowhere in the affidavit did a scintilla of suspicion even arise as to why Dameon Myers would be at my home; (5) at no time was there any mention or production of an arrest warrant, order for arrest, and/or likewise for either Tyre Myers or Dameon Myers, a requirement for the search of a third party's home; and (6) Magistrate Stanley failed to question Detective Allen and Agent Bryan Konig in regards to the alleged activities and/or conduct stated in the search warrant affidavit, and ascertained whether or not any one was

11

found inside the home. As evidence from the record and attached exhibit, Magistrate Stanley signed a search warrant containing information known at the time to both Detective Allen and Marshal Konig to be false, fabricated, misleading, and/or tainted. Fraud was committed upon the court and upon me. The due process requirements of the Fourth and Fourteenth Amendments protect against fraud, misleading, false, tainted, and/or fabricated information used for the issuance of a search warrant. "The search warrant requirement arose from the Founder's understanding that 'power is a heady thing; and history shows that the police acting on their own cannot be trusted.' (*McDonald v. United States, 335 U.S. 451, 456, 93 L. Ed. 153, 69 S. Ct. 191 (1948)*).

All of the aforementioned Defendants are sworn law enforcement officers and ignorance of the law is no excuse. They are all responsible for the execution of the search warrants issued and cannot claim ignorance. "The officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions. A key aspect of this responsibility is making sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct. The leaders of the expedition may not simply assume that the warrant authorizes the search and seizure. Rather, they must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way." (See *United States v. Leon, 468 U.S. 897, 922-23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)*)

However, there is another area of these matters worth taking note of. That is the fact that the United States Marshal Service had and/or possessed their own search warrants and did not use them. In Captain Fish's notes he states, "When I pulled up near the suspect location, I saw Loushonda Roshelle Myers who lives at 19 Topsail Island Drive, parked next to the intersection.

12

I introduced myself and began speaking to Ms. Myers about her residence. Ms. Myers said he did not understand why the US Marshall's were looking for anybody at her house. **I explained to her that I did not know how they got their information but that they had a search warrant for two fugitives that may be inside.**" [Emphasis Added] (Ex. 7, Pg. 1, ¶ 4) Reading more into his statement, he states, **"Due to the first search warrant by the US Marshalls, Ms. Myers was not allowed to go back into the residence."** [Emphasis Added] (Ex. 7, Pg.2, ¶ 4) The United States Marshal Service had their own search warrants, so why was there a need for the Johnston County Sheriff's Office officers to obtain a search warrant and/or search warrants? I have claimed and complained that it is due to fraud based on the Joey Pope murder. And, I was never presented and/or given any warrant or warrants that the United States Marshal Service and/or its agents possessed. Furthermore, as stated previously within this Memorandum, I was denied access to my home for hours without seeing or even knowing as truth whether or not arrest warrant(s) and/or Search warrant(s) actually existed; and I was present at the home. This is evident by the date and place marked on the inventory sheet provided by the Johnston County Sheriff's Office; and my exchanges with my then attorney Steen Walker (Ex. 9 and 10) I was never given any arrest warrant(s) [for Tyre Myers and Dameon Myers], search warrant(s), and/or affidavit(s) on October 12, 2010. On October 12, 2010, I was never presented with anything to prove awful existence at my home. I claim and complain that this is in violation of my due process Rights.

And, in the Defendants' Memorandum (Pg. 19, ¶ 2) it states, "the officers did nothing more than any reasonable officer would have done: appear before a magistrate in the ordinary and normal course of their duties, and present to the magistrate information contained in the investigative file." On October 12, 2010, there was no investigative file. All throughout this suit

the Defendants have denied having knowledge of me, Tyre Myers, and/or Dameon Myers until the USMS came to them that day. Furthermore, is it the normal course of duty for sworn law enforcement officers to commit perjury; use information known to be false in affidavits; withhold information; and give false testimony? It is well beyond their normal course of duty to perform any act and/or conduct that unlawful and/or would constitute fraud and/or deception. It also beyond the scope of their duties to violate my substantive Rights.

The Defendants cannot defeat the fact that the criminal charges against me were dismissed due to no probable cause for arrest. The Superior Court of Johnston County did not have jurisdiction; and the Defendants also lacked jurisdiction. For a denial of due process leaves a jurisdictional want.

### North Carolina and South Carolina United States Marshal Service Agents and South Carolina law enforcement sources/RICO

Throughout the events, circumstances, conduct, and/or activities on and around October 12, 2010, the Johnston County Sheriff's Office and its officers repeatedly stated that Tyre and Dameon Myers were wanted for robbery and narcotics violations. (Ex. 1 and 7) Yet, there was no NCIC report ever produced for Dameon Myers and the NCIC report produced for Tyre Myers was pulled on October 13, 2010- the day after the conduct and activities at my home, and states no such things. (Ex. 11) There are no robbery or narcotics violations listed on the NCIC report for Tyre Myers, and Dameon Myer's NCIC report was never produced. Yet, I have evidence that in 2011, after Dameon Myers was arrested in South Carolina, he was removed from NCIC due to a warrant regarding an incident with a cellular phone. (Ex. 13) And, there is also a news article from the Georgetown Times in which Tom Rubillo; former mayor and former solicitor of

14

Georgetown, stated, " "it's mighty ironic"" that Dameon Myers was found so quickly after the murder case concluded." (Ex. 14 Pg. 2, ¶ 1)

However, there is located within the record in this court, where this information was derived. It is a 2006 Federal Bureau of Investigation (FBI) report created on the request of the Georgetown City Police Department in connection with the Pope Murder case. (Ex. 12) Within this report it states, "The Myers brothers are involved in the distribution of illegal drugs and guns, robberies, home invasions and are known to use ballistic body armor." (Ex. 12, Pg. 1. Item #2) This report also states, "The primary method of communication within the gang is cellular telephone. It is not yet known whether the cellular phone subscriber information is issued by a cellular phone company or if the members are using pre-pay phones." (Ex. 12, Pg. 2, Item #5) The portion in regards to the cellular phone communication will be fully explained later herein.

As stated with my Complaint and Amended Complaint- which are on the record, an elaborate scheme was manufactured in South Carolina to frame Tyre Myers, Dameon Myers, and Marvin Myers, Jr. for the murder of Joey Pope, a Georgetown County Detention Center Employee. [Record Amended Complaint Exhibits 2, 5, 6, 16, 28, 29, 30, 38, 44, 45, 53, and 54] Even more, on November 8, 2011, Adren Harris entered fraud unto the record of the court.

### Adren Harris and Judge Paul Gessner

On November 8, 2011, Adren Harris perjured himself in court on the record; and entered fraud on the record. Adren Harris also withheld substantive discovery materials in violation of North Carolina law, federal law, and the United States Constitution, as will be shown below.

On November 8, 2011, Adren Harris stated that the United States Marshal Service came to my home looking for Tyre Myers and Dameon Myers for "murder or some type of robbery".

15

(Ex. 15, Pg. 8, Lines 20-21) Yet, the NCIC report for Tyre Myers does not confirm this and the NCIC report for Dameon Myers was never produced. The NCIC report never stated anything about either Tyre Myers or Dameon Myers being wanted for questioning or being suspects for murder or robbery; but Adren Harris was somehow able to secure this information, and never turned over or revealed the source.

Then, on page 10, Lines 4-23 of the November 2011 transcript, Adren Harris stated that he spoke to Captain Fish yesterday and asked him if there were any photographs, video- anything else from the US Marshal Service, and captain Fish said no. Adren Harris stated that Captain Fish said that what was in their search warrant and police report is all. Yet, contrary to this, and contrary to the disclosure duties of Adren Harris and the officers involved; the United States Marsha Service had their own search warrant, as admitted by Captain Fish in his notes, and previously pointed out above.

Moving along through the transcript, on the bottom of page 10 and through the middle of page 11 of the transcript, Adren Harris and Judge Gessner engage in an exchange as follows:

> *THE COURT: Okay. Are you aware of any NCIC report showing that Damien Myers is a fugitive from justice or just the one for Tyree that was handed over?*
>
> *MR. HARRIS: **The only one that we have is the one for Tyree that was handed up.** [Emphasis Added]*
>
> *THE COURT: **Which was used as a basis for the probable cause of the original search warrant?** [Emphasis Added]*
>
> *MR. HARRIS: **Exactly. Yes, Your Honor. That's the one** that fits the description of the individual they saw. **They saw one individual.** I believe it was two—I don't know if they're brothers or not, but that was the one. And based on that, that's why we handed that over **because that's what we used for the basis of a search warrant.***

However, Adren Harris conveniently hid that the NCIC report for Tyre Myers was not pulled until October 13, 2010- the day after the United States Marshal Service agents and the

16

Johnston County Sheriff's officers brutally invaded my home and property and kidnapped my children and I. Not to mention, where was the probable cause for Dameon Myers? In Adren Harris's own words, "one individual"; but they were able to obtain a search warrant for two people.

Moreover, Judge Paul Gessner was acting as an agent for the prosecution and the law enforcement agents and officers involved. He clearly was leading Adren Harris in his answers and abandoned his judicial duties- as shown below. This excerpt is an exchange between my then attorney, Steven Walker and Judge Gessner. (Ex. 15, Pg. 12 Line 7 through Pg. 13 Line 14)

> *MR. WALKER: ..... So the next one down is that **we don't have the arrest warrants.***
>
> *THE COURT: **Well, the arrest warrants should be a South Carolina process or some other process.** They would be—the NCIC, I think, would then entitle that, but the hit on the NCIC paperwork, **if I'm not mistaken, is what would entitle them to arrest them on the Fugitive from Justice Warrant, which is issued in North Carolina.***
>
> *MR. WALKER: And I would like a copy of that.*
>
> *THE COURT: Well, it's in the Clerk's Office I'm sure.*
>
> *MR. WALKER: I don't –my thing is one of the requirements to go in for a search warrant for arrest is that you're going to serve the arrest warrant and arrest the person when you go in there. I would think that the sheriff's department would have had that in their possession, had that in their file. I've turned over their whole file, I don't have that. Now, it may be on file in the Clerk's Office and I may be able to get there, but—*
>
> *THE COURT: If he was in fact arrested.*
>
> *MR. WALKER: Or if he was going to be arrested. I would think that they would need to at least verify that they were going in to arrest somebody if they had a warrant to do that.*
>
> *THE COURT: I think he's already addressed the concerns that you've raised in D about the photographs, audio or video recordings……*
>
> *[Emphasis Added]*

During this exchange, Mr. Walker was clearly attempting to obtain copies of the arrest warrants that are a requirement for the search of a third party's home. Judge Paul Gessner did all

17

that he could do to try and give Adren Harris and the Johnston County Sheriff's Office officers, and the United States Marshal Service agents a way out. First, he started by saying it's a South Carolina Process, then he went into a fugitive from justice warrant, and then he stated that it should be in the Clerk's office. Judge Paul Gessner willingly and knowingly did not properly discharge his duties, and if he claims that he did, his own words clearly prove that he is either incompetent, bias, and/or a judge with lots of prejudice. Towards the end, when all else failed, he just decided to move on to the next issue without closure on the previous issue. "Officers of the court have no immunity, when violating a Constitutional right, from liability. For they are deemed to know the law." *(Owen v. Independence, 100 S.C.T. 1398, 445 US 622)* "Fraud in its elementary common law sense of deceit — and this is one of the meanings that fraud bears 372*372 in the statute, see United States v. Dial, 757 F. 2d 163, 168 (7th Cir. 1985) — includes the deliberate concealment of material information in a setting of fiduciary obligation. A public official is a fiduciary toward the public, including, in the case of a judge, the litigants who appear before him, and if he deliberately conceals material information from them he is guilty of fraud. When a judge is busily soliciting loans from counsel to one party, and not telling the opposing counsel (let alone the public), he is concealing material information in violation of his fiduciary obligations." *(McNally v. United States, 483 US 350 - Supreme Court 1987)*

How can anyone obtain justice when the ones exercising power over the judiciary are as crooked as the ones getting arrests and convictions so that they can increase their profit margins? "Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that

18

the Government may commit crimes in order to secure the conviction of a private criminal—
would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set
its face."- *(Justice Brandeis dissenting. Olmstead v. United States, 277 U.S. 438 (1928))*

Another example of Judge Paul Gessner and Adren Harris's fraud to cover up the acts
and omissions of the Johnston County Sherriff's Office is contained within the transcript. On
Page 14, Lines 4 through 24.

> *MR. WALKER: The defendant has reason to believe there are cellular phone records that may have been accessed and also has reason to believe the cellular phone used may have been under surveillance. I'm not talking about her taking a video. I'm talking about—*
>
> *THE COURT: Did they get a track and trace?*
>
> *MR. HARRIS: No, your Honor.*
>
> *THE COURT: Or one of those orders to find out where she's going or—*
>
> *MR. HARRIS: No, Your Honor.*
>
> *THE COURT: Three-judge panel convened so they could eaves drop on her telephone conversation. Anything of that nature?*
>
> *MR. HARRIS: No, Your Honor.*
>
> *MR. WALKER: The people she talked to on the phone got stopped right after that.*
>
> *THE COURT: Her vehicle has been removed by the sheriff's office. She's entitled to any notes or reports held in the custody of the vehicle..........*

Again, Judge Paul Gessner evaded the issue, and moved on to another issue.

Both Judge Paul Gessner and Adren Harris perpetrated fraud upon the court and upon me
for the benefit of the Johnston County Sheriff' Office Defendants and the United States Marshal
Service agents, as well as any other entity, office, and/or likewise that may have been involved in
these events and/or occurrences. Clearly, Adren Harris and the Johnston County Sheriff's Office
Defendants willfully and knowingly failed to discharge their duties. Under North Carolina law,

19

N.C.G.S. § 15A-903- Disclosure of evidence by the State - Information subject to disclosure;

Adren Harris and the Johnston County Sheriff's Office Defendants have a duty to do the

following:

> (a)  *Upon motion of the defendant, the court must order:*

> (1)  *The State to make available to the defendant the complete files of all law enforcement agencies, investigatory agencies, and prosecutors' offices involved in the investigation of the crimes committed or the prosecution of the defendant.*

> a.  ***The term "file" includes the defendant's statements, the codefendants' statements, witness statements, investigating officers' notes, results of tests and examinations, or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant. When any matter or evidence is submitted for testing or examination, in addition to any test or examination results, all other data, calculations, or writings of any kind shall be made available to the defendant, including, but not limited to, preliminary test or screening results and bench notes.***

> b.  ***The term "prosecutor's office" refers to the office of the prosecuting attorney.***

> b1.  ***The term "investigatory agency" includes any public or private entity that obtains information on behalf of a law enforcement agency or prosecutor's office in connection with the investigation of the crimes committed or the prosecution of the defendant.***

> c.  *Oral statements shall be in written or recorded form, except that oral statements made by a witness to a prosecuting attorney outside the presence of a law enforcement officer or investigatorial assistant shall not be required to be in written or recorded form unless there is significantly new or different information in the oral statement from a prior statement made by the witness.*

> d.  *The defendant shall have the right to inspect and copy or photograph any materials contained therein and, under appropriate safeguards, to inspect, examine, and test any physical evidence or sample contained therein.*

> (2)  *The prosecuting attorney to give notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial. Each such witness shall prepare, and the State shall furnish to the defendant, a report of the results of any examinations or tests conducted by the expert. The State shall also furnish to the defendant the expert's curriculum vitae, the expert's opinion, and the underlying basis for that opinion. The State shall give the notice and furnish the materials required by this subsection within a reasonable time prior to trial, as specified by the court. Standardized fee scales shall be developed by the*

20

> *Administrative Office of the Courts and Indigent Defense Services for all expert*
> *witnesses and private investigators who are compensated with State funds.*

> (3)    *The prosecuting attorney to give the defendant, at the beginning of jury*
> *selection, a written list of the names of all other witnesses whom the State reasonably*
> *expects to call during the trial. Names of witnesses shall not be subject to disclosure if*
> *the prosecuting attorney certifies in writing and under seal to the court that to do so*
> *may subject the witnesses or others to physical or substantial economic harm or*
> *coercion, or that there is other particularized, compelling need not to disclose. If*
> *there are witnesses that the State did not reasonably expect to call at the time of the*
> *provision of the witness list, and as a result are not listed, the court upon a good faith*
> *showing shall allow the witnesses to be called. Additionally, in the interest of justice,*
> *the court may in its discretion permit any undisclosed witness to testify.*

> (b)    *If the State voluntarily provides disclosure under G.S. 15A-902(a), the*
> *disclosure shall be to the same extent as required by subsection (a) of this section.*

> **(c)    On a timely basis, law enforcement and investigatory agencies shall make**
> **available to the prosecutor's office a complete copy of the complete files related to**
> **the investigation of the crimes committed or the prosecution of the defendant for**
> **compliance with this section and any disclosure under G.S. 15A-902(a).**
> **Investigatory agencies that obtain information and materials listed in subdivision**
> **(1) of subsection (a) of this section shall ensure that such information and materials**
> **are fully disclosed to the prosecutor's office on a timely basis for disclosure to the**
> **defendant.**

> **(d)    Any person who willfully omits or misrepresents evidence or information**
> **required to be disclosed pursuant to subdivision (1) of subsection (a) of this section,**
> **or required to be provided to the prosecutor's office pursuant to subsection (c) of**
> **this section, shall be guilty of a Class H felony. Any person who willfully omits or**
> **misrepresents evidence or information required to be disclosed pursuant to any**
> **other provision of this section shall be guilty of a Class 1 misdemeanor.**

And, pursuant to N.C.G.S. § 15A-907, there is a continuing duty to disclose. The Federal

Rules of Criminal Procedure, Rule 16 requires the same; and pursuant to the Fifth, Sixth, and

Fourteenth Amendments of the United States Constitution; I have the substantive Right to proper

and meaningful due process; the substantive Right to confront my accusers; and the substantive

Right to know the nature and cause of the allegations against me. During my criminal matters, I

was denied substantive discovery material. I was denied after claiming my substantive Rights on

record in court; I was denied after proving that the materials requested were relevant and

essential; I was denied after Judge Paul Gessner entered a court order directing Adren Harris to

21

turn over additional materials; and I was denied after sending a certified letter to Judge Thomas Lock in regards to these matters. "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."(Brady v. Maryland, 373 U.S. 83 (1963)) The duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97,107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985) Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"; encompasses evidence "known only to police investigators and not to the prosecutor; and "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." (Kyles v. Whitley, 514 U.S. 419, 433-434 (1995); Strickler v. Greene, 527 U.S. 263, 280-281 (1999)) These violations occurred under the color of law; and with the intent to deny me my substantive Rights protected and guaranteed by the United States Constitution.

And, any immunity defense cannot stand. For there exists clear violations of the Constitution and federal law. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." (County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). And, in the words of the Defendants and their attorney, I have alleged violations of half of the Bill of Rights. [Defendants Memorandum Pg. ¶ ] Furthermore, "in determining immunity, we examine 'the nature of the function performed, not

22

the identity of the actor who performed it.'" (Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (quoting Forrester v. White, 484 U.S. 219, 229 (1988))

## NO IMMUNITY CAN STAND

As for Eleventh Amendment Immunity, "While this immunity from suit is not absolute, we have recognized …. circumstances in which an individual may sue a State. First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment - an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." – (Fitzpatrick v. Bitzer, 427 U.S. 445 (1976))

As to qualified immunity, "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." (Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). No immunity applies where there has been a violation of Constitutional or federal law.

State sovereign "immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State. Nor does sovereign immunity bar all suits against state officers." (Alden v. Maine, 527 U.S. 706, 756-757 (1999))

### 42 U.S. Code § 1983

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." (American Mfrs. Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)) It is evident from my Original Complaint and Amended Complaint, as well as my Affidavits on record within this court, that I have claimed my Rights and have alleged, complained, and claimed that they were violated.

### Sheriff Bizzell

N.C.G.S. § 162-24 states, "The sheriff may not delegate to another person the final responsibility for discharging his official duties, but he may appoint a deputy or employ others to assist him in performing his official duties." Sheriff Bizzell is ultimately responsible for the lawful and proper execution of processes and/or likewise within Johnston County. He cannot simply escape liability by stating he was not present on or around October 12, 2010. He was made aware of the conduct and/or activities that occurred and failed to investigate.

### RICO

It cannot be said that nowhere in my Complaints, Affidavits, Exhibits, documentations, materials, and/or likewise that I have failed to allege any plausible claim and/or complaint, or that I have failed to claim and complain that I am entitled to relief. I can also point out in my transcript where I have claimed and complained that my substantive Rights were being violated by the Johnston County Sheriff's Office Defendants and the United States Marshal Service Agents. Looking in the transcript pages 20 through 25, it is clear that I have been a belligerent claimant. (U.S. v Johnson, 76 F. Supp. 538 (1947)) The aforementioned Defendants are attempting to escape their conduct and activities under RICO; but The other Defendants have

24

been removed for now, but the issues are not final. Furthermore, I have never claimed that the entire Johnston County Sheriff's Office was in violation, for the purposes of the suit and in an attempt for clarity due to the complex claims and complaints, I stated Johnston County Sheriff's Office Enterprise, not the entire Johnston County Sheriff's Office. The Defendants and/or their attorney are mistaken.

Furthermore, civil RICO cases frequently describe concealed or fraudulent patterns of conduct. *(Camden Cty.Bd. of Chosen Freeh. Vs. Beretta U.S.A., (D.N.J. 2000), 123 F.Supp.2d 245 (D.N.J. 2000)* If the Defendanst are stating that there is or was no conspiracy, then the Defendants must be prepared to carry the burden of the activities and conduct of all the actors. Their motion for summary judgement as well as their affidavits have failed. The affidavits are no more than a recital of the search warrant affidavits and officer notes. It is important to note, the search warrant provided as part of their exhibit is the second search warrant that contains information and/or statements that Detective Konig knew to be false, fabricated, and/or misleading at the time.

## District Court Jurisdiction

The Defendants are claiming that my suit cannot be maintained in federal court. The Defendants err. They were acting in concert with a federal agency and agents; I have claimed and complained that they have violated federal laws and the Constitution of the United States; and the Defendants receive federal grants and/or monies in exercising their duties. Furthermore, I have brought RICO claims against the Defendants. This court is the proper court for my complaints and claims. And, this court can hear all claims and complaints arising from the activities and/or conduct of the Defendants.

25

## CONCLUSION

The Defendants' motion for summary judgement must be dismissed. The Defendants have been sued in their individual and official capacity as to certain claims, as stated within the Original Complaint and Amended Complaint. The Defendants memorandum contains conclusions that are contrary to the facts, evidence, and/or documentations on record. Furthermore, the Defendants have never rebutted ant Affidavit that I have filed in this matter; and an unrebutted affidavit stands as truth.

The affidavit of the Defendants Kritch Allen and Captain Fish are evidence of fraud and have been pointed out within this memorandum, as well as throughout this entire suit. The exhibit that the Defendants have submitted is fraud; and as officers of the law they are deemed to know the law. Ignorance is no excuse.

The Defendants' memorandum is full of conclusions. It cannot be said that I have failed to state a claim for relief. I have submitted numerous documents, proofs, exhibits, and/or documentation with my Complaints; and have painstakingly pointed out specifics within each exhibit and provide specific examples. The Defendants motion for summary judgment is a waste of the courts time and resources. In light of their own submissions and admissions, there exists genuine issues of fact and law.

The Defendants actions and/or conduct have caused irreparable harm and damages to me. Not only were my Constitutional and/or federal Rights violated and/or denied; but also my inalienable and common law Rights were violated and/or denied. And, the statements of the

26

Defendants' attorney in the memorandum cannot be considered for a motion for summary judgment. (Trinsey v. Pagliaro 229 F.Supp. 647 (1964))

For the above reasons along with the exhibits submitted with this memorandum, I am respectfully demanding the Defendants' Motion for summary Judgement be denied; my Cross-Motion for Summary Judgement be granted; the Defendants be ordered to turn over discovery materials demanded; discovery be ordered to be produced from all law enforcement bodies and/or individuals involved in the events and/or circumstances complained of; and any and all remedy, relief, and/or redress that is just and proper.

October 17, 2015.

Loushonda Myers
In Propria Persona Plaintiff/Claimant
Private Attorney General
27 Wateree Trail
Georgetown, South Carolina 29440
(843)527-2100
loushondamyers@yahoo.com

## CERTIFICATE OF SERVICE

I, Loushonda Myers, certify that a copy of the foregoing has been delivered to the Defendants by mailing a copy via USPS first class mail addressed to the Defendants as follows:

**Grant S. Mitchell and Ronnie M. Mitchell**
(Attorneys for Defendants Sheriff Steve Bizzell, Captain A.C. Fish, Detective Kritch Allen, Detective Don Pate, Detective J. Creech, Detective J. Canady, Detective A. Case, Captain D. Daughtry, Lieutenant Stewart, Lieutenant Danny Johnson, Deputy Gillis, David Hildreth, James Gerrell, and Unknown Officers/Employees of the Johnston County Sheriff's Office)

P.O. Box 2917
Fayetteville, North Carolina 28302

October 17, 2015.

Loushonda Myers
In Propria Persona Plaintiff/Claimant
Private Attorney General
27 Wateree Trail
Georgetown, South Carolina 29440
(843)527-2100
loushondamyers@yahoo.com